**BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT
LITIGATION**

**In re: Hotel Industry Sex Trafficking Litigation II**          **MDL Docket No. _____**

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
TRANSFER OF ACTIONS TO THE SOUTHERN DISTRICT OF OHIO (EASTERN
DIVISION) PURSUANT TO 28 U.S.C. § 1407 FOR CONSOLIDATED PRETRIAL
PROCEEDINGS**

## I.        INTRODUCTION

As directed by Chief Judge Marbley and pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the

Rules of Procedure of the Panel, Plaintiffs in fifty-three (53) civil actions pending in twelve (12)

different United States District Courts ("Plaintiffs") respectfully submit this memorandum of law

in support of their petition for transfer and coordination for pre-trial purposes the related actions

listed in the attached Schedule of Actions (Exhibit 3 attached hereto), and subsequent tag-along

actions to the Honorable Algenon L. Marbley, Chief Judge of the United States District Court for

the Southern District of Ohio. These cases are filed pursuant to the Trafficking Victims Protection

Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a), which provides survivors a civil remedy

against anyone who knowingly benefitted from their abuse and exploitation.  Chief Judge Marbley

currently oversees twenty-nine (29) of the hotel industry cases in the Schedule of Actions, which

he recently captioned as *In re Hotel TVPRA Litigation*, as well as eleven (11) other trafficking

cases in the Southern District of Ohio.  Currently there are primarily seven (7) Parent-Hotel

Corporations named as defendants. Since 2019, Chief Judge Marbley has attempted informal

coordination of these cases.

Chief Judge Marbley directed[1] Plaintiffs to move this Honorable Panel for reconsideration of its decision in *In re Hotel Industry Sex Trafficking Litigation*, MDL 2928, 433 F. Supp.3d 1353 (J.P.M.L. 2020), which denied a request for centralization of sex trafficking claims filed against forty-five (45) defendants. Chief Judge Marbley expressed to the parties that he saw significant changes in this litigation since this Honorable Panel first considered centralization making it appropriate to ask for reconsideration. Chief Judge Marbley also expressed his desire to be designated as the transferee judge,[2] with the benefit of the procedural resources available if this Panel creates a multidistrict litigation ("MDL").

At the time of the ruling against centralization, the Panel opined (and expected) that (1) there would be centralized locations where the cases could be filed and litigated without significant risk of wasted judicial resources and inconsistent decisions alleviating the need for an MDL; (2) there would be few common questions of fact; and (3) individualized franchise agreements or facts would result in an MDL that was not manageable.

The expectations, however, were not realized. First, the efforts to streamline or reduce the risk of wasted judicial resources and inconsistent decisions in any centralized have either failed or been inadequate (as Chief Judge Marbley has found).  Despite Plaintiffs' concerted attempts to *not* relitigate the same pretrial issues, immense judicial resources have been expended across the country and resulting in inconsistent decisions.  For instance, the parties have litigated the same issues related to Plaintiff identity protections and confidentiality more than twenty-eight (28) times. *See L.H. v. Marriott International, Inc., et al*., No. 1:21-cv-22894, *Def's Notice of*

---

[1] December 6, 2023, Docket Entry in the *In re Hotel TVPRA Litigation*: "Plaintiffs' counsel are DIRECTED to file a Motion for Reconsideration with the JPML by no later than JANUARY 26, 2024."  *See e.g., L.G. v. Red Roof Inns, Inc. et* al., Case No. 2:22-cv-1924 (S.D. Ohio) (ECF No. 52).

[2] Chief Judge Marbley has indicated that he is "poised to supplement your motion to the Panel with a letter urging the Panel not only to reconsider its decision in light of these changed, not recast, circumstances, but I'm also willing to . . . . volunteer that Judge Deavers and I would be a good team to keep these cases but as an MDL."  (Transcript "Tr." at 17, ECF No. 53; **Exhibit 2** attached hereto).

*Authorities*, ECF No. 92[3] (S.D. Fla. Feb. 11, 2022). Similarly, confidentiality orders covering predominantly the same time period and the same production from the same defendants have been heard and ruled on by more than fifteen (15) different federal judges. *Id*. This protracted motion practice continues to result in many months of delays in the litigation.

Second, litigation has revealed that the issues of fact raised by Plaintiffs are generally common to all Parent-Hotel Defendants. These issues, discussed in further detail below, include Parent-Hotel Defendants' knowledge of the common questions of fact: allegations that Parent-Defendant Hotels violated the TVPRA because they benefited from sex trafficking that they knew or should have known existed in their hotel venture.

Third, litigation has shown that the vast majority of all discovery has come *only* from the Parent-Hotel[4] Corporations whose counsel often represents the Parent and the brand.[5] Indeed the Parent-Hotel Corporation Defendants have control over the data and information relevant to the common questions of fact as to whether they violated the TVPRA because they benefited from what they knew or should have known involved sex trafficking in violation of the statute. The scope of the requested MDL has thus been significantly narrowed to generally seven (7) Parent-Hotel Corporations (including their branded properties[6]): (1) Choice Hotels International

---

[3] The *L.H.* court ordered the parties to inform it of this information in 2022.  Since then, this issue has relitigated at least three more times, three times in the Northern District of Ohio, *S.C. v. Wyndham Hotels and Resorts, Inc., et al.*, Case No. 1:23-cv-00871, ECF No. 123 (N.D. Ohio Sept. 27, 2023); *J.C. v. G6*, Case No. 1:23-cv-00867, ECF No. 35 (N.D. Ohio Nov. 20, 2023) (J. Boyko), *R.C. v Choice Hotels, International, Inc., et al.*, Case No. 5:23-cv-00872, ECF No. 872 (N.D. Ohio Sept. 28, 2023).

[4] Plaintiffs are subject to confidentiality orders in all of the cases in which they have received discovery from the Parent-Hotel Corporations.  Plaintiffs therefore cannot provide the exact details of which they would like the Panel to be privy.

[5] *See e.g.s* "Form 10-K 2022" Wyndham Hotels & Resorts, Inc., *Securities and Exchange Commission EDGAR Online.* Securities and Exchange Commission*,* 31 Dec. 2022, www.sec.gov/edgar.shtml; "Form 10-K 2022" Choice Hotels International, Inc., *Securities and Exchange Commission EDGAR Online.* Securities and Exchange Commission*,* 31 Dec. 2022,  www.sec.gov/edgar.shtml. "Form 10-K 2022" Intercontinental Hotels Group, Inc., *Securities and Exchange Commission EDGAR Online.* Securities and Exchange Commission*,* 31 Dec. 2022, www.sec.gov/edgar.shtml.

[6] Branded properties are either licenses or wholly owned subsidiaries, see infra at footnote 10.

("Choice"), (2) Red Roof Inns, Inc. ("Red Roof"), (3) Wyndham Hotels & Resorts, Inc.

("Wyndham"), (4) InterContinental Hotel Groups ("IHG"), (5) Sonesta International Hotels

Corporation ("Sonesta"), (6) G6 Hospitality ("G6"), and (7) Best Western International, Inc.,

("Best Western").[7]

Finally, without centralization, we now know that survivors cannot anticipate the rigors of

enforcing their rights under the TVPRA. MDLs provide processes to make pursuing justice for a

survivor more uniform. Centralization of the discovery process is trauma-informed because it

brings with it consistency; allowing one court to make rulings on the scope of discovery, survivors

are empowered with the ability to understand what will be required of them. Plaintiffs seek

centralization of these related sex trafficking cases into one MDL before Chief Judge Marbley[8] so

that survivors need only participate in one uniform action to get justice under the TVPRA.[9]

This case presents the rare instance in which this Panel has indicated it will reconsider its

prior decisions, *see In re Covidien Hernia Mesh Prods. Liab. Litig.*, 607 F. Supp. 3d 1356, 1357

(J.P.M.L. 2022) ("We are persuaded that these changed circumstances [inter alia] the significantly

larger number of actions, . . . tips the balance in favor of creating an MDL"); *In re Plavix Mktg.,*

*Sales Practice & Prods. Liab. Litig.*, 923 F. Supp. 2d 1376, 1378 (J.P.M.L. 2013) (noting that the

earlier denial does not preclude reaching a different result on reconsideration, only rarely, however,

---

[7] Plaintiffs note that other Parent-Hotel Corporations exist but are not currently represented in their client's experiences.
[8] This is not the first time Chief Judge Marbley has been requested as an MDL judge, yet he has not yet had the opportunity.
[9] Here because of the nature of being trafficked at more than one hotel, these related cases are more similar to *In re Social Media Adolescent Addition/Personal Injury Products Liability Litigation*, MDL 3047 (multiple social media defendants where the injury addiction is indivisible); *see also In re Hair Relaxer Litigation* where the different competing product manufacturers were all centralized into the same MDL. 655 F. Supp. 3d 1374 (J.P.M.L.2023). Plaintiffs note, however, *In Re Pelvic Mesh Litigation* in which this Panel sorted the MDLs into groups before the same district court did not have joint and several liability with indivisible injuries as likely do these related sex trafficking cases. There it was most common to have only one type of mesh and if there were two, theoretically you could determine the defendant who owed the damages because of the product identification.

where a significant change in circumstances has occurred), and a district court that has directed Plaintiffs' counsel to move for this MDL, indicating a clear desire to handle these cases.

## II.      BACKGROUND

This proposed MDL includes cases brought by victims of sex trafficking against Parent-Hotel Corporations (and their branded properties) pursuant to the TVPRA. 18 U.S.C. § 1595(a). Plaintiffs provide the following background: (A) sex trafficking in the hotel industry, (B) Plaintiffs' prior request to the Panel, (C) Chief Judge Marbley's directive to Plaintiffs' lead counsel in the *In re Hotel TVPRA Litigation* to move for an MDL because of the significant changes that Court has seen while managing those related cases since the Panel first considered centralization.

## A.      Sex Trafficking in the Hotel Industry

"The private pain and public costs imposed by human trafficking are beyond contention, and motels provide an obvious haven for those who trade human misery." *City of L.A., v. Patel*, 135 S. Ct. 257, 2461 (2015) (Scalia, J., dissenting, joined by Roberts, C.J. and Thomas, J.).  The trade in human misery is big business, with human trafficking estimated to generate $150 billion per year in profits.[10] Today, sex slavery is pervasive in the United States, and hotels are the primary venue.[11]  Because the vast majority of human trafficking for commercial sex occurs within the hotel industry, the Parent-Hotel Corporations should be the first line of defense against this ongoing epidemic. Each Parent-Hotel Corporate Defendant owns and controls thousands of hotels under

---

[10] *Bankrupting the Business of Human Trafficking*, United Nations, December 1, 2020, at https://webtv.un.org/en/asset/k1s/k1salx7pkv#:~:text=40.3%20million%20people-,Forced%20labour%20and%20human%20trafficking%20are%20horrific%20crimes%20netting%20%24150,15.4%20million%20in%20forced%20marriage (last viewed December 18, 2023).

[11] "This is not only a dominant issue, it's an epidemic issue." *See* Jaclyn Galucci, *Human Trafficking is an Epidemic in the U.S. It's Also Big Business*, Fortune, April 2019, at https://fortune.com/2019/04/14/human-sex-trafficking-usslavery/ (last viewed December 12, 2023) citing Cindy McCain, who chairs the McCain Institute's Human Trafficking Advisory Council. "It's also something that is hiding in plain sight. It's everywhere—it's absolutely everywhere." *Id.* Bradley Myles, *Combating Human Trafficking in the Hotel Industry,* Huffington Post, July 22, 2015, at https://www.huffpost.com/entry/combating-human-trafficking-in-the-hotel-industry_b_7840754 (last viewed December 12, 2023); *See* Galucci, *supra.*

their branded properties.[12] Parent-Hotel Corporations ignored knowledge in the industry of sex trafficking and each of the currently pending actions across the United States shows that the survivors were repeatedly trafficked at the Parent-Hotel Defendants' hotels.

**B.** *In re Hotel Industry Sex Trafficking Litigation*, **MDL No. 2928**

In *In re Hotel Industry Sex Trafficking Litigation*, Plaintiffs moved this Honorable Panel for transfer and coordination of twenty-one (21) civil actions in twelve (12) different United State District Courts filed under the TVPRA against more than forty-five (45) defendant hotels. *In re Hotel Industry Sex Trafficking Litig.*, 433 F. Supp. 3d 1353 (J.P.M.L. 2020). The Panel denied the request for, *inter alia*, deference to "informal coordination," as had "occurred in the Southern District of Ohio" before Chief Judge Marbley. However, the Panel's expectation that informal coordination would provide venues where cases could be filed and litigated without significant waste of judicial resources and risk of inconsistent decisions alleviating the need for an MDL, did not materialize in any meaningful way.

**C.    Significantly Changed Circumstances**

Significant changes in circumstances have occurred since this Honorable Panel's first consideration of centralizing these related cases: informal coordination has failed, the number of cases has grown, the number of defendants has shrunk, and common issues of fact have been revealed.

---

[12] Choice has 22 brands and 7,400+ properties, including Quality Inn and EconoLodge, https://www.choicehotels.com/about/brands; Red Roof has 4 brands and 700+ properties, https://www.redroof.com/travel-guides; Wyndham has 24 brands and 9,000+ properties, including Days Inn and Super 8, https://www.wyndhamhotels.com/wyndham-rewards/our-brands; IHG has 19 brands and 6,000+ properties, including Holiday Inns and Crown Plaza, https://www.ihg.com/content/us/en/about/brands; Sonesta has 17 brands including Red Lion Family and Knights Inn and 1,200+ properties https://www.sonesta.com/our-brands; https://www.redlion.com/our-brands; G6 has three brands and 1,400+ properties including Motel 6, https://g6hospitality.com/our-brands/; Best Western has 19 brands and 4,300+ properties, https://www.bestwestern.com/en_US/hotels/discover-best-western/brands.html (all websites last viewed December 13, 2023).

### 1.  Scope of Litigation

Litigation since 2019 has revealed that sex trafficking in the hotels presents common questions of fact that can be adjudicated across the board for all Parent-Hotel Corporate Defendants.  Human traffickers have capitalized on the Parent-Hotel Corporations' refusal to adopt and implement company-wide standards and anti-trafficking policies and procedures, including, but not limited to, training hotel staff on how to identify obvious and well-known signs of commercial sex, which would have identified the human trafficking that is the subject of this related litigation. Plaintiffs' allegations about these failures are almost identical for each Parent-Hotel Defendant. Plaintiffs and the courts have wasted time, energy, and resources in the constant re-litigation of the same discovery disputes and pretrial issues lodged by the same Defense Counsel representing the same Defendants in a variety of jurisdictions. This waste of resources is driven in part by Defendants' and some courts' refusal to permit document sharing with Counsel for Plaintiffs, for instance, despite the scope of the discovery covering the same time period from the same defendant over the same issues in every case.

Thus, the inquiry into whether the Parent-Hotel Corporate Defendants knew or should have known, through the exercise of reasonable diligence, about sex trafficking at their properties considers corporate knowledge under the circumstances; what the Parent-Hotel knew at a point in time in the aggregate. As the Court in *In re Hotel TVPRA Litigation* has indicated, this case fits neatly into an MDL structure because of the common questions of fact relating to "the policies of the corporations."  *See e.g., L.G. v. Red Roof Inns, Inc. et al*., Case No. 2:22-cv-1924 (S.D. Ohio) (Tr. at 23–24, Exhibit 2 attached hereto). While Defense Counsel were not in agreement at the conference about centralization, one noted:

> That's fair. I was going to say what we have been talking about internally as is there
> a way we can do a consolidated -- certainly, [Lead Plaintiffs' Counsel] Mr. Babin

will want 30(b)(6)s on a lot of the policies, as Your Honor mentioned, the trainings, corporation structure. There are some issues that would make sense to us to put somebody up more globally, to do discovery more globally.

*Id*. at 24.

## 2. Efficiencies

With concern for the ability to provide the judicial resources necessary to continue to justly and efficiently manage the *In re Hotel TVPRA Litigation*, Chief Judge Marbley held a conference on December 4, 2023, seeking "everyone's input as we make some decisions about how best to proceed, how most efficiently to proceed" since "[t]he issues with respect to venue have, in large part . . . been resolved, at least the motions that have been pending have been resolved." *Id.* at 9. Chief Judge Marbley continued stating that he was "of the mind that the best way to proceed is to have the plaintiffs go back to the MDL panel and essentially file a motion for reconsideration which has been done in a number of other instances. . . ." (Exhibit 2, Tr. at 9). As Chief Judge Marbley has seen firsthand, his decisions on pretrial matters inform the individually coordinated cases before him but without an MDL they are just that—individual cases with the inability to share discovery and other necessary pretrial rulings.

A significant change in circumstances since MDL 2928 is the number of clients represented by Lead Counsel in the *In re Hotel TVPRA Litigation*, which is approximately 1,700 at this time. It was apparent to Chief Judge Marbley that if these related sex trafficking cases "would not be appropriate for multidistrict litigation when the plaintiffs are throughout the country, then I don't know what the paradigm represents. I don't know what the right kind of case for multi-district litigation would be." *Id*. at 21.

During the continued discussion with counsel regarding a request for reconsideration with the Panel, Chief Judge Marbley explained the efficiencies he foresees if these related cases were granted MDL status and his desire to be assigned the transferee judge.

> THE COURT:  We have some experience in this courthouse.  We've had a couple --
> I think three MDLs.  And once that first or second bellwether case is tried, then things
> tend to move more quickly.  And so that's one of the considerations that -- in which
> the Court indulged in bringing to you this recommendation, to take it back to the
> MDL panel in light of these significantly changed circumstances. . . .
> . . . .
> Judge Deavers and I do have some expertise in this matter having presided over
> these cases to this point, we – I am poised to supplement your motion to the Panel
> with a letter urging the Panel not only to reconsider its decision in light of these
> changed, not recast, circumstances, but I'm also willing to say -- you know,
> volunteer that I would be a – that Judge Deavers and I would be a good team to
> keep these cases but as an MDL.

(Exhibit 2, Tr. at 17).  Plaintiffs agree.

### III.    STANDARDS

#### A.    TVPRA

The TVPRA provides an independent duty to not profit from what an entity knew or should have known was sex trafficking, providing in relevant part:

> An individual who is a victim of a violation of this chapter [18 U.S.C.S. § 1581
> (LexisNexis) *et seq.*] may bring a civil action against the perpetrator (or whoever
> knowingly benefits, or attempts or conspires to benefit, financially or by receiving
> anything of value from participation in a venture which that person knew or should have
> known has engaged in an act in violation of this chapter [18 USCS §§ 1581 *et seq.*]) in
> an appropriate district court of the United States and may recover damages and reasonable
> attorney's fees.

18 U.S.C. § 1595(a). Thus, Parent-Hotel Corporate Defendants are subject to a nondelegable duty not to profit from a hotel venture they know or should know, through the exercise of reasonable diligence, is sex trafficking.

**B.      Section 1407 Transfer**

The purpose of centralization in a multidistrict litigation is to "eliminate duplicative discovery; prevent pretrial rulings, including with respect to motions to dismiss and *Daubert* motions; and conserve the resources of the parties, their counsel, and the judiciary." *In re Social Media Adolescent Addiction/Personal Injury Prods. Liab. Litigation*, 637 F. Supp. 3d 1377, 1376 (J.P.M.L. 2022); see also *In re Hair Relaxer Marketing, Sales Pracs., & Prods. Liab. Litigation*, 655 F. Supp. 3d 1374, 1376 (J.P.M.L.2023) ("*In Re Hair Relaxer Litigation*") ("The parties in all actions are likely to use many of the same experts, . . . [and] [c]entralization will minimize duplication of this expert discovery as well as pretrial motion practice related to expert issues.).

Accordingly, pursuant to 28 U.S.C. § 1407, transfer of actions to one district for coordinated or consolidated pretrial proceedings is appropriate where:  actions pending in different districts involve one or more common questions of fact, and the transfer of such actions will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions. 28 U.S.C. § 1407(a).

## IV.      ARGUMENT

Plaintiffs first note the exceptional circumstances here with the district judge who has informally overseen many of these related sex trafficking cases for four years, has jurisdiction over all victims trafficked as minors or residing in Ohio and any victim trafficked at Red Roof's over 700 hotels throughout the United States,[13] shows the willingness and readiness to have the

---

[13] "Minors (under the age of 18) are overrepresented among victims of sex trafficking, with the majority of victims recruited between 12 and 14 years of age." Consequently, the victims in the majority of sex trafficking cases were minors when the sex trafficking began. Chief Judge Marbley has jurisdiction over all of these cases because he has found that minors "can avail themselves of the nationwide service of process provision pursuant to 18 U.S.C. § 2255(c)(2)." *In re Hotel TVPRA Litigation*, No. 2:22-cv-1924, 2023 U.S. Dist. LEXIS 72454, at *31 (S.D. Ohio Apr. 25, 2023). Additionally, Chief Judge Marbley has found that he has jurisdiction over all Red Roof cases.  *Id*.

rest of the cases centralized by this Panel and transferred to him as an MDL.[14] The significant changes in circumstances since MDL 2928 are shown in (A) the questions of fact common across all of the Parent-Hotel Defendants, and (B) centralization and transfer to the Southern District of Ohio of the related actions against the Parent-Hotel Defendants will serve the convenience of the parties and witnesses and promote just and efficient litigation of these related cases.

A.        **Common Questions Fact and Law**

In litigation of the TVPRA cases since 2019 it has been shown that sex trafficking cases present common questions of fact that can be adjudicated across the board for all Parent-Hotel Corporate Defendants related to their nondelegable duty not to profit from what they knew or should have known was a sex trafficking.  18 U.S.C. §1595(a).[15] For example, this inquiry looks at what the Parent-Hotel Defendants knew at a point in time in the aggregate across all branded properties, and then turn to what constitutes the exercise of reasonable diligence for that Parent-Hotel Corporation under the circumstances. Other common questions include how Defendants benefited and what Defendants were told from outside sources. "[O]ne of the most effective aspects of MDL litigation in terms of bringing litigation to a close and effectively and fairly resolving claims."[16] "Indeed, one of the primary efficiencies that the authors of the MDL process

---

[14] Chief Judge Marbley has issued numerous substantive decisions on motions to dismiss, personal jurisdiction, venue, intervention, protective and confidential orders, and numerous discovery decisions, which have filled the dearth of case law under this statute.   His decision on the TVPRA pleading standard cited close 300 times, https://plus.lexis.com/shepards/shepardspreviewpod/?pdmfid=1530671&crid=01cff9bd-117d-4b9c-b3ed-c0afeb6de054&pdshepid=urn%3AcontentItem%3A5X7C-V011-DXC7-N12D-00000-00&pdshepcat=citingref&pddoctabclick=true&prid=27361498-a267-4d54-8045-33f896919578&ecomp=2gntk#/citingref, 88 of those in legal opinions from every circuit in the federal judiciary, https://plus.lexis.com/shepards/shepardspreviewpod/?pdmfid=1530671&crid=a601a3ea-a50d-4f38-a4f4-710e66ec0f80&pdshepid=urn%3AcontentItem%3A5X7C-V011-DXC7-N12D-00000-00&pdshepcat=othercitingref&pddoctabclick=true&prid=27361498-a267-4d54-8045-33f896919578&ecomp=2gntk#/othercitingref .*M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 965 (S.D. Ohio 2019).
[15] These common factual questions alleviate the Panel's initial concern that the following differences in facts would predominate:  the alleged sex trafficking, hotel brands, owners and employees, geographic locales, witnesses, indicia of sex trafficking, and time periods. *In re Hotel Industry Sex Trafficking Litigation*, 433 F. Supp. 3d at 1356.
[16] *Id*. at 221.

sought to gain was the resolution on a common basis of certain dispositive issues that would either narrow or eliminate entirely the aggregate mass of asserted claims."[17]

Further, Plaintiffs name no franchisees as defendants, as was done in the first request for centralization. The parties in these related cases throughout the country have seen that the discovery is almost exclusively from the Parent-Hotel Corporations – NOT the franchisees. Plaintiffs subject to this MDL seek to hold Parent-Hotel Defendants accountable for their own wrong-doing. The Parent-Hotel Defendants can litigate the insurance coverage issues in a later litigation if they are ever found to be liable, as Wyndham has already done in federal court in New Jersey.[18]

The type of action a reasonably diligent corporation would have taken under the circumstances will be determined by the parties' experts, and the admissibility of those opinions will be litigated in pretrial motion practice. The Parent-Hotel Corporate Defendants are represented by the same counsel in litigation across the United States. The Parent-Hotel Defendants regularly take the same position in discovery disputes, dispositive motions, and utilize many of the same experts. Rulings on motions to dismiss and summary judgment, admissibility of expert evidence under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals*[19] have often been dispositive in large MDL proceedings.[20]

---

[17]   Smith, Douglas G., *Resolution of Common Questions in MDL Proceedings*, https://kuscholarworks.ku.edu/bitstream/handle/1808/25709/06_Smith_Final.pdf?sequence=1&isAllowed=y, at 225 (Kansas Univ., 2017) (citing, *inter alia, Gelboim v. Bank of Am. Corp.*, 135 S. Ct. 897, 904–05 (2015) ("As the Supreme Court has observed, the drafters of Section 1407 hoped to realize a number of efficiencies, including to 'eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts."),

[18]   *Days Inns Worldwide Inc et al. v. MGH Hospitality et al.*, 2:23-cv-03451; *Super 8 Worldwide Inc. et al. v. Dream Land Hotels LLC et al.*, 2:23-cv-03454; *Days Inns Worldwide Inc. et al. v. Ash Management Corp. et al.*, 2:23-cv-03472; *Days Inns Worldwide Inc. et al. v. Krrish Lodging, LLC et al.*, 2:23-cv-03475.

[19]   *Id.* at 227 (citing Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *see also generally* MANUAL FOR COMPLEX LITIGATION, §§ 23.1–23.37).

[20]   Smith, Douglas G., *Resolution of Common Questions in MDL Proceedings*, Kansas Law Rev., Vol. 66 2017.

The experiences litigating these related sex trafficking cases has shown that they are more similar to, for example, the *In re Hair Relaxer Litigation* where this Panel found that the multiple overlapping defendants and multiple different products, all "share[d] common issues of fact regarding[,]" *inter alia,* "whether and when defendants knew or should have known of the alleged risks[.]" 655 F. Supp. 3d at 1376. Similar to the relevance of the industry knowledge in the *In re Hair Relaxer Litigation*, Chief Judge Marbley has held that "notice of 'the prevalence of sex trafficking generally at hotels,' the failure 'to take adequate steps to train staff in order to prevent its occurrence,' and signs that 'should have alerted staff to [Plaintiff's] situation' are sufficient to meet the constructive knowledge requirement, [i.e., that Defendant knew or should have known, through the exercise of reasonable diligence, that the hotel venture was engaged in sex trafficking]." *B.D.G. v. Choice Hotels Internatl., Inc.*, No. 2:22-cv-3202, 2023 U.S. Dist. LEXIS 162052, at *15 (S.D. Ohio Sept. 12, 2023).

The *In re Pelvic Mesh Litigation* is also a relevant example of how the instant related sex trafficking cases will entail common issues of fact ripe for centralization. That is, "transfer under Section 1407 will enable a single judge to formulate a pretrial program that: (1) allows discovery with respect to any non-common issues to proceed concurrently with discovery on common issues, *In re Smith Patent Litig.*, 407 F. Supp. 1403, 1404 (J.P.M.L. 1976); and (2) ensures that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties." *In re Pelvic Mesh Litigation*, 746 F. Supp. 2d 1362, 1364 (J.P.M.L. 2010).  A single judge, here Chief Judge Marbley, "could employ any number of pretrial techniques — such as establishing separate discovery and/or motion tracks — to efficiently manage this litigation. In any event, [this Panel has left] the extent and manner of

coordination or consolidation of these actions to the discretion of the transferee court. *Id.* (citing *In re Mutual Funds Investment Litig.*, 310 F.Supp.2d 1359 (J.P.M.L. 2004)).

Moreover, the parties and the judiciary will benefit from coordinated discovery related to the common issues of fact, which will identify key documents that will be used across all of the litigation. This discovery will show what the Parent-Hotel Corporate Defendants knew in 2008 when the TVPRA established the non-delegable duty of reasonable diligence. These factual circumstances provide for the legal rulings on orders that must be issued in every case such as confidentiality and protective orders. Currently, the resources of the parties and the judiciary are wasted on relitigating these types of issues over and over again in every jurisdiction. For example, as mentioned above, in *L.H.*, the district court required the parties to collect all rulings which ended up being 28 decisions by 15 different judges. *Case No. 1:21-cv-22894, ECF Nos. 92, 94 (S.D. Fl).* Had the case been centralized, this issue would have been resolved at the outset and would not have resulted in countless hours of repeated litigation over the exact same issues.

Finally, Plaintiffs note that the fact that differences exist at the individual case level should not be and has never been a reason to deny transfer. Indeed, the structure of an MDL accounts for this as it ensures individual cases maintain their integrity. In nearly every MDL, each case has divergent and varying facts specific to each plaintiff and her injuries. For example, in *In Re Pelvic Mesh Litigation* there were different doctors implanting and explanting; different comorbidities, different mechanisms of mesh failure; different injuries as a result of defective mesh failure, etc. Centralization is not consolidation as happens under Federal Rule of Civil Procedure 42. It is simply for pretrial only and if the case in its entirety is not resolved, the remand is appropriate for the individual issues or Defendants if any are identified and left over from the MDL court.

Thus, centralization will obviate the risk of duplicative discovery and inconsistent rulings on pretrial issues such as what each Defendant knew about the prevalence of human trafficking in the hotel industry, when they obtained this information, and what they did with it, such as training staff as to what signs of which to be aware.  Even though, as this Panel has "acknowledge[d] that, to some extent, the claims against the various defendants may turn on facts specific to the defendants and their products [or policies], and that in some instances [it has] been hesitant to centralize litigation against competing defendants that marketed, manufactured, and sold similar products. In the circumstances presented here, however, we conclude that centralization will allow this litigation to be managed most efficiently and will best serve the convenience of the parties, witnesses, and courts."  *In re Hair Relaxer Litigation*, 655 F. Supp. 3d at 137. Plaintiffs ask this Panel to do the same here.

**B      Convenience of the Parties, Witnesses and Court and Promote the Just and Efficient Litigation**

The transfer and centralization of these related sex trafficking cases to Chief Judge Marbley adheres to the goals of 28 U.S.C. § 1407 in that it (1) promotes just and efficient litigation and (2) is convenient for the parties and witnesses.

**1.  Just and Efficient Litigation**

**a.  Nature of Cases**

The nature of human trafficking and the experience shown by the litigation across the country since this Panel considered MDL 2928, establishes that it is uncommon for a victim to be trafficked for sex at only one of the Parent-Hotel Defendants' properties. Taking just four currently filed cases as examples: S.C. was trafficked at Wyndham, IHG, Choice and Red Roof,[21] S.R. was

---

[21] *S.C. v. Wyndham Hotels and Resorts, et al.*, Case No. 1:23-cv-00871 (N.D. Ohio).

trafficked at Wyndham, IHG, and G6[22]; A.W. was trafficked at Red Roof, Best Western, and G6[23]; G.M. was trafficked at Choice, Wyndham, and Red Roof Inn.[24]

This Panel has recognized that it would be appropriate to centralize when declining to do so would not resolve the complexities presented by managing cases involving multiple defendants and multiple products not all of which were used by each plaintiff.  The  circumstances  presented in the *In re Hair Relaxer Litigation* is analogous to the related cases *sub judice* that involve numerous overlapping defendants and the plaintiffs, because of the nature of the underlying facts, may or may not have claims against many of the defendants.  Understanding the nature of why the plaintiffs' used of different products, the Panel centralized nineteen (19) different Defendants, explaining:

> [M]ost plaintiffs allege exposure to multiple different product lines.  According to movants, this is because women who use hair relaxers typically use different product lines over the course of their lives; hence, any future related actions are likely to involve multiple defendants and product lines as well.

> As such, declining to centralize this litigation would not resolve the complexities presented by managing cases involving multiple defendants and products; rather, judges in nineteen (or more) different districts would be required to manage such cases, while addressing overlapping parties, facts, and claims.

*In re Hair Relaxer Litigation*, 655 F. Supp. 3d at 1377.

The same holds true here. Plaintiffs are often trafficked at more than one Parent-Hotel Defendant's property and therefore centralization is especially important because "the potential for conflicting, disorderly, chaotic" action is nearly unavoidable. *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 493 (J.P.M.L. 1968).  As this Panel has stated, "in keeping with past decisions in similar circumstances . . .  we centralized actions against multiple competing manufacturers,

---

[22] *S.R. v. Wyndham Hotels and Resorts, Inc. et al*., Case No. 2:22-cv-02861 (S.D. Ohio).
[23] *A.W. v. Red Roof Inns, Inc. et al.*, Case No. 21-cv-04934 (S.D. Ohio).
[24] *G.M. v. Choice Hotels International, Inc. et al*., Case No. 2:22-cv-03788 (S.D. Ohio).

noting that, 'in the actions and potential tag-along actions already filed, a number of plaintiffs used more than one testosterone replacement therapy,' and that centralization of only certain claims or the attempt to separate claims against separate manufacturers would 'prove too procedurally complicated . . . ." *In re Hair Relaxer Litigation*, 655 F. Supp. 3d at 1377 (citing *In re Androgel Products Liability Litigation*, 24 F. Supp. 3d 1378 (J.P.M.L. 2014)).

### b.   Chief Judge Marbley as Transferee Judge

First, Chief Judge Marbley obviously has a strong willingness, motivation, and ability to handle these related sex trafficking cases.  A particular judge's willingness, ability, and motivation for handling complex litigation is an essential element in venue selection.[25] *In re Dial Complete Mktg. & Sales Practices Litig.*, 804 F. Supp. 2d 1380, 1381 (J.P.M.L. 2011) (transferring to the District Court of New Hampshire on grounds that the judge "is willing and able to accept the assignment").

Second, this Panel has determined that it is best to focus on the "transferee judge with the time and experience to steer this litigation on a prudent course and sitting in a district with the capacity to handle this litigation." *In re Motor Fuel Temperature Sales Practices Litig.*, 493 F. Supp. 2d 1365, 1367 (J.P.M.L. 2007). Chief Judge Marbley has a deserved reputation as a thoughtful, deliberate, and dedicated trial judge. He is an imminently sophisticated jurist who has handled these related cases in *In re Hotel TVPRA Litigation* for over four (4) years, and has unquestionably done a praiseworthy job advancing the human trafficking cases in the Southern District of Ohio forward.  The immense litigation knowledge exclusively confined to the chambers of Chief Judge Marbley is a benefit unlike any commonly seen in requests for centralization.  While

---

[25] In a 2008 Tulane Law Review article entitled, *A View from the Panel:  Part of the Solution*, 82 Tul. L. Rev. 2225, 2240, Judge John G. Heyburn, II emphasized the importance of the transferee judge and stated "[t]he willingness and motivation of a particular judge to handle an MDL docket are ultimately the true keys to whether centralization will benefit the parties and the judicial system." *Id.*

certainly many competent jurists could utilize the work that has been produced over the last four years by the *In re Hotel TVPRA Litigation*, nothing compares to the substantive knowledge of the subject matter of the cases and the attorneys handling them than does experience. The parties and counsel are indeed immensely benefitted by the willingness of Chief Judge Marbley to continue his just and efficient management of these related cases.

Third, Chief Judge Marbley is well respected by both sides of the bench for his intelligence and skills as a trial judge. Chief Judge Marbley was appointed as an Article III Judge by President William Clinton in 1997, serving in that capacity for the last 26 years.[26] Additionally, he regularly sits by assignment on the Sixth Circuit Court of Appeals and the Ninth Circuit Court of Appeals. Chief Judge Marbley also teaches trial practice at the Ohio State University Moritz College of Law and Harvard Law School.

Fourth and last, the Southern District of Ohio has the capacity to handle this MDL in an efficient manner. The Southern District of Ohio, Eastern Division provides a well-staffed and top-notch clerks' office with plenty of experience in handling numerous complex cases, including MDLs, in an efficient manner. *See In re: Procter & Gamble Aerosol Products Marketing and Sales Practices Litigation*, MDL No. 3025[27]; *In re: Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Products Liability Litigation*, MDL No. 2846[28]; *In re: American Honda Motor Co., Inc., CR-V Vibration Marketing and Sales Practices Litigation*, MDL No 2661[29], *In Re: E. I. du Pont de Nemours and Company C-8 Personal Injury Litigation*, MDL No. 2433[30]. Moreover, in recent MDL's, the Southern District has proven itself capable of providing a user-friendly, easily

---

[26] *See* www.ohsd.uscourts.gov/biomarbley (last viewed December 13, 2023).
[27] https://www.ohsd.uscourts.gov/multidistrict-litigation-3025 (last viewed December 18, 2023).
[28] https://www.ohsd.uscourts.gov/multidistrict-litigation-2846 (last viewed December 18, 2023).
[29] https://www.ohsd.uscourts.gov/multidistrict-litigation-2661 (last viewed December 18, 2023).
[30] https://www.ohsd.uscourts.gov/multidistrict-litigation-2433 (last viewed December 18, 2023).

accessible, and state-of-the-art webpage that provides useful information such as attorney contacts and court orders, thereby providing ease of access to information for litigants across the country.[31]

### 2. Convenience of the Parties and Witnesses

The Parent-Hotel Corporate Defendants and many of their branded properties are represented almost always by the same counsel. Further, the Parent-Hotel Defendants often lead the discovery and decision making seeing how they are financially interested and vested in their branded franchised properties. In fact, each of the Parent-Hotel Defendants operates branded properties in Ohio. It is undoubtedly more convenient for this small group of Defense Counsel to be headquartered together in Ohio rather than spread across the United States as is the situation now. Just a brief review of the sex trafficking litigation dockets attached as Exhibits will show that this small group of defense attorneys representing the Hotel Defendants regularly take the same position and join in each other's motions as well as utilizing some of the same experts.

Also, Defendants maintain corporate headquarters in different states across the country, with Red Roof headquartered in the Southern District of Ohio. In matters such as this, the location of Defendants' corporate headquarters plays a minor part in a convenience analysis—and one that is diminishing in significance. *See, e.g.,* B*artolucci v. 1-800 Contacts, Inc.,* 245 F. Supp. 3d 38, 48 (D.D.C. 2017) (internal quotation marks and citations omitted) (analyzing access to proof under 28 U.S.C. § 1404(a): "While access to proof is still relevant in a motion to transfer inquiry, modern technology has made the location of documents … much less important to a determination of convenience than it once was."); *Republic Techs., L.L.C. v. BBK Tobacco & Foods, L.L.C.*, 240 F. Supp. 3d 848, 853 (N.D. Ill. 2016) N.D. Ill. 2016) ("location of the sources of proof . . . has become

---

[31] https://www.ohsd.uscourts.gov/mdl-case-information (last viewed January 9, 2024).

less important in recent years because documentary and digital evidence is readily transferable . . . .").

## V.  CONCLUSION

In light of the foregoing, Plaintiffs respectfully request that this Honorable Panel order the actions in the Schedule of Actions and all tag-along actions be consolidated and coordinated for pretrial proceedings before Chief Judge Algenon L. Marbley of the United States District Court for the Southern District Ohio.

**Dated:** January 9, 2024

Respectfully submitted,

*/s/ Steven C. Babin, Jr.*
Steven C. Babin, Jr.
Penny L. Barrick
Jennifer J. El-Kadi
**Babin Law, LLC**
10 West Broad Street, Suite 900
Columbus, Ohio 43215
Tel: (614) 761-8800
Email: steven.babin@babinlaws.com
Penny.barrick@babinlaws.com
Jennifer.elkadi@babinlaws.com

*/s/ Kimberly L. Adams*
Kimberly L. Adams
Christopher V. Tisi
**Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, PA**
316 S. Baylen Street, Suite No. 600
Pensacola, FL 32502
Tel: (850) 435-705
Email: kadams@levinlaw.com
ctisi@levinlaw.com

*/s/ Gregory Zarzaur*
Gregory Zarzaur
**The Zarzaur Law Firm**
2332 2nd Avenue N.
Birmingham, AL 35203
Tel: (205) 983-7985
Email: gregory@zar.law

*Attorneys for Plaintiff*