# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN RE: HOTEL TVPRA LITIGATION,   )   CASE NOS. 2:22-cv-1924;
                                 )   2:22-cv-2682; 2:22-cv-3256;
                                 )   2:22-cv-3258; 2:22-cv-3416;
                                 )   2:22-cv-3766; 2:22-cv-3767;
                                 )   2:22-cv-3768; 2:22-cv-3769;
                                 )   2:22-cv-3770; 2:22-cv-3771;
                                 )   2:22-cv-3772; 2:22-cv-3773;
                                 )   2:22-cv-3774; 2:22-cv-3776;
                                 )   2:22-cv-3778; 2:22-cv-3782;
                                 )   2:22-cv-3784; 2:22-cv-3786;
                                 )   2:22-cv-3787; 2:22-cv-3788;
                                 )   2:22-cv-3797; 2:22-cv-3799;
                                 )   2:22-cv-3811; 2:22-cv-3837;
                                 )   2:22-cv-3839; 2:22-cv-3844;
                                 )   2:22-cv-3845; 2:22-cv-3846
_____  )


TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS
BEFORE THE HONORABLE ALGENON L. MARBLEY
UNITED STATES DISTRICT JUDGE, and
THE HONORABLE ELIZABETH PRESTON DEAVERS
UNITED STATES MAGISTRATE JUDGE
DECEMBER 4, 2023; 2:00 P.M.
COLUMBUS, OHIO



APPEARANCES:

FOR THE PLAINTIFFS:
     Babin Law, LLC
     By:  Steven C. Babin, Jr., Esq.
          Penny L. Barrick, Esq.
          Jennifer El-Kadi, Esq.
     65 East State Street, Suite 1300
     Columbus, Ohio  43215

```
APPEARANCES CONTINUED:

FOR THE DEFENDANTS RED ROOF INNS, INC. AND
RED ROOF FRANCHISING, LLC.:
     Tucker Ellis LLP
     By:  Giuseppe W. Pappalardo, Esq.
          Joseph A. Manno, Esq.
     950 Main Avenue, Suite 1100
     Cleveland, Ohio  44113

     Weston Hurd LLP
     By:  Robert H. Stoffers, Esq.
     101 East Town Street, Suite 500
     Columbus, Ohio  43215

     Young & Alexander Co., LPA
     By:  Anthony V. Graber, Esq.
     130 West 2nd Street, Suite 1500
     Dayton, Ohio  45402

FOR THE DEFENDANT WYNDHAM HOTELS AND RESORTS, INC.:
     DLA Piper LLP
     By:  David S. Sager, Esq.  (Via telephone)
     51 John F. Kennedy Parkway, Suite 120
     Short Hills, New Jersey  07078

     Hahn Loeser & Parks LLP
     By:  Michael R. Reed, Esq.
     65 East State Street, Suite 2500
     Columbus, Ohio  43215

FOR THE DEFENDANT CHOICE HOTELS INTERNATIONAL, INC.:
     Baker Donelson
     By:  Sara M. Turner, Esq.  (Via telephone)
     1901 Sixth Avenue North, Suite 2600
     Birmingham, Alabama  35203

     Ulmer and Berne
     By:  Shana Ortiz See, Esq.
     65 East State Street, Suite 1100
     Columbus, Ohio  43215

FOR THE DEFENDANT INTERCONTINENTAL HOTELS GROUP PLC:
     Holland & Knight
     By:  John M. Hamrick, Esq.  (Via telephone)
     Regions Plaza, Suite 1800
     1180 West Peachtree Street, N.W.
     Atlanta, Georgia  30309
```

APPEARANCES CONTINUED:

FOR THE DEFENDANT G6 HOSPITALITY, LLC:
     DLA Piper LLP (US)
     By:  Whitney C. Cloud, Esq.  (Via telephone)
     1650 Market Street, Suite 5000
     Philadelphia, Pennsylvania  19103

     Roetzel & Andress
     By:  Patrick B. Healy, Esq.
     625 Eden Park Drive, Suite 450
     Cincinnati, Ohio  45202

FOR LIBERTY MUTUAL FIRE INSURANCE COMPANY:
     Freund Freeze and Arnold
     By:  Mark C. Engling, Esq.
     1 South Main Street, Suite 1800
     Dayton, Ohio  45402

- - -

     Proceedings recorded by mechanical stenography,
transcript produced by computer.

                                                        4

1                                   MONDAY AFTERNOON SESSION

2                                   DECEMBER 4, 2023

3                            – – –

4          THE COURT:  Good afternoon, everyone.  Thank you for

5    making adjustments.  We could have held this status conference

6    in my courtroom, but because it's a status conference and we're

7    going to be talking among ourselves, I thought this format was

8    more conducive to us getting the business that Judge Deavers

9    and I believe we need to get done getting done.  So thank you

10   very much, everyone.

11         First, I want to begin with the functional equivalent of

12   a roll call.  I'm going to ask counsel for the plaintiffs to

13   identify themselves for the record beginning with you,

14   Mr. Babin.

15             MR. BABIN:  Steven Babin for the plaintiffs.

16             MS. BARRICK:  Penny Barrick for the plaintiffs.

17             MS. EL-KADI:  Jennifer El-Kadi for the plaintiffs.

18         THE COURT:  Is there anyone else here on behalf of the

19   plaintiff?  Are you all from Mr. Babin's law firm?

20             MS. BARRICK:  Yes, sir.

21         THE COURT:  Let's now turn to counsel for the defense,

22   and beginning with the Defendant Red Roof Inns, Inc.

23             MR. PAPPALARDO:  Giuseppe Pappalardo with the law firm

24   of Tucker Ellis, LLC, on behalf of Red Roof.

25             THE COURT:  Thank you, Mr. Pappalardo.  And please,

5

1    just so that I can know who you are and who you're with, if you

2    could also, as did Mr. Pappalardo, identify the firm with which

3    you work.

4         MR. MANNO:  Joe Manno for Red Roof Inns as well, with

5    Tucker Ellis.

6         MR. STOFFERS:  Robert Stoffers for Red Roof also, with

7    Weston Hurd.

8         MR. GRABER:  Anthony --

9         THE COURT:  Wait a minute.

10        Mr. Robert Stoffers?

11        MR. STOFFERS:  That's correct, Your Honor.

12        THE COURT:  I'm just looking for you on my list and

13   for whatever reason I don't see you.

14        Here you are.  And you're with --

15        MR. STOFFERS:  Weston Hurd.

16        MR. GRABER:  Anthony Graber for the Red Roof

17   defendants as well.  Young and Alexander is the firm.

18        THE COURT:  Anyone else here for Red Roof Inns?

19   Anyone here for Red Roof Franchising, LLC?

20        MR. MANNO:  It's the same.

21        THE COURT:  Anyone here for Liberty Mutual Fire

22   Insurance Company?

23        MR. ENGLING:  Mark Engling, Freund, Freeze and Arnold.

24        THE COURT:  Is there anyone else?

25        G6 and Wyndham?

6

 1          MR. HEALY:  G6 and Wyndham are separate.  I'm here for

 2  G6, Patrick Healy, from Roetzel and Andress.  I'm just local

 3  counsel.  The national counsel is DLA Piper, and they were

 4  calling in.  There was a call-in number circulated.

 5          MS. ORTIZ SEE:  We have the same issue.

 6          MR. HEALY:  I didn't know if we were going to put a

 7  phone somewhere.  If it's even needed, I'll defer to Your

 8  Honor.

 9          MAGISTRATE JUDGE DEAVERS:  Because this is the grand

10  jury room, there won't be a phone.

11          THE COURT:  Are you ready, Mr. Healy, to proceed as

12  local counsel?  I'm sure that you are.

13          MR. HEALY:  I am, yes.  Just so it's known, if we're

14  on the record, Whitney Cloud from DLA Piper has entered an

15  appearance in the case.  She was trying to call in.  It sounds

16  like that's not going to happen.

17          THE COURT:  Is that C-L-U-O-D?

18          MR. HEALY:  Correct.

19          THE COURT:  And Wyndham?

20          MR. REED:  Mike Reed, Hahn, Loeser and Parks on behalf

21  of Wyndham.  And I believe David Sager with the DLA Piper firm

22  would have been trying to call in also, Your Honor.

23          THE COURT:  Okay.  Is there anyone that I've missed?

24          MS. ORTIZ SEE:  Shana Ortiz See.  I'm representing

25  Choice Hotels International with Ulmer and Berne.

7

```
 1            THE COURT:  Is that here in Columbus?

 2            MS. ORTIZ SEE:  Yes.  Sarah Turner of the Baker

 3   Donelson firm is national counsel, and she was calling in as

 4   well.

 5            THE COURT:  You know, I was wondering whether we could

 6   possibly get someone on one of your cell phones so that they

 7   can at least listen in, if that would be possible.  I don't

 8   know whether that makes sense or is possible.

 9        I see we have no takers.

10            MR. STOFFERS:  If my 16-year-old son was here --

11            THE COURT:  The problem is we don't have enough

12   adolescence to show us how to do it.  I could possibly get

13   someone from IT but there's no way to -- I'm sure that,

14   Mr. Healy, you know Ms. Cloud's number, don't you?

15            MR. HEALY:  She said she's on hold with the call-in

16   number.

17            MR. BABIN:  Everyone got kicked off the call-in

18   number.

19            THE COURT:  Why don't I give you all five minutes

20   to -- you, Mr. Healy; you, Mr. Reed; and you, Ms. Ortiz.

21            MR. HEALY:  Just trying to get our folks on our own

22   cell phones.

23            MR. BABIN:  Your Honor, is it okay if the plaintiffs'

24   counsel does that as well?

25            THE COURT:  Sure.  Aren't you lead counsel, Mr. Babin?
```

8

1         MR. BARMAN:  Yeah.  I was going to bring in Kim Adams

2  from Levin Papantonio too.

3         THE COURT:  You may.

4       Mr. Healy, were you able to get Ms. Cloud?

5         MR. HEALY:  Yes, Judge.  She is on the line.

6  Hopefully she can hear us.

7       Ms. Cloud, can you hear?

8         MS. CLOUD:  Yes.  Good afternoon.  Yes, I'm on the

9  line.

10        THE COURT:  Good afternoon, Ms. Cloud.  And of course

11  you know I'm here with Judge Deavers as well.

12        MS. CLOUD:  Good afternoon, Judge Deavers, yes.

13        THE COURT:  Mr. Reed, were you able to get Mr. Sager?

14        MR. REED:  Yes.  David, can you hear?

15        MR. SAGER:  I can and I can hear His Honor as well.

16        THE COURT:  Ms. Ortiz, were you able to get Sarah?

17        MS. ORTIZ SEE:  She is going to call me back.  She was

18  waiting, as well, on the call.  She's going to call me back and

19  we'll just put her on.  She's calling right now.

20        THE COURT:  And Mr. Babin, is your co-counsel also on

21  now?

22        MR. BABIN:  They're not.  We're just going to keep

23  them text updated, Your Honor.

24        MS. ORTIZ SEE:  Sarah Turner is on the line.

25        THE COURT:  Thank you, Ms. Turner, and sorry for the

9

1   inconvenience.  And for those of you who just joined –

2   Ms. Cloud, Mr. Sager, Ms. Turner – we changed venues within the

3   courthouse so that we could have a more collegial atmosphere,

4   not one that is set up for adversarial argument.  Instead,

5   we're just going to be discussing some things.  And we're

6   trying to get everyone's input as we make some decisions about

7   how best to proceed, how most efficiently to proceed.

8        The issues with respect to venue have, in large part, I

9   think, been resolved, at least the motions that have been

10  pending have been resolved.  After conferring, however, with

11  Judge Deavers, Judge Deavers and I are of the mind that the

12  best way to proceed is to have the plaintiffs go back to the

13  MDL panel and essentially file a motion for reconsideration

14  which has been done in a number of other instances, because at

15  the time that we were first -- or this matter was first before

16  the panel, there were 21 actions in 12 districts, including 6

17  in the Southern District of Ohio.

18       Now, there are 36 actions in SDOH.  And Mr. Babin, to

19  whom I'm going to turn in just a moment, recently noted to the

20  Court that they represent hundreds of victims over whom this

21  Court possesses jurisdiction.  And that was in his motion to

22  review suggestions for scheduling conference that was filed on

23  November 28th.

24       Mr. Babin also represents TVPRA plaintiffs in five other

25  pending actions in three other districts across the country,

1    one in the Eastern District of California, one in the Middle

2    District of Florida, and three in the Northern District of

3    Ohio.  So Mr. Babin alone has a total of 41 cases pending

4    across the country.  And the action in the Eastern District of

5    California appears to be Mr. Babin's only case which was not

6    originally filed in the Southern District of Ohio as he filed

7    each of the other four pending actions here before they were

8    transferred.

9         So my threshold question to you, Mr. Babin, is, as best

10   you can tell me and as precisely as you can tell me, how many

11   other cases do you intend to file here as part of this TVPRA

12   action?

13        MR. BABIN:  I think just to add some clarity, we also

14   have cases pending in Texas, New Mexico, and Philadelphia.

15        THE COURT:  How many?

16        MR. BABIN:  One in each jurisdiction.

17        THE COURT:  So you have 44 cases pending across the

18   country, roughly?

19        MR. BABIN:  That sounds about right.  We have a little

20   more than 1,700 clients signed up right now.  I know we sign up

21   cases probably every day.  I know that makes up more than -- we

22   have more cases than the other firms in the country is my

23   belief.

24        In the Southern District of Ohio with respect to the

25   jurisdictional rulings that we have right now, we would say

1    that there are hundreds.  I can't give you a precise number out

2    of the 1,700 what will fit within the scope of the Court's

3    jurisdictional rulings.  I guess certainly if there were an

4    MDL, that scope would change potentially.  I don't know that we

5    would necessarily advocate for an MDL.  It could potentially

6    bog down the entire process.

7         My first initial thought is the Court has essentially

8    the same powers over the cases that are before it now that it

9    has venue and jurisdiction over, and authority to exercise case

10   management -- you know, manage its own docket in the same way

11   it would in the context of an MDL.  Not every case that would

12   be a TVPRA hotel case could get filed here as of today, but

13   we're pretty far along right now.  We can put case management

14   orders in place right now that are very similar to what you

15   have in an MDL context without bringing a bunch of new lawyers

16   to the party and bogging down the process.

17        THE COURT:  Let me interrupt you for a moment.  And

18   I'm going to let you get back to your prudential arguments for

19   why we shouldn't do this.  First, I want you to tell me how

20   many cases we're going to have before you -- it gives me great

21   anxiety for you to answer the question in the other way.  You

22   say, you know, Judge, it will be all fine.  We just have a

23   handful more.  But those are the hands of Atlas, and a handful

24   more might be a couple thousand.

25        So tell me how many more cases you have to file.  You

1  told me you have 1,700 clients.  But I don't know what that

2  means in terms -- that could include some of the clients

3  already being represented in cases already filed.  So just so

4  that we'll have context, Mr. Babin, how many more cases do you

5  intend to file here?  And I want you to err on the side of

6  over-inclusiveness.

7         MR. BABIN:  More than a thousand.

8         MAGISTRATE JUDGE DEAVERS:  A thousand to bring here?

9         MR. BABIN:  Yeah.

10        THE COURT:  Okay.

11        MR. BABIN:  We're still getting cases every day right

12  now.  And I would say half of them are something that would

13  fall within the jurisdictional rulings the Court has --

14        MR. SAGER:  I'm very sorry, but we can't hear him.

15        MR. REED:  Could you speak up a little, Steven,

16  please?

17        MR. BABIN:  More than a thousand probably, Mr. Sager.

18        THE COURT:  When you say more than a thousand, is that

19  like 1,100?  Or is it like 1,700?  And that doesn't include

20  cases that might be filed in the Eastern District of California

21  or the District of New Mexico; is that correct?

22        MR. BABIN:  I would say -- and based on right now, it

23  would be in the lower one thousands: eleven, twelve hundred.

24  That's subject to change.  The number of trafficking victims

25  that are out there that are in a position where they're capable

1    of bringing a case is always an estimate.  So I would think

2    that is a fair estimate.

3         THE COURT:  Okay.  Now, you may go back to -- now that

4    I know that we're talking about maybe 1,200 or so cases -- and

5    before you go on back to your previous argument, give me the

6    window of time within which you anticipate that you might file

7    these 1,200 cases.  Within the next six months?  Within the

8    next year?  Within the next three months?  Give me your best

9    estimate.  And I'm going to give you the luxury of not being

10   hold -- your feet won't be held to the fire, but I want to

11   establish a conceptual framework within which to discuss these

12   management matters.

13        MR. BABIN:  Bearing in mind these are going to be

14   subject to the types of coordination orders that we get here

15   because it's our job to suggest the best jurisdiction for our

16   cases.  So presuming this is still a jurisdiction that is one

17   we want our clients to file in, I would think it's going to

18   take a couple of years, maybe two years.  There is a lot of

19   workup that goes in these cases in the beginning, a lot of

20   people maybe not ready to file yet just for where they are in

21   their life.  So I would err on the side of it taking a little

22   bit more time.  It's not going to be something that we file in

23   three months or anything like that.

24        THE COURT:  Now, go back to your prudential arguments

25   as to why -- you didn't tell the Court that, no, I reject your

1    suggestion to go back to the MDL panel.  You're telling me some

2    of the reasons you might have some reluctance.

3         MR. BABIN:  I'm not opposed to it.  I know that we've

4    got a lot of work that's been done.  There are a handful of

5    plaintiffs' lawyers.  Plaintiffs' counsel always cooperates.

6    The reason we filed the document that we filed right when the

7    Court put the order in for this hearing is that's something

8    we've been working with with other plaintiffs' lawyers who are

9    involved in this litigation, to see what would happen here.

10        I think that the reality of an MDL is it's going to slow

11   everything down by at least a year.  And then you're going to

12   have lawyers come in that weren't involved previously.  Whether

13   that's good or bad for this case is up for decision because

14   it's a case that's very sensitive in nature.

15        THE COURT:  And you think it will slow it down by at

16   least a year because of the time that it will take to get it

17   before the MDL panel or the -- what is it? -- the JPML and to

18   get an answer on your motion?

19        MR. BABIN:  That and then everything coming here.  And

20   there will be some, you know, time on our end meaning my firm

21   and other firms on just politics I think will bog down a month

22   here or there.  But I would say at least -- at least probably

23   six months before it would even make its way back to this court

24   because we'd have to do work to get agreement with other

25   lawyers that are interested in this case to make sure that we

15

1    don't file something that gets opposed by other lawyers on our

2    side at least.

3        Now, what the defense counsel would do under those

4    circumstances I don't know.  They might be willing to do that

5    now.  I've certainly been in cases where that happens.  But it

6    would take a little bit of time to make sure that there's no

7    opposing motions and whatnot.

8        MR. HAMRICK:  This is John Hamrick.  I'm having a lot

9    of difficulty hearing Mr. Babin.

10       MR. BABIN:  I'll do my best to speak up a little bit

11   better.

12       Can everybody hear me now?  You guys are all moved over

13   to me now like a press conference.

14       THE COURT:  And I understand the argument that you

15   make at least in that regard, but it seems to me that it's like

16   an investment.  It may slow down the process somewhat

17   initially, but it would expedite the process if the -- if it

18   was ruled upon favorably by the MDL panel.  We have some

19   experience in this courthouse.  We've had a couple -- I think

20   three MDLs.  And once that first or second bellwether case is

21   tried, then things tend to move more quickly.  And so that's

22   one of the considerations that -- in which the Court indulged

23   in bringing to you this recommendation, to take it back to the

24   MDL panel in light of these significantly changed

25   circumstances.

1          See, Mr. Babin, this is not like a motion for

2     reconsideration which I can speak for Judge Deavers when I say

3     that we, as almost every federal judge I know, absolute detest

4     because those lawyers tend to file the motions citing changed

5     circumstances.  The circumstances I've seen are never really

6     changed circumstances.  They're recast circumstances to make

7     them appear to be changed.

8          But this, when you go from 45 cases or 44 cases to 1,200

9     cases, that's a significant change.  And it changes the

10    calculus of what we must do as judicial officers - Judge

11    Deavers and I - to manage this case efficiently.  That's why I

12    don't mind if we had to take a step backwards in order to take

13    five steps forward, which is what it seems to me.  But I'm

14    certainly willing to hear whatever other arguments that you

15    have against going back to the panel.

16         MR. BABIN:  Again, I'm not sure that there are

17    arguments yet but considerations that I would be making at

18    least.  Another one which is we don't know it would go to this

19    Court.

20         THE COURT:  We don't.  But what we do know and what I

21    trust is that any judge to whom the panel -- the MDL would be

22    assigned would be competent and capable.  And so that is not a

23    significant issue.  But to allay some of those concerns because

24    I do -- Judge Deavers and I do have some expertise in this

25    matter having presided over these cases to this point, we -- I

1    am poised to supplement your motion to the panel with a letter

2    urging the panel not only to reconsider its decision in light

3    of these changed, not recast, circumstances, but I'm also

4    willing to say -- you know, volunteer that I would be a -- that

5    Judge Deavers and I would be a good team to keep these cases

6    but as an MDL.

7         I just don't see the efficacy of continuing in the

8    manner that we're continuing when there are 1,200 cases.  These

9    cases are easier to deal with if there were 45 cases maybe.

10   But 1,200 is going to make it really difficult, I believe.

11        MR. BABIN:  So I would maybe make at least two more

12   considerations, not that I'm arguing here on this point because

13   I'm not sure where I fall necessarily either.  One would be the

14   Court still has the same inherent powers that it would if this

15   were an MDL if we were to file a thousand cases here.  There's

16   not a significant gain with respect to the Court's authority

17   over the cases than are over it.  You still have the same case

18   management authority you would otherwise.  The difference is

19   you'll have the other cases that might not be within this

20   Court's jurisdiction and venue.

21        And I think the second point is there is -- I don't want

22   to speak too much on this, but I can tell you that the scope of

23   what a TVPRA MDL is supposed to look like in the eyes of

24   different plaintiffs' lawyers across the country is different,

25   whether it includes hotels and other companies or whether it

18

1    includes just hotels.  And I know that's been an area of

2    discussion that I think is going to be one that we'll have to

3    go back and have with people.

4         I have been an advocate that it should not be -- it

5    should be limited to hotels, personally, and I would want the

6    scope of this to stay there.  But that's a conversation that's

7    being had on our end of the bar.

8         MAGISTRATE JUDGE DEAVERS:  The problem is that each of

9    these cases is filed individually.  We know from our previous

10   experience it's very difficult to manage multiple defendants at

11   a time.  I know generally we heard from I believe it was

12   Mr. Sager indicating that the defendants object to this

13   approach.  And I guess I'd kind of like to hear from -- what

14   the defendants are thinking along this line.

15        MR. SAGER:  Judge Deavers, you have a better memory

16   than I.

17        THE COURT:  Mr. Sager, would you please identify

18   yourself.  And anyone else who is calling in, please identify

19   yourselves if you speak.

20        MR. SAGER:  My apologies.  This is David Sager.  I

21   represent Wyndham and franchisors who are affiliated with

22   Wyndham.  And I started to say that I think Judge Deavers has a

23   better memory than I because I'm struggling to remember some of

24   the discussions about the MDL.  And I've struggled to hear some

25   of the discussion that's occurred here today by virtue of the

1    circumstances which I know are unfortunate.  So we're doing the

2    best we can.

3              MAGISTRATE JUDGE DEAVERS:  Mr. Sager, I can stop you

4    because I don't have as good a memory as you do.  Apparently,

5    it was Mr. Reed who sent that.

6              MR. REED:  And it didn't address the MDL.  It just

7    addressed his --

8              MAGISTRATE JUDGE DEAVERS:  The approach.

9              MR. REED:  Yes.

10             MR. SAGER:  I was at the JPML hearing years ago.  I

11   did argue as one of many lawyers who did.  And what I recall is

12   there were similar representations made then and have been

13   similar representations made in the past several years of

14   thousands of cases being filed.  I think Mr. Babin has put that

15   in submissions previously when we were dealing with venue, if I

16   recall.  And we now know not to trust my memory.

17             I think there is a big difference between cases actually

18   being filed and lawyers believing they may file cases,

19   particularly when we've had a number of law firms around the

20   country -- Mr. Babin's just being one of them -- that has made

21   a similar representation.

22             So I'm not in a position, Your Honor, to take a stand or

23   take a position.  I believe in efficiency and efficacy, as Your

24   Honor has touted, obviously, and understand we're dealing with

25   limited judicial resources.  But this seems to be a discussion,

20

1   frankly, from my perspective, that's a little out of left
2   field.  I'm on the phone with Mr. Babin, emails with
3   Mr. Babin's office many, many times each week and I had not
4   heard this and was not aware we were going to be discussing
5   this.  So I'd like an opportunity to think about it, be
6   thoughtful with my codefendants and with Mr. Babin and his team
7   as we learn more about what he envisions.
8          MR. BABIN:  Mr. Sager, neither were we of the
9   understanding that this was going to be what we were talking
10  about, just so you know, Dave.
11         MR. SAGER:  You submitted that paper on the 29th that
12  talks about it.  So I assumed you did know.
13         MR. BABIN:  No.  Ours was just about coordination, not
14  about the MDL.  Just to be clear, this is -- we prepared what
15  we could, but we did not know what the Court planned to talk
16  about.
17         MR. SAGER:  Got it.  Thank you, Steven.
18         THE COURT:  Mr. Sager, and for the purposes of those
19  of you who have joined by phone, it was a statement that I made
20  earlier.  Judge Deavers and I decided that we would bring this
21  issue to counsel because of Mr. Babin's representation that we
22  had over a thousand more cases to -- that he had over a
23  thousand more cases to file.  And this made -- to me and to
24  Judge Deavers, it made sense to give consideration.  I thought,
25  personally, this case should have been an MDL *ab initio*.

1    I think that for greater reasons now, if a 1,200 case

2    case is not one that would be appropriate for multi-district

3    litigation when the plaintiffs are throughout the country, then

4    I don't know what the paradigm represents.  I don't know what

5    would be the right kind of case for multi-district litigation.

6         So Judge Deavers.

7         MAGISTRATE JUDGE DEAVERS:  The only thing that I would

8    question then, if we don't go the MDL route -- the defendants

9    said they objected to the approach that was set out in the

10   plaintiffs' motion to review suggestions for scheduling

11   conference.  Would the defendants still be opposed to this

12   approach if it does stay in this court?

13        MR. SAGER:  This is Dave Sager.  If you'll permit me,

14   I'll go first.  I would just start by saying I see the

15   reference in the November 29th submission to hundreds of cases.

16   I remember -- and Mr. Babin will recall the date better than I,

17   but I recall him saying something similar a year, year and a

18   half ago when -- in the context of the venue motions.  I'm not

19   aware of any other representation about a thousand cases that

20   has been made between those two, but I don't know.

21        To address your question, Judge Deavers, the answer is I

22   struggle to see how cases that have such unique facts will ever

23   be appropriate for consolidation in ways that transcend through

24   the normal discovery consolidation that could occur.  So my

25   personal view is that I would want to think about it.  And I

22

1    appreciate this invitation because of course we would want to

2    think about it in conjunction with the Court's concerns and the

3    Court's preferences so that counsel can come up with some sort

4    of approach that may be more efficient both for the lawyers and

5    more importantly for the Court.  I'm just not there yet because

6    the information I have is so limited.  And by that I mean it's

7    limited to what I've heard from Mr. Babin just today.

8          We opposed the suggestion for scheduling conference,

9    just to be clear, because I frankly am not sure what is

10   intended and how it's intended to work.  And it struck me or my

11   team on behalf of Wyndham as something that should be fleshed

12   out through motion practice or in a context where folks can

13   opine more comfortably and with a more fulsome record and share

14   their thoughts more intelligently with the Court so we can

15   hopefully reach a better decision.  I didn't think in the

16   context of an administrative conference that I would be in a

17   position -- and I still don't -- to comment on how Mr. Babin or

18   any other plaintiffs' counsel intend to best coordinate very,

19   very different cases.

20         And with that, I'll be quiet so other people can chime

21   in on their views unless the Court has questions for me in

22   particular.

23          MR. MANNO:  Joe Manno for Red Roof Inn.  We second a

24   lot of what Mr. Sager had to say.  The claims do differ based

25   on participation and different ventures and different locations

1   with different levels of knowledge which we found is different

2   throughout the various hotels, different traffickers, different

3   particular ventures, different red flags that the complaints

4   cite a lot.  So a consolidated discovery matter, we do have

5   concerns about it, not dismissing the Court outright.  We've

6   certainly given a lot of thought to that, of how to do it.  It

7   may be something where further meeting and conferring makes

8   sense.

9        We're also talking about these cases when we don't

10  know -- there are 37, I believe.  And we're not in every single

11  one of them, but we're in roughly 30.  We don't know the

12  plaintiffs' names in the vast majority of those, or even the

13  traffickers' name in the vast, vast majority of those.  It's

14  difficult at this point for us to give a full thought to an

15  idea when we haven't done initial disclosures in a large amount

16  of these cases.  There's motions to dismiss pending in almost

17  every single one of them.  There are CAVRA issues in I think a

18  handful of them.  The others have TVPRA solely.

19       All of that, sort of, is still ruminating in that

20  suggestion, Your Honor's suggestion that we'd like to give a

21  little more thought to and how you could -- traditional MDL

22  would involve one product.  So there are a lot of similar facts

23  here.  The only thing that seems similar is really the elements

24  of the incident of the TVPRA or CAVRA.

25            MAGISTRATE JUDGE DEAVERS:  A lot of it, too, is the

24

1   policies of the corporations.

2          MR. MANNO:  That's fair.  I was going to say what we

3   have been talking about internally is is there a way we can do

4   a consolidated -- certainly, Mr. Babin will want 30(b)(6)s on a

5   lot of the policies, as Your Honor mentioned, the trainings,

6   corporation structure.  There are some issues that would make

7   sense to us to put somebody up more globally, to do discovery

8   more globally.  But then how do you address the more

9   individualized issues from property to property which is where

10  you're going to get into the knowingly benefit?  Facts that go

11  to that are going to be different.  Facts that go to

12  participation in the venture are going to be different

13  depending on the hotel.  There are different franchisees, for

14  example, that own many of these hotels, many of whom are not

15  sued in those lawsuits.

16         There are complicating factors that I think weigh

17  potentially against that and whether we can come up with a

18  better solution.  Obviously, individually litigating is going

19  to be difficult or if not impossible.  There is a better

20  solution to globally litigate the global issues but then still

21  individually litigate the issues that Mr. Sager mentioned and I

22  think exist.

23         MR. BABIN:  This is Steven Babin.  I just want to

24  clarify real quick not that we oppose the concept of the MDL.

25  I was more trying to identify some of the hurdles.  I know we

25

1    have three trials set next year.  Those cases I'd like to try,

2    but they can always be excluded.  The concept of an MDL, in and

3    of itself, is not something that we oppose.  I don't want the

4    Court to leave with the impression that both sides are opposing

5    the MDL.  We certainly think it has a lot of merit in moving

6    forward.

7         I'm not going to -- I'll do one quick back and forth on

8    one issue here, which is every case is going to have

9    individualized facts.  Cases in MDLs have individualized facts.

10    People have surgeries with different health factors associated

11    with those surgeries.  You look at them individually to see

12    whether or not there is liability in that case and whether you

13    can prove it or not.  Certainly this case has individual facts

14    like every other one, but it doesn't mean it's not one that

15    would be good in the MDL context.

16         MAGISTRATE JUDGE DEAVERS:  One of the things we

17    noticed, too, with the MDL, that they have more recently been

18    not accepting industry wide, for instance, in the business

19    interruption.  So maybe that's something else to think about

20    too, asking for multiple MDLs depending on like a Red Roof or a

21    Wyndham or different ways to approach it.  They seem to be --

22    that would make a lot of sense in terms of coordination.  That

23    would require some severing of claims.

24         MR. BABIN:  Steven Babin, again, just for the record.

25         There are about seven major defendants who own

26

1  90 percent of the hotel corporations here.  Together,

2  considering there's joint and several liability on these issues

3  a lot of the time, it's not like we're asking for 37,000 people

4  to be in the case.  I think we can get it to the MDL panel in a

5  way that presents it differently than it was presented before.

6      Is there a timeline the Court would like to see this

7  happen?

8      THE COURT:  No one is closer to this case than the

9  lawyers on this call or in this room.  And I have yet to hear

10 anyone make any attempt to argue that a change from 44 to 1,200

11 is not a change in circumstances.  Is there anyone who wants to

12 present that argument?

13     MR. MANNO:  I would only --

14     MS. TURNER:  This is Sarah Turner on behalf of Choice,

15 and I apologize.  Hopefully you can hear me.

16     THE COURT:  I can hear you.

17     MS. TURNER:  If we had believed that anything even

18 close to this substantive would have been talked about, I would

19 have obviously been there in person.  And I apologize that I am

20 not.  We didn't come just based on the order that the Court had

21 entered.  I think my local counsel is there, but I would like

22 to obviously have the opportunity to address these issues in

23 front of the Court in a more thoughtful way consistent with

24 what Mr. Sager had offered.

25     But I did, I guess, want to also mention having had a

27

1  fair amount of MDL experience myself, I think these cases are

2  different not only because you do have multiple industry groups

3  or multiple defense groups involved, and I agree -- I think it

4  was Judge Deavers that was talking about the industry-wide

5  issue.  I think that's one of the concerns the JPML raised the

6  first go-round, but even more so because this particular

7  situation is unique in that you do have these, in the most

8  instances, nonparties who are really critical components to,

9  for instance, resolution.  So in a normal MDL you might do a

10 couple of bellwether cases and maybe you could then somehow get

11 a bunch of the other cases resolved, for example.

12        In this situation, because we are looking to our

13 franchisees to defend and indemnify us, we are looking to their

14 policies to be the insurance policies that are at issue.

15 Because those people aren't even named in these cases, in most

16 instances, and because they are across the country and there

17 would be so many of them, I just think any kind of

18 consolidation, whether it is Mr. Babin's plan or a JPML,

19 becomes very challenging.  I think that's at least something to

20 consider.

21              THE COURT:  Ms. Cloud, Ms. Cloud --

22              MR. BABIN:  Ms. Turner.

23              THE COURT:  Ms. Turner, can you hear me?

24              MS. TURNER:  Yes, Your Honor.

25              THE COURT:  Wouldn't you agree with me -- and I want

1   to say at the outset that you make a salient point, and that

2   that is a factor worthy of consideration.  So that was

3   insightful.  But do you want now to address the issue of

4   whether a change from 44 cases to 1,200 cases is a change in

5   circumstances?  Or do you take the position that it is not?

6          MS. TURNER:  Well, Your Honor, obviously, I have to

7   take Mr. Babin at his word that that's the number of cases.  I

8   think echoing what counsel for Red Roof has indicated, even for

9   the cases that are currently before the Court, in the vast

10  majority of them, we don't have the name of the plaintiff, much

11  less the name of the trafficker or any facts upon which we

12  could even begin to investigate.

13         From my client's perspective, we -- while there

14  certainly has been a representation that there's that many

15  cases, we've had several cases that have been filed against us

16  and then dismissed or withdrawn by Mr. Babin and others because

17  they didn't either have representation of the client or they

18  could no longer find the plaintiff.  And so I think from our

19  perspective, you know, without -- right now there are just so

20  few cases filed compared to that representation.  It makes it

21  challenging to have a good faith basis upon which to -- how we

22  might evaluate those.

23         Also just because in the vast majority of the cases

24  filed against my client, we haven't even been able to begin to

25  investigate.  And really this is the only court where our cases

1    are not being readily dismissed at the motion to dismiss phase,

2    you know, one of the very few courts where we're not winning

3    motions to dismiss.  The fact that we don't know who the

4    plaintiffs are, the fact that we don't have those

5    investigations, we don't really look at this as this many

6    pending cases against us because we haven't done an initial

7    investigation or evaluation to determine whether or not these

8    facts -- what the true facts are behind each of the cases, even

9    the ones that are filed.

10             THE COURT:  Well, I'm going to take the position that

11   you, just as Mr. Babin, are officers of the court, and that you

12   aren't going to make material representations.  And I'm going

13   to also -- I want to make clear to everyone that as officers of

14   the court, I expect the questions that I ask to be answered

15   because I will never fail to give you an opportunity to

16   elaborate on whatever position that you would take.  But in

17   order for the Court to make its decisions and make them

18   appropriately and efficiently, we need answers to the questions

19   asked.

20             So I'm going to ask you a third time, Ms. Turner,

21   whether you believe that a change from 44 cases to over 1,200

22   cases is a change in circumstance?

23             And I'm going to make it easier for you.  I'm going to

24   ask you to presume for the purposes of my question only that

25   Mr. Babin is correct in his statement that he may file as many

30

1   as 1,200 more cases.

2          MS. TURNER:  Your Honor, I did not in any -- I

3   apologize if I came across as trying to avoid your question.

4   If Mr. Babin were to name my client in 1,200 more cases than he

5   currently has filed, I certainly would want to discuss with my

6   client as to whether or not we think that's a material change

7   of circumstance.  I would imagine that at a minimum it's a

8   change in terms of how we're going to be able to effectively

9   litigate these cases, whether that's through a plan like what

10  Mr. Babin has proposed or something along those lines, or

11  whether it's going to the JPML.  Certainly having heard about

12  this for the very first time today, I haven't had a chance to

13  think through what that means.  Would it be a change in terms

14  of our litigation ability and ability to handle that number of

15  cases?  Of course it would.

16         MR. MANNO:  Joe Manno for Red Roof Inn.

17         MR. SAGER:  If I could just add one --

18         THE COURT:  Just a second.  Mr. Manno is speaking.

19         MR. MANNO:  I would note for the Court, as the Court

20  is aware, the original opinion did reference the fact that

21  there were 1,500 additional actions of which we have not seen.

22  So I would argue that the JPML did consider 1,500.  Whether

23  it's a change of circumstances, they certainly did consider

24  that already.

25         THE COURT:  In fact, they referenced the number 1,500

1   when they said that plaintiffs assert that the number of

2   actions is likely to expand substantially, referring to

3   potentially 1,500 additional actions.

4           Mr. Sager.

5           MR. SAGER:  Yes, Your Honor.  Dave Sager.  Thank you.

6   I would just note as a matter of data that Mr. Babin's firm has

7   filed one case involving my client in the last 13 months.  So I

8   don't know whether or when these cases will be filed, but Your

9   Honor harkened back to the context of venue where it was a

10  similar representation.  What I am talking about, to be blunt,

11  is I have been hearing this same thing for four or five years

12  from a number of counsel.  And perhaps it is going to manifest

13  this time in a way it hasn't in the past.

14          But one case over the last 13 months does not suggest

15  1,200 cases over the next few years.  Maybe I'm wrong.  That's

16  what I'm struggling with in trying to process Your Honor's

17  question which absolutely Ms. Turner -- 1,200 is a heck of a

18  lot more than 44.

19          MR. BABIN:  Your Honor, if I may.

20          THE COURT:  Yes.

21          MR. BABIN:  First of all, it's plaintiffs' counsel's

22  responsibility to find the best jurisdiction for our client to

23  file these cases.  We believe just, like the JPML panel

24  believed, that some type of informal coordination is the right

25  path after we were denied the first time an MDL.  That requires

1    finding jurisdictions where we can find some type of informal

2    coordination.  I have a ten-year statute of limitations on

3    these cases.  It would not behoove any of my clients at all to

4    go off half-cocked and file them in one place at one time

5    before we figured out whether that jurisdiction made sense for

6    a coordinated effort or not.  It's going to take time.  That's

7    the way litigation is.

8         Certainly, the reason we haven't done that here is the

9    same reason for which we filed what we filed before.  And the

10   more I sit here, the more I think the Court has the right idea

11   of moving for an MDL because we can file all of our cases here,

12   and we can deal with the reality of what those cases look like

13   or don't look like.  But this has been a slow process to build

14   this case.  We filed the first case in the country in front of

15   this Court, as the Court is well aware, under the TVPRA against

16   hotels.  And this case is a case where we represent victims of

17   human trafficking.  We're very sensitive to that.  We're

18   sensitive to our clients and we're sensitive to the issue of

19   justice that we're dealing with here.  So we've been methodical

20   in what we're doing.  But we have cases.

21        MS. BARRICK:  If I may, Penny Barrick for plaintiff.

22   After this Court issued its venue decision in April,

23   plaintiffs'; counsel began building out teams and figuring out

24   how we can get the 2255s here, and what this Court has given us

25   in jurisdiction.  We've continued to litigate the cases here.

33

1    B.D.G., S.R., T.E., G.P.  They're all litigated.  This Court

2    issued 30 decisions and intervention.  The Court has also

3    issued decisions on motions to dismiss.  And in the venue

4    decision at the end, the Court indicated that Magistrate Judge

5    Deavers would issue an opinion -- I mean, a scheduling order

6    with regard to how we were going to bring this next tranche of

7    cases in.

8         We were trying to not be presumptuous with the Court and

9    just dump 30 more cases every other week until we knew what the

10   Court wanted us to -- to give some direction on how it wanted

11   it filed, how the Court wanted to coordinate it.  That's why,

12   Your Honor, if there's only been one or two cases filed here

13   and there, it's not because we don't have cases.  It's because

14   we're trying to be not presumptuous with the Court and wait for

15   its direction on how to litigate the cases we have ready to go.

16        MR. BABIN:  If we can make one more point.  I think

17   defense counsel -- one of the threshold issues in this case has

18   been the ability of defense to assess the case because it takes

19   time to get some sort of confidentiality in order before we

20   turn over our clients' names, which of course could be in place

21   immediately in the context of an MDL and we can turn that over.

22        On our side, the issue is we have a substantial

23   consideration and fear that if the defense goes off and talks

24   to the trafficker, it's going to create a very dangerous

25   situation for our client and potentially for the lawyers

1    negotiating.  What that looks like in the context of a

2    confidentiality order is something we go back to the table

3    every time we bring a new case.  We've even done it in the

4    context of some limited settlement discussions for groups of

5    cases that we've had with defendants which we've had, discussed

6    confidentiality, how they can figure out what's going on in the

7    case.

8         Once that happens, which could happen immediately in the

9    context of the MDL -- it could already be in place, defense is

10   able to really dig in and start doing some work they were not

11   able to do for a while in the beginning.  So I think that

12   Mr. Sager is right in saying that they don't know the names in

13   a lot of these cases because we don't have confidentiality.

14        THE COURT:  Listen, my position is not complicated.

15   And what I'm trying to do is -- and what Judge Deavers and I

16   are trying to do is the same thing that all of you are trying

17   to do, really get to the heart of it and find a management

18   mechanism that will enable us to manage effectively 45 cases or

19   1,500 cases.

20        Now, I don't have the luxury, as a sitting judge, of

21   saying if one of you comes in and represents to me, Ms. Turner

22   and Mr. Sager, that I have filed 50 cases and I have 500 more

23   to file, I'm going to believe that you have 500 more to file

24   because our system is predicated on lawyers who have taken an

25   oath to be officers of the court and behaving in that manner.

1   From where I sit -- and I've sat here for 26 years -- that is

2   what lawyers do.  And to the extent that they don't, I require

3   them to do it.  Judge Deavers is the same.

4       So I'm not going to presume that because he hasn't filed

5   200 more, he doesn't have 1,200.  I'm going to presume that he

6   knows his case well enough to give me a signal that that's what

7   he's planning to do so that we can plan accordingly.  And --

8       MS. CLOUD:  Your Honor?

9       THE COURT:  Yes.

10      MS. CLOUD:  I apologize.  No.  This is Whitney Cloud,

11  and I'll wait to make my comment.

12      THE COURT:  And so, look, if this is the most

13  efficient mechanism, fine.  If it was only 44 cases, I would

14  say let's proceed with a discovery plan and I would want a

15  discovery plan that we could -- you could leave it to me and I

16  can select people to sit in a room and hammer out a discovery

17  plan.  That's not difficult.  That's why they give us Article

18  III power, life tenure, because most of the things that we say

19  aren't aspirational.  They're orders.  And I don't have an

20  aversion to giving an order.  But my orders are no better than

21  the facts that I have to deal with.

22      And the facts are that the master of this case, the

23  plaintiff, says that we have 1,200 more of these.  Maybe it

24  doesn't have 1,200.  Maybe he has 750.  Well, 750 plus the 45,

25  that's about 795.  Eight hundred cases is also a good number

1    for multi-district litigation.  It's for this reason that we

2    brought you all together to discuss it.

3          I understand your concern, Ms. Turner, and yours,

4    Mr. Sager.  And maybe we could -- Judge Deavers and I should

5    have given you a detailed order so that you could have had time

6    to research some of these matters.  But there used to be this

7    concept of let's work through this issue together.  It's not --

8    Ms. Turner, you advised the Court that you have experience in

9    multi-district litigation, so I'm going to rely on your

10   experience in multi-district litigation to noodle through this

11   issue today; not tomorrow, today.

12         And so I'm going to ask this room full of talented

13   lawyers to use their experience to help us noodle through this

14   issue.  It doesn't count that you're complaining about, well, I

15   didn't know that you were going to end this sentence with a

16   period.  Well, I am.  And this is what we're discussing.  This

17   is the case that we have.  And so if you didn't have any idea

18   that at some point we would discuss how do you manage 1,200

19   cases, that's on you, not on the judicial officers.

20         Now, having said that, does anyone else who hasn't

21   addressed this issue have an argument to make as to why this

22   does not represent a change of circumstances or some other

23   paradigm that we could deploy to manage effectively and

24   expeditiously and efficiently somewhere between a thousand and

25   maybe 1,500 cases?

1    We've heard from Mr. Sager and Ms. Turner.  Is there

2  anyone else?  Ms. Cloud?

3    MS. CLOUD:  Yes, Your Honor.  So in terms of your last

4  point which I think is very well taken, I would just like to

5  say that as much as Your Honor's correct that this is a problem

6  we all need to work through and lend collective experience to,

7  it is also a problem, as Mr. Sager pointed out, that we would

8  like to weigh in with our clients on.  You've raised a number

9  of good points.  Mr. Babin's raised points, too, about ways to

10  streamline.

11    The clients are going to have different preferences.  It

12  may be that those all harmonize or don't.  We would like the

13  opportunity to talk about that with them.

14    THE COURT:  That makes sense, Ms. Cloud.  And we'll

15  take that into consideration.  But I just want everybody to

16  understand clearly and on no uncertain terms that we aren't

17  doing this for the purposes of delay.  Judge Deavers and I have

18  been trying to move things through the system as expeditiously

19  as possible.

20    But I don't want it to become unwieldy.  And if we're

21  going to get 1,200 more cases, it could easily become unwieldy

22  when we are prepared to deal with 45 cases or somewhere in that

23  range.  And so if you need some additional time, we can give

24  you additional time.  But this is not going to be a three-month

25  process where we're going back and forth as to what we ought to

38

1  do because my inclination, what I had intended to do, was to

2  direct Mr. Babin today, give him -- find out how much time it

3  would take for him to reapply to the JPML in light of these

4  changed circumstances.

5        But in deference to some of the concerns raised by

6  Ms. Turner, Mr. Sager, and Ms. Cloud, I'm willing to

7  contemplate a pause, give you a couple of weeks to talk with

8  your clients.  Things are slowing down now.  It's the holiday.

9  Your clients might be assessable to you.  You'll have time to

10 sit down and talk with them about their -- get their input in

11 this.  But we're talking about two weeks max.

12       And then I want to -- unless there is a compelling

13 reason not to do so -- and I have thought about this for a

14 while.  I haven't thought of any compelling reason not to do

15 so.  I was going to direct Mr. Babin to reapply to the JPML

16 because of these significantly changed circumstances.

17       And I know, Mr. Manno, that you're right.  There was

18 that representation then, but what I'm thinking is that was the

19 representation in 2020.  Three years later Mr. Babin is in a

20 better position to present to the JPML why he believes there

21 are going to be an additional 1,200 cases filed.  If the JPML

22 decides that still isn't good enough, and I still intend to

23 submit my letter, then we will deal with these cases as they

24 are.

25       And we will -- you can look forward to sitting in a room

1   and coming up jointly with a discovery schedule because it

2   doesn't make sense to have the moving target approach where

3   we'll issue an order and then you get about ten different

4   motions, a motion from every law firm or every party saying,

5   you know, why they can't work with this.  But if I put

6   everybody in a room, say this is -- you don't have a choice but

7   to come up with a plan, you come up with a plan and you stick

8   to it, and then we move through this discovery process with

9   some dispatch.

10          MR. BABIN:  Your Honor, if I may.

11          THE COURT:  Yes.

12          MR. BABIN:  You suggest you could still direct

13   plaintiffs' counsel to draft that motion to the JPML panel and

14   we could instead maybe add two weeks for defense counsel to

15   look at it and see whether they would oppose or join, and we

16   could just file that as a notice on the docket for defense

17   counsel to look over.  And then we can move after the two weeks

18   if the Court were inclined to have us do that.

19          THE COURT:  Mr. Sager, Ms. Turner, would that be

20   acceptable to the two of you?

21         Mr. Sager first, then Ms. Turner, and then the other

22   gentleman.

23          MR. SAGER:  This is Dave Sager.  It may not be

24   sufficient for a number of reasons, but let me explain one that

25   comes immediately to mind.

1          THE COURT:  All right.

2          MR. SAGER:  We are talking about this in the context

3    of plaintiffs and defendants.  My recollection of the MDL was

4    that there were certain plaintiffs' counsel across the country

5    who disagreed with the approach.  And I don't know who is with

6    Your Honor right now, but I do know there are other plaintiffs'

7    firms that are involved in litigating these cases before Your

8    Honor currently.

9          I would suggest in this process that instead of us

10   relegating into notice to defendants, there is the potential at

11   least for defendants to agree with each other and plaintiffs to

12   disagree with each other.  And while it may not take any more

13   time, I certainly don't disagree with Your Honor's goal of

14   prompt dispatch on the issue.  I do think there needs to be

15   better, more fulsome communication on the issue.

16          THE COURT:  Okay.

17          MR. BABIN:  To that extent, we would coordinate with

18   plaintiffs' counsel.  The counsel down in Atlanta who opposed

19   this originally, I believe most of their cases are wrapped up

20   and/or they're litigating those in state court.  I don't think

21   they're going to be a hinderance to this moving forward.  We're

22   already working with everybody who was involved anyway.  We

23   would get everyone on board on our side.  I would do that.

24          THE COURT:  Ms. Turner?

25          MS. TURNER:  Your Honor, I guess in terms of

41

1    understanding what the proposal is, you're asking me whether or

2    not I would oppose Mr. Babin filing his JPML proposal and us

3    having two weeks to decide whether or not --

4            THE COURT:  No.  No.  That's not what I said.  What I

5    was saying was that two weeks you would have to confer with

6    your client because both Mr. -- I thought you, but certainly

7    Mr. Sager had made reference to the fact that -- something that

8    he wished to speak with his client about.  And I was going to

9    give defense two weeks.  And then, at the end of that two-week

10   period, have Mr. -- take essentially a two-week pause and then

11   the clock starts running for Mr. Babin to file his motion

12   effectively for reconsideration with the JPML.

13           MS. TURNER:  Your Honor, I would have absolutely no

14   objection to that.  Obviously would appreciate the time to

15   discuss with our client as well.

16           THE COURT:  All right.  Thank you, Ms. Turner.

17   Ms. Cloud?

18        I'm sorry.  Say that again, Mr. Sager.

19           MR. SAGER:  Dave Sager.  And I agree with Ms. Turner.

20           THE COURT:  Ms. Cloud?

21           MS. CLOUD:  I agree as well, Your Honor.  Thank you.

22           THE COURT:  All right.

23           MR. HEALY:  There's one more gentleman on the phone.

24           MR. HAMRICK:  This is John Hamrick on behalf of the

25   IHG defendants.  We're certainly in a position and willing to

1   meet with our client and coordinate to see if we can come up

2   with a unified response.  However, I just want to confirm.

3   There are certain things I've been able to hear on this call

4   and sometimes the audio has not been great.

5        Is Your Honor also, I think, interested in hearing if

6   the parties are able to come up with a proposal for more

7   efficient handling of these cases within the southern district

8   perhaps within a (indiscernible) type mechanism with a

9   coordinated and kind of uniform schedule and uniform protective

10  orders and confidentiality orders?  Is Your Honor also looking

11  for potential proposal in that respect?

12        THE COURT:  Here's what would be ideal for me, quite

13  frankly.  Again -- and for the sake of all of you who are

14  joining us like Ms. Turner, Mr. Sager, and Ms. Cloud, I would

15  first like the JPML panel to look at this again.  If they say

16  no, then that's when I believe that we should bring everyone

17  together and have everyone develop a discovery plan that works

18  and move these along.

19        Preliminarily, I agree with Mr. Babin, that the cases

20  that are on track to go to trial in '24 should, in fact, go to

21  trial in '24.  Because as many of you who are in Columbus know,

22  I think that trials, as obsolete as they have become, are still

23  the cleansing agent.  And so when I can -- when we can get

24  these cases to go to trial, then we can get cases to settle

25  because that puts it in perspective for the clients and equally

43

1   as importantly the lawyers.

2         And so I would certainly like to try the first one of

3   these -- first one or two of these next year, if that's

4   possible, in '24, but, if it's not possible, as soon as

5   possible.  But the first thing I'd like to do is get the

6   correct mechanism in place.  The correct mechanism may have

7   been in place when I didn't know about these additional 1,200

8   or so cases.  But now that -- that's what MDLs are for.  And so

9   I sincerely believe, Ms. Turner -- and I'm sure you would agree

10  with me since you have such experience with MDLs, that we would

11  take a pause initially.  But we would move through with

12  alacrity because we had the MDL structure and we could take --

13  try some bellwether cases.  So that's my view.

14        So hold on to thoughts that you have about how best we

15  can proceed in SDOH if this is not MDL.  Because if it's not

16  MDL, we'll be back to you.

17        Now, is there -- any other comments from those of us in

18  the room, from defense counsel?  Mr. Manno.

19            MR. MANNO:  Your Honor, on behalf of Red Roof Inn, no

20  objection to your proposal.

21            THE COURT:  Okay.

22            MR. BABIN:  Note of clarification.  When would you

23  like to see plaintiffs' counsel file a notice of a draft

24  motion?

25            THE COURT:  Well --

44

1      MR. BABIN:  Simply for the purpose of defense counsel

2  to take that to their clients to -- we can provide it to them

3  in another way, I guess.

4      THE COURT:  I think I understand what you're saying,

5  and that would make sense.  It would probably have a more

6  profound effect on the panel if both plaintiffs' counsel and

7  defense counsel agreed.

8      I don't know -- no offense to anyone in the room or on

9  the phone, I don't have a great deal of confidence that I'm

10  going to get agreement on this issue.  And in the event that

11  there is not agreement on this issue, the Court is still going

12  to direct Mr. Babin to apply to the JPML.

13      So this is what I'm going to propose.  Defense counsel

14  has two weeks to confer with counsel and decide whether they

15  are willing to join in Mr. Babin's motion to have this case

16  MDL'd.

17      MAGISTRATE JUDGE DEAVERS:  Mr. Babin, how soon do you

18  think you could have that ready?

19      MR. BABIN:  If we could have -- if we could have till

20  the first of the year, I could get the rest of the plaintiffs'

21  counsel involved to join in with us where we would have a

22  motion where I could have some other lawyers that are going to

23  be involved sign too.

24      THE COURT:  Mr. Babin, how about January 5th?

25      MR. BABIN:  Certainly, Your Honor.

1       THE COURT:  So Mr. Babin will circulate to defense

2  counsel his proposed motion for MDL.  And because you will have

3  had two weeks to talk to your client about it, I'll give you

4  till the 12th either to join in or to not.

5       MR. MANNO:  Does Your Honor want us to file something

6  if we're not?

7       THE COURT:  I think it would probably be cleaner if

8  everybody filed whether you're in or out.  But, in any event, I

9  want everybody to be clear that Mr. Babin will be filing some

10  variation of a motion for the JPML to MDL this case.

11      So after the 12th, Mr. Babin, I'll give you until the

12  26th to file your motion with the JPML.

13       MR. BABIN:  Your Honor, I'm just looking here.  It

14  looks like the panel just sat the 30th.  And I think they sit

15  every 90 days, if I'm right.  So if we were to take a second, I

16  think we can tweak this so we can file for the next hearing 90

17  days from the 30th.  I don't know when -- I'm trying to look on

18  my phone.  I don't know exactly when the filing deadline would

19  be to get into that next hearing.  If it's close in the dates

20  the Court is proposing, we can find that out this afternoon and

21  let the Court know and tailor it so we could be heard at the

22  next JPML panel hearing.

23       THE COURT:  So they --

24       MR. BABIN:  Sat the 30th.  And I believe they sit

25  every 90 days.  I'm not sure what the filing deadline is for

46

1   the motions in order to be heard at the next sitting.  But we

2   can certainly tailor it so that would be the case.  And if we

3   tweaked anything, it would be within a couple of days.

4        If you gave us this afternoon, we can give you -- I just

5   can't find it on my phone right now or I would give it to you

6   right now, Your Honor.  We could give you dates so we could

7   know we're in a position to be heard at that next hearing.

8        THE COURT:  All right.  But the order stays the same.

9   And then if you find out something different, then the Court

10  may change its order.  I just don't want everyone to leave here

11  without direction.  And so if you have direction, whether you

12  agree with it is not -- is of no moment.  At least you know

13  what we're going to do and when we're going to do it and that

14  will help structure what you're going to do with your client.

15       Are there any questions from the plaintiff?

16       MR. BABIN:  No questions from the plaintiff, Your

17  Honor.  Thank you.

18       THE COURT:  Any questions from Red Roof Inn's counsel,

19  Mr. Manno?

20       MR. MANNO:  None, Your Honor.

21       THE COURT:  Any questions from Liberty Mutual,

22  Ms. Cloud?

23       MR. HEALY:  Ms. Cloud is for G6.

24       THE COURT:  Any questions for G6, Ms. Cloud?

25       MS. CLOUD:  No, Your Honor.

47

```
1            MR. HEALY:  And I have none either.  Patrick Healy.

2            THE COURT:  From Wyndham, Mr. Sager?  Anything from

3    Wyndham?

4            MR. SAGER:  No, Your Honor.

5            THE COURT:  Ms. Turner, anything from Choice?

6            MS. TURNER:  Your Honor, I apologize for having the

7    one question, but --

8            THE COURT:  No worries.  I would rather that you ask

9    questions than not.

10            MS. TURNER:  I just want to make sure that I fully

11    understand exactly what you're looking for from us two weeks

12    from now in terms of what you want --

13            THE COURT:  So I'm giving you two weeks to talk with

14    your client.  Then Mr. Babin is going to circulate a draft on

15    January 5th.  And you'll have that draft.  You'll have an

16    opportunity to consider it and then advise the Court by the

17    12th whether you're going to oppose it or whether you're going

18    to join it.  I'm giving you effectively three weeks.  Two weeks

19    to talk to your client now, and then once Mr. Babin files his

20    motion, you'll have another week to mull it over or to ruminate

21    with your client.  And then you will let me know on or before

22    January 12th whether you're joining it or not.

23            MS. TURNER:  Thank you, Your Honor.  That makes

24    perfect sense.  I appreciate the clarification.

25            THE COURT:  Anyone else?  Ms. Ortiz?
```

48

1          MS. ORTIZ SEE:  No, Your Honor.  Thank you.

2          THE COURT:  Judge?

3          MAGISTRATE JUDGE DEAVERS:  Nothing else.

4          THE COURT:  All right.  Well, listen, thank you very

5   much, everyone.  And we're going to continue to work

6   assiduously to get this on track so that we don't waste your

7   clients' time, we don't waste your time, and certainly we don't

8   waste the plaintiffs' time.

9          So thank you very much and thank you, everyone, who

10  participated by phone for your questions.  It gave us a chance

11  to flesh things out.  We're adjourned.

12          (Proceedings concluded at 3:22 p.m.)

13                              - - -

14

15

16

17

18

19

20

21

22

23

24

25

49

C E R T I F I C A T E

    I, Shawna J. Evans, do hereby certify that the foregoing is a true and correct transcript of the proceedings before the Honorable Algenon L. Marbley, Judge, and Honorable Elizabeth Preston Deavers, Magistrate Judge, in the United States District Court, Southern District of Ohio, Eastern Division, on the date indicated, reported by me in shorthand and transcribed by me or under my supervision.


                        s/Shawna J. Evans_____
                        Shawna J. Evans, RMR, CRR
                        Official Federal Court Reporter


                        December 5, 2023