**BEFORE THE UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

In re: Hotel Industry Sex Trafficking Litigation (No. II)        MDL-3104

**CONSOLIDATED REPLY IN SUPPORT OF TRANSFER OF ACTIONS TO THE SOUTHERN DISTRICT OF OHIO (EASTERN DIVISION) PURSUANT TO 28 U.S.C. § 1407 FOR CENTRALIZED / PRETRIAL PROCEEDINGS**

In the four years since this Joint Panel on Multidistrict Litigation ("JPML") initially declined centralization, the lack of formal coordination has produced substantial judicial inefficiencies and the tangible consequences leading to unreasonable delays, Contrary to the 2019 JPML's expectations that informal coordination would streamline identical pre-trial matters and resolve common factual questions, the reality has been far from efficient or coordinated. Instead, parties have found themselves mired in prolonged negotiations over protective orders, electronic discovery, jurisdictional disputes, and re-litigation over the same questions related to the scope of discovery, all while common questions of fact have become increasingly evident but remain unresolved.

Indeed, Chief Judge Algenon Marbley, the district court best situated to assess informal coordination and a neutral non bias party, agrees that informal coordination has been in effective and these cases should centralized pursuant to Section 1407. All the Parties opposing centralization have the unenviable task of opposing Chief Judge Marbley's years of docket management experience handling countless highly complex, multi party litigations. Chief Judge Marbley also has the most experience with these cases. He had the first case and has more cases than any other judge. His cases have been cited hundreds of times in the courts, academia, and beyond. Chief Judge Marbley understands legal claims, the discovery issues, and has dealt with the same lawyers Corporate Brand Hotels lawyers for years. The undersigned moved for the instant MDL because

at the direction of Chief Judge Marbley. Chief Judge Marbley properly determined this case has common issues of fact, and that centralization would benefit the convenience of parties and witnesses, and promote the just and efficient conduct of such actions. Chief Judge Marbley has no stake in the outcome like the many parties filing briefs in this case.

Moreover, protracted, and uncoordinated litigation has verified what Plaintiffs have consistently alleged: that Corporate Brand Hotels exercise significant control over the issue of human trafficking and defense strategies. Opponents of this motion have no substantial counter to these facts; their objections pivot to a poor attempt to create chaos related to the standards for consolidation. For the reasons set forth below, the panel should consolidate these claims.

I. **Chief Judge Marbley Is Experienced in Handling Complex Litigation, Including Cases Related to Human Trafficking, and The Southern District of Ohio Is an Appropriate Jurisdiction**

In December 2023, Chief Judge Marbley ordered Plaintiffs' to seek reconsideration of coordination relief from the JPML Panel so that he would be afforded the tools to efficiently move the litigation.[1] The Panel has determined that in selecting a transferee judge is important to consider a "transferee judge with the time and experience to steer this litigation on a prudent course and sitting in a district with the capacity to handle this litigation." *In re Motor Fuel Temperature Sales Practices Litig.*, 493 F. Supp. 2d 1365, 1367 (J.P.M.L. 2007). Furthermore, a particular judge's

---

[1] All Defendant's comparison to *S.C.* in the Northern District of Ohio is apropos to this Panel's decision. In that case, a district judge who has no experience with cases under the TVPRA has moved the case at times to the survivor's detriment. For example, that court preferred to keep a scheduled date than to permit an extra week for the Plaintiff to see her therapist to process her deposition before being ordered to an examination by a defense expert psychiatrist. These cases deserve a judge that will view them with trauma informed knowledge and experience. And while certainly efficient pretrial proceedings are necessary and possible, the litigants before the trial court should have some impact on that court's determination of its schedule.

willingness, ability, and motivation for handling complex litigation is an essential element in venue selection.[2]  Chief Judge Marbley is without question the ideal transferee judge.

Chief Judge Marbley has disposed of *every single motion* that has been filed before him *within six (6) months for seventeen (17) years*.[3]  The Civil Justice Reform Act of 1990 (CJRA) requires the Director of the Administrative Office of the United States Courts (AO), under 28 U.S.C. § 476, to prepare a semiannual report showing by U.S. district judge and magistrate judge, *inter alia*, all motions pending more than six months.[4] The reporting requirements under the CJRA are designed to help reduce both costs and delays in civil litigation in the district courts.[5]

Chief Judge Marbley has a sterling record of his movement of cases not reporting even one delinquent motion in his bi-yearly reports from 2007 through 2023.  This record reflects his unparalleled ability to move pretrial proceedings in a very efficient and timely manner.  This statistic is most important here because it shows that Chief Judge Marbley resolves pretrial issues and moves pretrial proceedings without delay.  G6's arguments related to *M.A.* and *E.C.* and their purported argument in Chief Judge Marbley's handling of the cases does not reveal t  the delayed discovery disputes and jurisdictional disputes at issues in those cases.  Even with the significant number of TVPRA cases, along with his regular docket, Chief Judge Marbley's ability to move pretrial proceedings is unparalleled.

---

[2] In a 2008 Tulane Law Review article entitled, *A View from the Panel:  Part of the Solution*, 82 Tul. L. Rev. 2225, 2240, Judge John G. Heyburn, II emphasized the importance of the transferee judge and stated "[t]he willingness and motivation of a particular judge to handle an MDL docket are ultimately the true keys to whether centralization will benefit the parties and the judicial system." *Id*.
[3]  https://www.uscourts.gov/statistics-reports/analysis-reports/civil-justice-reform-act-report
[4] *Id*.
[5] *Id*.

A particular judge's willingness, ability, and motivation for handling complex litigation is an essential element in venue selection.[6] *In re Dial Complete Mktg. & Sales Practices Litig.*, 804 F. Supp. 2d 1380, 1381 (J.P.M.L. 2011) (transferring to the District Court of New Hampshire on grounds that the judge "is willing and able to accept the assignment"). Chief Judge Marbley's experience with these cases has given him the insight to the common questions of fact presented in these cases, significant discovery and pre-trial challenges, and delays that result from informal coordination efforts. His decisions have contributed to the body of case law apply the TVPRA more than any other judicial officer's. There simply is no other judge as knowledgeable and experienced with the TVPRA cases.

Chief Judge Marbley has experience adjudicating large-scale cases involving numerous plaintiffs, defendants, and a variety of complex claims.[7] Even with this deep experience of

---

[6] In a 2008 Tulane Law Review article entitled, *A View from the Panel: Part of the Solution*, 82 Tul. L. Rev. 2225, 2240, Judge John G. Heyburn, II emphasized the importance of the transferee judge and stated "[t]he willingness and motivation of a particular judge to handle an MDL docket are ultimately the true keys to whether centralization will benefit the parties and the judicial system." *Id*.

[7] *See, e.g., In re Cardinal Health, Inc. Sec. Litig.*, 550 F. Supp. 2d 751 (S.D. Ohio 2008) ($600 million securities class action); *see also Feiertag v. DDP Holdings, LLC*, No. 14-CV-2643, 2016 WL 4721208 (S.D. Ohio Sept. 9, 2016) (Fair Labor Standards Act (FLSA) class action); *Graybill v. KSW Oilfield Rental, LLC*, No. 2:15-CV-2462, 2016 WL 2625238 (S.D. Ohio Jan. 28, 2016) (FLSA class action); *Johnson v. Midwest Logistics Sys., Ltd.*, No. 2:11-CV-1061, 2013 WL 2295880 (S.D. Ohio 2013) (Fair Credit Reporting Act class action); *In re AEP ERISA Litig.*, No. 2:03-cv-67, 2009 WL 614951 (S.D. Ohio Mar. 6, 2009) (Employee Retirement Income Security Act class action; certification denied); *Stewart v. Cheek & Zeehandelar, LLP*, 252 F.R.D. 387 (S.D. Ohio 2008) (Fair Debt Collection Practices Act class action); *Castillo v. Morales, Inc.*, 302 F.R.D. 480 (S.D. Ohio 2014) (FLSA class action); *Bentley v. Honeywell Int'l, Inc.*, 223 F.R.D. 471 (2004) (Comprehensive Environmental Response, Compensation, and Liability Act and Resource Conservation and Recovery Act class action). Judge Marbley has also handled numerous products liability cases. *See, e.g., Great N. Ins. Co. v. BMW of N. Am. LLC*, No. 2:11-CV-1153, 2015 WL 3936229 (S.D. Ohio June 26, 2015) (auto defect case; jury verdict for defendant); *Davisson v. Ford Motor Co.*, No. 2:13-CV00456, 2014 WL 4377792 (S.D. Ohio Sept. 3, 2014) (auto defect class action case; defendant's motion to dismiss granted); *Delahunt v. Cytodyne Tech.*, 241 F. Supp. 2d 827 (S.D. Ohio 2003) (consumer class action over dietary supplement; defendant's motion to dismiss granted in part and denied in part).

managing complex dockets, Judge Marbley seemingly determined that informal coordination is not workable for these cases in his court and has sought assignment of his first MDL.

Chief Judge Marbley is well respected by both sides of the bench for his intelligence and skills as a trial judge. Chief Judge Marbley was appointed as an Article III Judge by President William Clinton in 1997, serving in that capacity for the last 27 years.[8] Additionally, he regularly sits by assignment on the Sixth Circuit Court of Appeals and the Ninth Circuit Court of Appeals. Chief Judge Marbley also teaches trial practice at the Ohio State University Moritz College of Law and Harvard Law School.

Lastly, Chief Judge Marbley works in a district with an outstanding Clerk's Office. The Southern District of Ohio has the capacity to handle this MDL in the same manner it is managing the third largest MDL in the country, MDL -2846 *IN RE: Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Products Liability Litigation* that currently has 21,169 cases.[9] The District has five District Judges, eight Senior Judges, and nine Magistrate Judges.[10] The Southern District of Ohio provides a well-staffed and top-notch clerks' office with plenty of experience in handling numerous complex cases, including MDLs, in an efficient manner. Moreover, in recent MDL's, the Southern District has proven itself capable of providing a user-friendly, easily accessible, and state-of-the-art webpage that provides useful information such as attorney contacts and court orders, thereby providing ease of access to information for litigants across the country.[11]

---

[8] *See* www.ohsd.uscourts.gov/biomarbley (last viewed December 13, 2023).

[9] https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_Actions_Pending-February-1-2024.pdf  Plaintiff notes that the statistics for case pending length and case load are skewed in the Southern District of Ohio with regard to because of this MDL, which counts the 21,169 cases that have been pending there since 2018 as separate individual cases.

[10] http://www.ohsd.uscourts.gov/judges-biographical-sketch  (last viewed November 25, 2019).

[11] http://www.ohsd.uscourts.gov/multidistrict-litigation-2433 (last viewed November 25, 2019).

## II. Facts of Plaintiff's Case Warrant Consolidation

A. **Common Issues of Fact are Abundant Here, and Opposing Parties' References to Predominance, Commonality, and Typicality are a higher threshold standard specifically set forth for Rule 23 class certification, not Section 1407 Centralization.**

A consistent theme in the opposition's briefing is the misinterpretation of the legal standard that guides the Panel in forming an appropriate MDL. Centralization, as defined by 28 U.S.C. § 1407(a), is crucial when "actions involving one or more common questions of fact are pending in different districts," ensuring that proceedings are convenient for parties and witnesses and promote just and efficient conduct. The statute aims to prevent conflicting and duplicative pretrial demands, as underscored by *In re Regents of University of California* and further elaborated in *In re Denture Cream Product Liability Litigation*. Centralization is warranted, especially in scenarios like the present, where it will mitigate duplicative discovery, avoid inconsistent pretrial rulings, and conserve resources across the board.

The oppositions overlook the Panel's mandate to consider the common questions of fact, the inconvenient and inconsistent discovery that has transpired, and the overarching need for enhanced judicial efficiency. Individual characteristics in cases, as noted in precedents such as *In re Mirena IUS Levonorgestrel-Related Product Liability Litigation* and others, do not preclude the benefits of centralization when faced with multiple and complex common questions of fact. The focus of the opposition on the plaintiffs' legal theories rather than the factual basis for centralization misguides their argument, failing to recognize that centralizing claims against Corporate Brand Hotels is the most effective way to manage pretrial discovery uniformly.

1. *Scope of Plaintiff's Proposed MDL*

At forefront, it is important to understand the scope of this proposed MDL. The scope is what frames the discussion below. Movant proposes an MDL of seven corporate hotel brands and

6

their dozens of underlying brand chains. These seven mega corporate hotel brands make up the majority of U.S. hotel industry. Moreover, of the many thousands of potential clients the undersigned's firm has vetted, and the thousands of retained clients, every one of these clients has a claim against at least one of the seven defendants. The nature of if the sex trafficking is transient and generally victims have significant overlap between corporate hotel brands where they are trafficked. The undersigned's clients have been trafficked in hotels of at least three of the seven named corporate brand hotels.

Corporate brand hotels are in the business of cultivating, promoting, and protecting their underlying hotel chains. The Corporate Brand Hotels ensure consistency in their locations throughout the country, and they do this by utilizing processes and procedures in training in brand standards. These Corporate Brand Hotels sit at the top of the hotel industry, where they have the most ability to address industry wide issues such as human trafficking. It is from their purview of the industry that they are able to examine, understand, investigate, and determine the prevalence of human trafficking within the hotel industry. And then to identify the training and standards that would be most effective to recognize human trafficking at their chain hotels and to ensure that they are not profiting from the human trafficking.

These explorations are critical for understanding the nature of sex trafficking, victim grooming, and the potential liability of hotels under the TVPRA for practices like room rentals and providing guest Wi-Fi, i.e., profiting from the trafficking. The need for a centralized forum becomes evident, aiming to address these complex and widespread issues efficiently and prevent the judicial system's congestion. The harmonization of pretrial case management orders—including ESI, confidentiality, protective, and discovery orders—underscores the necessity and

advantages of consolidation under 28 U.S.C. § 1407, facilitating a more coordinated and effective approach to tackling these pervasive challenges.

   2. *Neither Predominance nor Identical Issues are required for Centralization.*

Centralization under Section 1407 is designed to enhance judicial efficiency by consolidating pretrial proceedings in cases that share "one or more common questions of fact," as explicitly stated in 28 U.S.C. § 1407(a). This statutory language intentionally sets a lower threshold for consolidation compared to the criteria for class action certification, "does not require that these common issues predominate over non-common issues." § 6:55. Substantive standards for JPML transfer and establishment of MDLs—Common issues requirement—Predominance, 2 Newberg and Rubenstein on Class Actions § 6:55 (6th ed.). Any suggestion to the contrary is wrong, yet such suggestions litter the opposition briefs.

"This is a misstatement of the legal standard for centralization under Section 1407. The statute does not contain a predominance requirement." *In Re: Uber*, MDL No. 3084, Supplemental Order, Dkt. 134 at 4 (Jan. 4. 2024). As the Panel has repeatedly stated in its Transfer Orders, the Section 1407 requirement for a common question of fact should not be confused with the requirements for predominance in class actions under Federal Rule of Civil Procedure 23. A Section 1407 transfer is merely "a mechanism for coordinating pre-trial case management and therefore embodies a lower threshold of commonality" than does the aggregation of all claims in a class certification under Rule 23(b)(3). William B. Rubenstein et al., Newberg and Rubenstein on Class Actions § 6:55 (Thomson Reuter, 6th ed. 2022); *see In re: Glucagon-Like Peptide-1 Receptor Agonists GLP-1 Ras Prods. Liab. Litig.*, 2024 U.S. Dist. LEXIS 20082, *4 (J.P.M.L. Feb. 2, 2024) ("But a complete identity or even a majority of common factual or legal issues is not a prerequisite to transfer under Section 1407."); *In re: Eliquis (Apixaban) Prods. Liab. Litig.*, 2017

WL 6569794, at *2 (J.P.M.L. May 30, 2017) (holding that "transfer does not require a complete identity of parties or factual issues when, as here, the actions arise from a common factual core".)

### III. Common Questions of Fact

Plaintiffs' allegations against Corporate Brand Hotels are anchored in a series of common questions of fact that are significant to justify the centralization of these cases.

#### A. Analogous Transfer Orders Provide a Roadmap

Complex litigation related to sexual assault claims against Uber and personal injury suits related to hair relaxers are analogous and instructive to the consolidation of TVPRA claims against Corporate Brand Hotel defendants. *In Re: Hair Relaxer* included numerous, unrelated defendants and Plaintiffs who used one or more of their products which allegedly led to their injury. *See In Re: Hair Relaxer*, MDL 3060, Transfer Order. There, the question of, "Whether and when defendants knew or should have known of the alleged risks posed by hair relaxer products, and whether defendants engaged in adequate testing and post-market surveillance" was key. *Id.* at 2.

Analogous common questions were vital to the centralization of sexual assault and rape claims against Uber. *See In re: Uber Techs., Inc., Passenger Sexual Assault Litig.*, No. MDL 3084, 2024 WL 41889, at *3 (U.S. Jud. Pan. Mult. Lit. Jan. 4, 2024). Despite some plaintiff-specific factual issues, centralization was granted for the "almost 80 actions…pending" in a "litigation [that] seemed likely to grow." *Id.* (*citing In re: Uber Techs., Inc., Passenger Sexual Assault Litig.*, No. MDL 3084, 2023 WL 6456588, at *2 (J.P.M.L. Oct. 4, 2023). "[C]entralizing the cases before a single judge for pretrial proceedings [is] the most efficient route for the litigation." *See id.* This Panel was not persuaded by opponent's argument that sexual assault by drivers using the Uber App was the *only* common fact among these actions. *See id.* at note 5. Rather, the Panel found common factual issues in those cases included, but were not limited to: (1) Uber's policies for vetting,

9

training, and monitoring of its drivers; (2) Uber's representations about its safety and hiring policies; (3) any knowledge Uber may have had concerning the pervasiveness of sexual assault by its drivers; (4) Uber's practices for gathering information about sexual assault and sexual harassment on its platform; (5) Uber's practices for responding to and investigating sexual assault and harassment complaints; (6) Uber's policies on cooperating with law enforcement in connection with sexual assault and harassment complaints; (7) Uber's policies regarding disciplining drivers about whom it received complaints; and (8) safety measures that were, or could have been but were not, implemented. *Id.* Moreover, this Panel also was not convinced by Uber's assertion that centralization could create indefinite multistate litigation on issues of common fact among the actions, referencing other MDLs related to product liability litigation in which products were still on the market. *See id.* In fact, the goal of consolidation of Uber actions was not to prevent *all* sexual assaults by its drivers, "but rather allege that *defendants failed to put in place procedures and safeguards that would reduce the number of such assaults*." *See id.* (emphasis added).

### B. The Common Questions of Fact in the Context of Corporate Brand Hotels

The facilitation of survivors' sex trafficking in violation of the TVPRA is not the *only* common fact among the subject actions just as sexual assault by drivers using the Uber App was also not the *single* shared fact among the actions that were consolidated against Uber. *See In re: Uber* at *3.

Here, similar to *Uber*, overriding, common factual questions include, but are not limited to: (1) Defendants' policies, practices, and procedures for recognizing sex trafficking at their branded properties; (2) any knowledge Defendants' may have had concerning the pervasiveness of sex trafficking in hotels and in their properties; (3) Defendants' practices for gathering information about sex trafficking in their properties; (4) Defendants' practices for responding to

10

and investigating sex trafficking at their properties; (5) Defendants' policies on cooperating with law enforcement in connection with sex trafficking; (6) Defendants' policies regarding response to brand properties about whom it received complaints; (8) safety measures that were, or could have been but were not, implemented; (9) Training or requirements related to the recognition of sex trafficking promulgated by Defendants to branded properties; and (10) statistical data known, collected, and / or used by Defendants through booking platforms, shared internet protocols, security protocols, and other means related to the occurrence of sex trafficking at their properties.

## IV. Significant Change in Circumstances Since 2019

In the four years since the Panel decided against centralizing a differently constituted hotel industry sex-trafficking MDL, the burden of litigation in *each* case and on the judiciary without consistent treatment of factual questions related to Corporate Brand Hotels has been realized. Opponents are correct that there has not been a flood of filings under the TVPRA against Corporate Brand Hotels since centralization was denied in 2020. But more than the fact itself, the reasons why are important. *In re: Hotel Indus. Sex Trafficking Litig.*, 433 F. Supp. 3d 1353. Any delay in filing new actions is a direct result of lack of centralization and delays in litigation due to inconsistent factual and discovery rulings across the country as well the same Corporate Brand hotel witnesses required to respond to discovery and depositions in many of the cases.

Inconsistent outcomes and duplicative efforts in discovery are factors to consider in the determination of whether to centralize cases. *See* J.P.M.L. Multidistrict Litigation Manual § 5:17. General factors relating to the threshold question of whether the just and efficient conduct of the litigation will be advanced by transfer include: (1) Avoidance of conflicting rulings in various cases; (2) Prevention of duplication of discovery on common issues; (3) Resolution of conflicting class actions; (4) Avoidance of conflicting and duplicative pretrial conferences; (5) Advancing

judicial economy; and (6) Reducing burdens on parties by allowing division of workload among several attorneys. The Panel has stated that the prevention of duplicative discovery is one of the purposes of permitting transfer under 28 U.S.C.A. § 1407 and has also specifically identified it as a factor favoring transfer in particular cases. *See id.* at § 5:6. While the Panel recognizes that centralization is not the only way to deal with the risks and costs of duplicative discovery -- depositions can be noticed in related cases, discovery can be shared in other actions, judges can direct parties to coordinate pretrial activities, and courts can stay actions voluntarily to allow discovery to proceed in a single action – as discussed *infra* at 12, Petitioners' efforts to effect these processes have been unsuccessful and opposed every step of the way by Corporate Brand Hotels. In addition, informal coordination has not prevented duplicative discovery and overburdened attorneys on both sides, resulting in stalemates over basic pretrial matters. The corresponding delays are also a detriment to the survivor who suffers from additional and significant trauma from prolonged discovery. *See id*. This is likely why at least thirty (30) cases referenced in § 5:26 of the J.P.M.L. Multidistrict Litigation Manual were consolidated by the JMPL for the purpose of eliminating duplicative discovery.

Duplicative discovery is not the only rationale for consolidation before the J.P.M.L.; the Panel has also cited the complexity of anticipated discovery as a strong factor driving a decision to centralize litigation. *See id.* TVPRA cases necessarily involve complex and voluminous data retrieval and production due to the ubiquity of technology as both a tool for the corporate hotel brand.

Petitioners can also attest that, no matter the number or type of Defendants named, Corporate Brand Hotel defendants control the data and documents relevant to Plaintiffs' claims in

these cases and control discovery. This has caused inconsistent, conflicting, and duplicative discovery across cases with the same named defendants.

### A. Protective Orders Have Varied Wildly.

Issues related to Plaintiff identity protections and confidentiality have been litigated more than twenty-eight (28) times in front of fifteen (15) judges with a different result nearly every time. *See L.H. v. Marriott International, Inc., et al.*, No. 1:21-cv-22894, Def's Notice of Authorities, ECF No. 923 (S.D. Fla. Feb. 11, 2022). In some cases, Courts have allowed Plaintiffs' personal, identifying information to be provided to the trafficker – sometime with notice to Plaintiff's counsel and/or the Court, and sometimes not. Upon receiving less than comforting protections from the Court, some Plaintiffs have chosen to dismiss their cases rather than put the safety of themselves and their families at risk. In other cases, there were blanket prohibitions preventing defense counsel from contacting a trafficker until a court order is obtained. *See* Exhibit A (chart of protective orders in TVPRA cases). Without centralization now, identical issues related to protective orders will continue to be litigated repeatedly. This wasteful use of time and resources should be avoided.

These cases have unique safety concerns that would be alleviated through centralization in front a Judge who is well-familiar with the unique but common issues faced by Survivors of sex trafficking. These individuals may be targeted with threats and intimidation by the traffickers or members of the criminal venture for participating in any court processes. To prevent this or plan for this inevitability, their locations, identities, and other personal information needs to be carefully managed. Additionally, involvement of the trafficker in the litigation poses safety concerns and challenges. Centralization of these cases often removes the cases from the survivor's home community where they are most vulnerable. Failure to centralize places survivors in unsafe and

untenable positions and may be used as a litigation tactic to cause cases to be dismissed and impugn the integrity of civil litigation process. Even in light of expert testimony, Corporate Brand Hotels have continued to advance new concepts related to protective orders in each litigation often forcing multiple hearings on a single common issue. With consistent decisions on common questions of fact, survivors and counsel can prepare properly to ensure their rights to civil remedies are unabridged.

### B. Discovery from Defendants has been dictated by Corporate Brand Hotels.

Four years of litigation has also demonstrated that both offensive and defensive discovery has been controlled and primarily litigated by the Corporate Brand Hotels. Notably, counsel for the Corporate Brand Hotel is often the same counsel who represents involved brand properties. Because the Corporate Brand Hotels design and control the technological systems and information structures relevant to Plaintiffs' allegations they are inevitably the primary focus of Plaintiffs' discovery. The narrowed scope of centralization will allow the transferee judge to efficiently manage these exchanges.[12]

### C. Efforts at informal coordination have failed.

Perhaps the best example comes from the proposed transferee Court. Chief Judge Marbley transferred three cases to the Northern District of Ohio for jurisdictional reasons. In each case, despite participation from the same parties, their respective counsel, and the facts, everything that was previously litigated in the SDOH cases was relitigated. This included disputes related to

---

[12] To the extent there are any tangential disputes between the Corporate Brand Hotel Defendants and Brand properties, i.e. related to insurance coverage, these issues are not determinative of whether 1407 centralization is appropriate. If liability is found, Corporate Brand Hotels can later litigate these matters as Wyndham has already done in New Jersey. *See Days Inns Worldwide Inc et al. v. MGH Hospitality et al.*, 2:23-cv-03451; *Super 8 Worldwide Inc. et al. v. Dream Land Hotels LLC et al.*, 2:23-cv-03454; *Days Inns Worldwide Inc. et al. v. Ash Management Corp. et al.*, 2:23-cv-03472; *Days Inns Worldwide Inc. et al. v. Krrish Lodging, LLC et al.*, 2:23-cv-03475.

Defendants' electronically stored information and related discovery matters, among other issues including protective and confidentiality orders. Wyndham was ordered in one case in the Southern District of Ohio to produce evidence related to their corporate knowledge.  Yet, in the Northern District, the exact same arguments were presented by Plaintiffs and relegated by motion practice wasting scarce judicial resources relitigating a discovery issue that had already been resolved between the parties.

The G6 cases currently being litigated in Eastern District of Texas before Judge Truncale, individually, further establish what can and will continue to happen with these cases should they not be consolidated and centralized. Specifically, Defendant G6 has repeatedly filed obstructive motions, forcing the Plaintiffs' cases to a virtual halt while each new roadblock is repeatedly litigated, ad infinitum. Despite the Eastern District being the home to G6, G6 even challenges this venue as being the proper place to litigate cases against it.  This is something all the Corporate Brand Hotel Defendants are doing, and the only way to limit motions and disputes to those that are truly meritorious (and to fairly rule on them) is to consolidate these cases so that the Plaintiffs' claims do not continue to be hindered by these defense tactics (i.e. using offensive motion practice to bury Plaintiffs' claims in paperwork and prevent them from seeing a trial).

In addition, and in contrast to opponents' arguments, in decisions far more recent than the 2020 denial of centralization, the Panel has "disagree[d] that the parties can effectively informally coordinate more than twenty actions that name multiple defendants." *In Re: Social Media* at 3.  It explained, "Allowing those actions to proceed separately in various courts would hinder the transferee court's efforts to conduct a single, efficient, coordinated proceeding." *Id.* Similarly, the Texas MDL is comprised of multiple defendants across many hotel brands and epitomizes why consolidation is appropriate and needed here. For example, there is one protective order governing

all cases, discovery is uniform, disputes were efficiently handled once ruled upon *once* by the judge, which effected a uniform and manageable discovery process for all parties involved. Plaintiffs were deposed once in a uniform manner thus requiring the Plaintiffs to only go through that difficult and traumatic process on one occasion.

V. **Judicial Efficiency**

  A. **Defendants who operate Differently and Interacted with Plaintiffs in Different Ways do not Prevent the Need for Centralization.**

Defendants argue the fact that there are different defendants is reason enough to deny centralization. *See e.g.* Wyndham Opposition at 11. It is not. This Panel has explained, "The transferee judge can address unique issues using separate discovery tracks for each defendant...and employ separate motion tracks, to the extent necessary." *In Re: Social Media*, Transfer Order at 2, MDL No. 3047 (J.P.M.L. 2022). In addition, as in *Social Media*, "all defendants likely will assert the same defenses. Centralization of all actions, therefore, will allow for efficient coordination of briefing and rulings on motions to dismiss, as well as *Daubert* motions." *Id.*[13]

It is important to note that consolidation also does not preclude a transferee judge from determining that the coordinated or consolidated pretrial litigation of any action is no longer beneficial and may remand that action to its transferor court. *See* Panel Rules 10.1-10.2. Nor is the transferee judge limited in their application of overlapping state and federal laws to common facts: "it is 'within the very nature of coordinated or consolidated pretrial proceedings in multidistrict litigation for the transferee judge to be called upon to apply the law of more than one state.'" *In re: CVS Caremark Corp. Wage & Hour Emp. Practices Litig.,* 684 F. Supp. 2d 1377, 1378 (J.P.M.L. 2010) (quoting *In re: Air Crash Disaster at John F. Kennedy Int'l Airport on Jun. 24,*

---

[13] Importantly, this Panel found this particular reason persuasive for including even *potentially* related actions. *Id.* at FN 1.

*1975*, 407 F. Supp. 244 (J.P.M.L. 1976)). *See also* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 22.634 ("Multiple tort cases frequently involve claims and defenses asserted under various federal and state laws."). Nevertheless, the J.P.M.L. is confident that the transferee judge can accommodate any individualized factual issues arising out of the unique circumstances of each plaintiff's allegations for the sake of a just and efficient resolution of all cases.

In addition, recent transfer orders have explicitly addressed the topic of multiple defendants. When centralizing the hair relaxer cases this Panel said, "declining to centralize this litigation would not resolve the complexities presented by managing cases involving multiple defendants and products; rather, judges in nineteen (or more) different districts would be required to manage such cases, while addressing overlapping parties, facts, and claims." *In Re: Hair Relaxer* at 2.

1. *Georgia Opponents' Cases are Not Distinguishable*

Despite some plaintiffs in Georgia and South Carolina opposing the centralization of their cases under Section 1407, the benefits of judicial efficiency and justice favor centralization. Even though some plaintiffs have different reasons for naming Corporate Brand Hotels, such as being hotel operators, the defendants' dual roles in operating hotels and handling information related to sex trafficking suggest that the cases share common factual questions. The argument that discovery would differ for these plaintiffs is not supported, as the Corporate Brand Hotels' knowledge and actions concerning sex trafficking are central to all cases. Specific case treatments, like those in the cases against Red Roof Inns Inc., G6 Hospitality Property LLC, and others, should be managed by the transferee judge, who can track or remand cases as necessary. Centralization remains efficient despite the defendants' varied roles in the TVPRA context, given their participation in a corporate structure where information is centrally controlled. The fact that some plaintiffs do not

17

solely rely on the TVPRA does not detract from the central factual issues in these cases, as the transferee judge can apply both federal and other relevant laws.

> 2. *G6 Should be Centralized in the Southern District of Ohio as Well.*

The cases against G6 Hospitality should also be consolidated and transferred to the Southern District of Ohio, Eastern Division, under the Honorable Judge Marbley. There is nothing unique to the G6 chain that is not also true for the other defendant hotel brands. Just as G6 owns and operates hotel locations at the corporate level and franchised locations, so do the other six (6) hotel chains at issue. The common issues of fact for each of the seven (7) hotel brands will be the same.

Regardless of the number of different hotel chains involved in this litigation, disputes related to the liability of each will be nearly identical as each involves the same (or substantially similar) factual and legal issues because they each have very similar business models. These are franchisor/franchisee focused businesses, they are all hotels, and they are all alleged to have violated the TVPRA. As such, the processes for conducting discovery, handling pre-trial motions and other litigation issues that arise will be the same, so the efficiencies of consolidating all cases against the seven (7) hotel chains at issue will be the same.

The inefficiencies and unfairness of failing to consolidate all of the hotel cases in one central location will also be the same, namely, requiring Plaintiffs to litigate their claims against multiple hotel chains in separate venues all across the country. Consolidation of the G6 cases in the pending MDL comports with JPML past rulings on the issue of prospective cases involving "the ***seemingly*** indivisible nature of plaintiffs' alleged injuries in the "mixed use" cases," in which the JPML declined to carve out from the MDL cases or claims against a defendant product

manufacturer for various types of kidney injuries caused by the use of its product. *See In re: Proton–Pump Inhibitor Prods. Liab. Litig. (No. II)*, 261 F. Supp. 3d 1351, 1355 (J.P.M.L. 2017). In this case, the JPML chose the District of New Jersey as the transferee district for the litigation for the consolidation of 161 constituent actions before Judge Claire C. Cecchi, an experienced transferee judge already actively managing the PPI cases filed in that district, to prudently steer the course of the litigation. Despite the actions involving an array of different types of kidney injuries and from multiple causes with multi-defendant product use, the JPML centralized these actions. In addition, the Panel has viewed *per-defendant transfer* to an MDL as inadvisable in previous cases where multiple claims against multiple defendants appear indivisible, rendering transfer of them impracticable. *See In re: Nat'l Prescription Opiate Litig.*, 576 F. Supp. 3d 1378, 1380–81 (U.S. Jud. Pan. Mult. Lit. 2021). Ultimately, Section 1407(a) affords the Panel the power to "separate any claim, crossclaim, counter-claim, or third-party claim and remand any of such claims before the remainder of the action is remanded." *See id.*

## CONCLUSION

For these reasons Petitioners move for centralization.

Dated: February 21, 2024

Respectfully submitted,
*/s/ Steven C. Babin, Jr.*
Steven C. Babin, Jr.
Penny L. Barrick
Jennifer J. El-Kadi
**Babin Law, LLC**
10 West Broad Street, Suite 900
Columbus, Ohio 43215
Tel: (614) 761-8800
Email: steven.babin@babinlaws.com
Penny.barrick@babinlaws.com
Jennifer.elkadi@babinlaws.com

                                              */s/ Kimberly L. Adams*
Kimberly L. Adams
Christopher V. Tisi
**Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, PA**
316 S. Baylen Street, Suite No. 600
Pensacola, FL 32502
Tel: (850) 435-705
Email: kadams@levinlaw.com
ctisi@levinlaw.com

*/s/ Gregory Zarzaur*
Gregory Zarzaur
**The Zarzaur Law Firm**
2332 2nd Avenue N.
Birmingham, AL 35203
Tel: (205) 983-7985
Email: gregory@zar.law

*Attorneys for Plaintiffs*