# EXHIBIT 3

BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

In re: Hotel Industry Sex Trafficking Litigation (II)　　　MDL Docket No. 3104

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR TRANSFER OF G6 HOSPITALITY LLC. ACTIONS TO THE EASTERN DISTRICT OF TEXAS (BEAUMONT DIVISION) PURSUANT TO 28 U.S.C. § 1407 FOR CONSOLIDATED PRETRIAL PROCEEDINGS

Plaintiffs, pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure of the Panel, in the twenty-four (24) civil actions ("Plaintiffs") respectfully submit this memorandum of law in support of their Response and Petition for transfer and coordination for pre-trial purposes of the G6 Hospitality LLC. (G6 HOSPITALITY) related actions listed in the attached Schedule of Actions and subsequent tag-along actions to the Honorable Michael J. Truncale, Judge of the United States District Court of the Eastern District of Texas (Exhibit 1 attached hereto).

There are a total of forty-three (43) G6 Hospitality actions currently pending across thirteen (13) Federal Judicial Districts. (Exhibit 2 attached hereto) These cases are filed pursuant to the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a), which provides sex trafficking victims a civil remedy against those who knowingly benefitted from their abuse and exploitation. The largest portion of these cases twenty-four (24) are pending in the Eastern District of Texas before Judge Micheal J. Truncale, Beaumont Division.

## I.　　BACKGROUND

In the original effort at *In re Hotel Industry Sex Trafficking Litigation*, Plaintiffs there moved this Honorable Panel for transfer and coordination of twenty-one (21) civil actions in twelve (12) different United State District Courts filed under the TVPRA against more than forty-five (45) defendant hotels. *In re Hotel Industry Sex Trafficking Litig.*, 433 F. Supp. 3d 1353 (J.P.M.L. 2020). The Panel denied the request for centralization of sex trafficking claims

concluding that (1) there would be centralized locations where the cases could be filed and litigated without significant risk of wasted judicial resources and inconsistent decisions alleviating the need for an MDL; (2) there would be few common questions of fact; and (3) individualized franchise agreements or facts would result in an MDL that was not manageable. Unfortunately, the hopes for informal consolidation have not been meaningfully realized. The number of TVPRA actions continues to grow and the jurisdictions and judges over those cases expand. The efforts to streamline or reduce the risk of inconsistent decisions in any centralized manner have either failed or been inadequate.[1] While at the same time, immense judicial resources have been and continue to be expended across the country.

## II.     THE MOTION

Plaintiffs' Motion to Transfer G6 Hospitality actions is fundamentally different from either the present motion for MDL No. 3104 or the original MDL No. 2928 because it seeks to establish a single specific Franchisor/Brand MDL for those cases involving G6 Hospitality and its franchisees as opposed to a consolidation across multiple franchisors and brands. G6 Hospitality owns and controls over fourteen hundred (1400) hotels through three brand concepts. G6 Hospitality both owns and operates hotel locations at the corporate level and franchised locations with their agent/franchisees. As such, cases involving G6 Hospitality and its Franchisees have numerous issues of fact that are common between the cases to be consolidated. These issues, discussed in further detail below, include Franchisor - Franchisee knowledge of sex trafficking under the TVPRA, virtually identical franchise agreements, consistent policies, and procedures on sex trafficking and a similarity of factual allegations and causes of action against the Franchisor

---

[1] Since the Panel's ruling in MDL 2928 (2020), Judge Marbley in Ohio and Judge Truncale in Texas represent the only significant efforts at informal consolidation. Unfortunately, both franchisors and franchisees seek to destroy such efforts through challenges to the Court's jurisdiction and convenience of the venue.

and Franchisee in each case and from cases to case. This approach is consistent with many of the questions raised by the Panel during the hearing on MDL 2928:

> JUDGE PERRY: ...*you're asking for industrywide hotel industry MDL, but couldn't you have one that was all...the Hampton's, or all the Wyndham's, or all the Marriott's? I'm not suggesting we want a bunch of motions for 17 different MDLs, but wouldn't that at least be more consistent with the common question issue which is really the basis of our statute that allows us to centralize these things?*

January 30, 2020 - MDL 2928 Hearing p33:8-16.

Due to the widespread nature of sex trafficking, no individual trafficking venue will ever predominate for purposes of informal consolidation. And every attempt to consolidate around the Franchisor has been met with challenges to jurisdiction and the convenience of the forum. Without centralization, sex trafficking victims will continue to face uncertainty as to the identity protections and disclosure limitations and the continued decentralization of specific Franchisor/Brand discovery as between Franchisor, subsidiaries and franchisees across cases. This is particularly burdensome because production in each case is made subject to case specific protective orders that prevent the efficient sharing of information across cases, litigants, and counsel.[2] Centralization of those actions against G6 Hospitaly, on the other hand, will eliminate duplicative discovery; reduce the risk of inconsistent pretrial rulings, including the same or similar motion to dismiss filed by virtually every Defendant in every case, duplicative discovery motions and *Daubert* motions as well as conserve the resources of the parties, their counsel, and the judiciary.

A Franchisor/Brand specific MDL is the only viable method of consolidation.

---

[2] Every Protective Order entered or filed in those cases represented by the undersigned have included "Confidentiality" provisions restricting the use and disclosure of produced information beyond the individual case. Some have included "Attorney Eyes Only" or "Highly Confidential" designations which further limits the use and disclosure of documents within the case.

### III. SEX TRAFFICKING IN THE HOTEL INDUSTRY

MDL No. 3104 as proposed would include cases brought by victims of sex trafficking against G6 Hospitality, their affiliates, subsidiaries and franchisees pursuant to the TVPRA. 18 U.S.C. § 1595(a). Every case against G6 Hospitality sought to be consolidated includes the same or similar allegations under the TVPRA. The TVPRA provides in relevant part:

> An individual who is a victim of a violation of this chapter [18 U.S.C.S. §1581 (LexisNexis) *et seq.*] may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter [18 USCS §§ 1581 *et seq.*]) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees.

18 U.S.C. § 1595(a). Thus, G6 Hospitality and its franchises are subject to a nondelegable duty not to profit from their common hotel venture when they knew of should have known, through the exercise of reasonable diligence, that the venture was facilitating sex trafficking.

The civil beneficiary liability created by § 1595(a) stems from Congress's choice to expand the TVPRA's scope. *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 180-9 (E.D. Pa. 2020). A key distinction from § 1591 (a)(2) is that a beneficiary is liable under § 1595(a) if it **should have known** that it was facilitating trafficking. *Id.* at 188. This standard "evidences Congress's intent to broaden the behavior that can form the basis of civil liability to participation in ventures where the defendant knew or should have known that the venture was involved in sex trafficking." *M.A. v. Choice Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 964 (S.D. Ohio 2019) (cleaned up). The TVPRA provides victims "a cause of action against those who have profited from their exploitation." *A.B.*, 455 F. Supp. 3d at 181 (cleaned up).

"The private pain and public costs imposed by human trafficking are beyond contention, and motels provide an obvious haven for those who trade human misery." *City of L.A., v. Patel*,

135 S. Ct. 257, 2461 (2015) (Scalia, J., dissenting, joined by Roberts, C.J. and Thomas, J.). The trade in human misery is big business, with human trafficking estimated to generate $150 billion per year in profits.[3] Today, sex slavery is pervasive in the United States, and hotels are the primary venue.[4] Because the vast majority of human trafficking for commercial sex occurs within the hotel industry, the Franchisor/Brand Defendant should be the first line of defense against this ongoing epidemic.

In 2016, the United States Department of Homeland Security ("Homeland Security") initiated its Blue Campaign – One Voice. One Mission. End Human Trafficking. Homeland Security realized that the hotel industry represented the first line of defense against human trafficking and the industries employees were "often in the best position to see potential signs of human trafficking" and then report it.[5] Homeland Security recognized that sex trafficking victims share common factual "signs" of their trafficking at hotel locations including:

- o Individuals lack freedom of movement or are constantly monitored,
- o Individuals have no control over or possession of money or ID,
- o Individuals dress inappropriately for their age,
- o Individuals have few or no personal items—such as no luggage,
- o Individuals appear with a significantly older "boyfriend" or group of older males,
- o A group of girls appears to be traveling with an older female or male,
- o "Do Not Disturb" sign used constantly,
- o Refusal of cleaning services for multiple days,

---

[3] *Bankrupting the Business of Human Trafficking*, United Nations, December 1, 2020, at https://webtv.un.org/en/asset/k1s/k1salx7pkv#:~:text=40.3%20million%20people,Forced%20labour%20and%20human%20trafficking%20are%20horrific%20crimes%20netting%20%24150,15.4%20million%20in%20forced%20marriage

[4] "This is not only a dominant issue, it's an epidemic issue." *See* Jaclyn Galucci, *Human Trafficking is an Epidemic in the U.S. It's Also Big Business*, Fortune, April 2019, at https://fortune.com/2019/04/14/human-sex-trafficking-usslavery/ (last viewed December 12, 2023) citing Cindy McCain, who chairs the McCain Institute's Human Trafficking Advisory Council. "It's also something that is hiding in plain sight. It's everywhere—it's absolutely everywhere." *Id.* Bradley Myles, *Combating Human Trafficking in the Hotel Industry*, Huffington Post, July 22, 2015, at https://www.huffpost.com/entry/combating-human-trafficking-in-the-hotel-industry_b_7840754.

[5] https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkiteng.pdf

- Excessive amounts of cash in a room,
- The same person reserving multiple rooms,
- Individuals leaving room infrequently, not at all, or at odd hours,
- Individuals loitering in hallways or appearing to monitor the area,
- Constant flow of men into a room at all hours,
- Excessive amounts of sex paraphernalia in rooms,
- Room paid for with cash or pre-loaded credit card,
- Excessive use of hotel computers for adult oriented or sexually explicit websites,
- Individuals checking into room have no identification.[6]

It is these shared "signs" of sex trafficking that forms the bases for both G6 Hospitality and its franchisees' knowledge of sex trafficking, what they should have known and/or what that would have known with the exercise of ordinary diligence. It is these same common factual allegations that Defendants' challenge as insufficient to state a claim under the TVPRA in their 12b6 Motions. Motions that are being decided repeatedly and inconsistently around the country.

## IV.   ARGUMENT

The purpose of centralization in a multidistrict litigation ("MDL") is to "prevent inconsistent rulings ... and overlapping pretrial obligations, reduce costs, and create efficiencies for the parties, courts and witnesses." *In re Kerydin (Tavaborole) Topical Solution 5% Patent Litigation*, 366 F. Supp. 3d 1370, 1371 (J.P.M.L. 2019). Transfer of related actions to a single district for pretrial proceedings "eliminate[s] duplicative discovery; prevent[s] inconsistent pretrial rulings; and conserve[s] the resources of the parties, their counsel, and the judiciary." *In re Ethicon Physiomesh Flexible Composite Hernia Mesh Products Liability Litigation*, 254 F. Supp. 3d 1381, 1382 (J.P.M.L. 2017). Accordingly, the transfer of actions to one district for coordinated

---

[6] *Id.*

or consolidated pretrial proceedings is appropriate where: actions pending in different districts involve one or more common questions of fact, and the transfer of such actions will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions. 28 U.S.C. § 1407(a). In this instance, forty-three (43) actions involving thirteen (13) federal districts include claims against G6 Hospitality.

The present request to consolidate claims against a single Franchisor/Brand - G6 Hospitality - and its franchisees represents a significant distinction from the Panel's previous opinion in MDL 2928 and the Motion for MDL 3104. A G6 Hospitality Defendant consolidation meets the requirements of 28 U.S.C. § 1407(a) because there are (A) questions of fact common across all of the actions against Defendant G6 Hospitality, and (B) centralization and transfer to the Eastern District of Texas will serve the convenience of the parties and witnesses and promote just and efficient litigation of these related cases.

A.      **Common Questions Fact and Law**

Since 2020, the conduct of the litigation has established that sex trafficking cases present common questions of fact that can be adjudicated across the board for G6 Hospitality and its franchisees related to their nondelegable duty not to profit from what they knew or should have known was a sex trafficking. 18 U.S.C. §1595(a).[7] This would include the discovery and determination of key elements of TVPRA liability including, but not limited to, the various benefits G6 Hospitality shared with its Franchisees, the nature of the venture, their mutual participation in a common venture and the nature and extent of knowledge each Defendant had regarding the ongoing sex trafficking at G6 Hospitality branded properties.

---

[7] These common factual questions alleviate the Panel's initial concern that the following differences in facts would predominate: the alleged sex trafficking, hotel brands, owners and employees, geographic locales, witnesses, indicia of sex trafficking, and time periods. *In re Hotel Industry Sex Trafficking Litigation*, 433 F. Supp. 3d at 1356.

Common knowledge discovery would include to what extent G6 Hospitality knew as a direct owner/operator, in the aggregate across its franchised properties, and in the exercise of reasonable diligence by G6 Hospitality under the circumstances.[8] What did G6 Hospitality learn from the many organizations dedicated to the detection and prevention of sex trafficking generally and in the Hotel Industry specifically and was that information shared with their Franchisees through, common policies, procedures, training and reporting. "[O]ne of the most effective aspects of MDL litigation in terms of bringing litigation to a close and effectively and fairly resolving claims" will be the centralization of G6 Hospitality/Franchisor discovery otherwise necessary in each and every individual case.[9] "Indeed, one of the primary efficiencies that the authors of the MDL process sought to gain was the resolution on a common basis of certain dispositive issues that would either narrow or eliminate entirely the aggregate mass of asserted claims."[10]

As a result of the shared commonality of these cases, Plaintiffs present similar allegations of liability against G6 Hospitaly and Franchisees individually and as to the vicarious liability of G6 Hospitality by and through the actions of its agent/franchisees. The allegations of vicarious liability and agency rest largely on similar franchise agreements and common allegations of control

---

[8] "[N]otice of 'the prevalence of sex trafficking generally at hotels,' the failure 'to take adequate steps to train staff in order to prevent its occurrence,' and signs that 'should have alerted staff to [Plaintiff's] situation' are sufficient to meet the constructive knowledge requirement, [i.e., that Defendant knew or should have known, through the exercise of reasonable diligence, that the hotel venture was engaged in sex trafficking]." *B.D.G. v. Choice Hotels Internatl., Inc.*, No. 2:22-cv-3202, 2023 U.S. Dist. LEXIS 162052, at *15 (S.D. Ohio Sept. 12, 2023).

[9] Smith, Douglas G., *Resolution of Common Questions in MDL Proceedings*, https://kuscholarworks.ku.edu/bitstream/handle/808/25709/06_Smith_Final.pdf?sequence=1&is Allowed=y, at 225 (Kansas Univ., 2017) (citing, inter alia, *Gelboim v. Bank of Am. Corp.*, 135 S. Ct. 897, 904–05 (2015) ("As the Supreme Court has observed, the drafters of Section 1407 hoped to realize a number of efficiencies, including to 'eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts.")

[10] *Id.* at 21.

of G6 Hospitality's franchisees by G6 Hospitality. These claims have also resulted in cross claims between Franchisors and Franchisees and in third party actions filed in other jurisdictions.[11]

G6 Hospitality is represented by the same counsel in litigation across the United States. Those same counsel regularly take the same position in discovery disputes, dispositive motions, and utilize many of the same experts. Those experts will be used across most of the cases and the admissibility of their opinions will be litigated in pretrial motion practice. Rulings on motions to dismiss and summary judgment, admissibility of expert evidence under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals*[12] have often been dispositive in large MDL proceedings.[13]

Moreover, the parties and the judiciary will benefit from coordinated discovery related to the common issues of fact, which will identify key documents that will be used across all of the litigation. G6 Hospitality and the various franchisee defendants were all party to the same or similar Franchise Agreement, its terms, and conditions. Under the franchise agreement G6 Hospitality controlled room reservations over the internet and through their proprietary room reservation system. Franchisees were required to utilize G6 Hospitality's property management equipment. G6 Hospitality dictated nearly all aspects of hotel operations, including those directly related to sex trafficking, such as guest identification, payment methods, housekeeping practices, safety, and security. G6 Hospitality maintained a "Do Not Rent" list of undesirable tenants including those associated with Sex Trafficking. G6 Hospitality developed, issued and trained its

---

[11] *Days Inns Worldwide Inc et al. v. MGH Hospitality et al.*, 2:23-cv-03451; *Super 8 Worldwide Inc. et al. v. Dream Land Hotels LLC et al.*, 2:23-cv-03454; *Days Inns Worldwide Inc. et al. v. Ash Management Corp. et al.*, 2:23-cv-03472; *Days Inns Worldwide Inc. et al. v. Krrish Lodging, LLC et al.*, 2:23-cv-03475.
[12] *Id.* at 227 (citing Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *see also generally* MANUAL FOR COMPLEX LITIGATION, §§ 23.1–23.37).
[13] Smith, Douglas G., *Resolution of Common Questions in MDL Proceedings*, Kansas Law Rev., Vol. 66 2017.

staff and the staffs of franchisees on policies and procedures specific to sex trafficking – "Deter, Detect, Disrupt."[14] All franchisees were required to take that knowledge and report incidents of criminal behavior including sext trafficking. All of these facts will benefit from common discovery necessary for the pursuit of both G6 Hospitality and its individual franchisees.

G6 Hospitality and its franchisees ignored knowledge within the industry and their own experience directly of sex trafficking at their hotel locations. Each of the currently pending actions across the United States shows that the survivors were repeatedly trafficked at G6 Hospitality hotels. Many of the individual locations involved the trafficking of multiple Plaintiff victims. Each of those victim complaints pursue violations of the TVPRA against G6 Hospitality and provide a common factual story of their trafficking at G6 locations.

Currently, the resources of the parties and the judiciary are wasted on relitigating confidentiality, sufficient factual allegations to state a claim and related discover issues over and over again in every jurisdiction. In L.H., the district court required the parties to collect all rulings on protective orders which ended up being 28 decisions by 15 different judges. *L.H. v. Marriott International, Inc., et al.*, No. 1:21-cv-22894, *Def's Notice of Authorities*, ECF No. 92 (S.D. Fla. Feb. 11, 2022). Centralization of G6 Hospitality actions would allow for protective orders, repetitive 12b6 Motions and discovery disputes to be resolved on a consolidated basis and save countless hours of repeated litigation over the exact same issues.

Finally, Plaintiffs note that the fact that differences exist at the individual case level should not be and has never been a reason to deny transfer. Indeed, the structure of an MDL accounts for

---

[14] *G6 HOSPITALITY ANTI-HUMAN TRAFFICKING TRAINING*, http://g6propertycollateral.com/wp-content/uploads/2020/02/G6_TheRoomNextDoor_Training_V12b_NoFacilitator.pdf

this as it ensures individual cases maintain their integrity. In nearly every MDL, each case has divergent and varying facts specific to each plaintiff and her injuries. Centralization is not consolidation as happens under Federal Rule of Civil Procedure 42. It is simply for pretrial only and if the case in its entirety is not resolved, the remand is appropriate for the individual issues or Defendants if any are identified and left over from the MDL court. Thus, centralization will obviate the risk of duplicative discovery and inconsistent rulings on pretrial issues such as what G6 Hospitality knew about the prevalence of human trafficking in the hotel industry, when they obtained this information, and what they did with it, including what they shared with franchisees such as training staff as to what signs of which to be aware.

**B.     Convenience of the Parties, Witnesses and Court and Promoting Just and Efficient Litigation**

The transfer and centralization of these related sex trafficking cases to the Eastern District of Texas and Judge Truncale adheres to the goals of 28 U.S.C. § 1407 in that it (1) promotes just and efficient litigation and (2) is convenient for the parties and witnesses.

**1. The Eastern District of Texas.**

The Eastern District of Texas has the capacity to handle this MDL. The District has eight District Judges, two Senior Judges, and eight Magistrate Judges.[15] There are currently no vacant judgeships. The Eastern District of Texas provides a well-staffed and top-notch clerks' office with plenty of experience in handling numerous complex cases, including MDLs, in an efficient manner. In the Eastern District of Texas, the median time for case resolution is 16.7 months, the shortest in the country.[16]

---

[15] https://www.txed.uscourts.gov/?q=eastern-district-judges
[16] *United States District Courts — National Judicial Caseload Profile* (June 2023), https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2023.pdf

This Panel has previously found the Eastern District of Texas to be an appropriate forum in several MDL proceedings. *See, e.g.*, *In re Taasera Licensing, LLC*, 619 F. Supp. 3d 1352, 1352 (J.P.M.L. 2022) ("centralization in the Eastern District of Texas will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation"); *In re Parallel Networks*, LLC, 867 F. Supp. 2d 1352, 1353 (J.P.M.L. 2012) ("Eastern District of Texas is the most appropriate transferee district" because defendant's office based there and judge was most familiar with the merits of the litigation); *In re Fleming Cos. Secs. & Derivative Litig.*, 269 F. Supp. 2d 1374, 1375 (J.P.M.L. 2003) ("centralization in the Eastern District of Texas will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation" because most of the related actions were already pending there and the judge had had an opportunity to become familiar with the litigation); *In re Elec. Data Sys. Corp. Secs. & "ERISA" Litig.*, 254 F. Supp. 2d 1375, 1376 (J.P.M.L. 2003) ("centralization under Section 1407 in the Eastern District of Texas will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation" because the vast majority of the actions were pending there and the corporate defendant had its headquarters within the district); *In re Alcatel Alsthom Secs. Litig.*, 1999 U.S. Dist. LEXIS 1500, *2 (J.P.M.L. Feb. 11, 1999) ("[c]entralization under Section 1407 in the Eastern District of Texas will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation); *In re Norplant Contraceptive Prods. Liab. Litig.*, 1:94md1038 (J.P.M.L. Dec. 6, 1994); *In re L. E. Lay & Co. Antitrust Litigation*, 391 F. Supp. 1054, 1056 (transfer to Eastern District of Texas would "best serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation" because pretrial proceedings in the Texas action had progressed to a relatively advanced stage, trial had been set, and the judge was thoroughly acquainted with the issues).

Similarly, the Eastern District of Texas would be an appropriate forum for the transfer and consolidation of TVPRA actions against G6 Hospitality, its subsidiaries and franchisees.

### 2. Judge Truncale as Transferee Judge.

With regard to transferee judge selection, the Panel has determined that it is best to focus on the "transferee judge with the time and experience to steer this litigation on a prudent course and sitting in a district with the capacity to handle this litigation." *In re Motor Fuel Temperature Sales Practices Litig.*, 493 F. Supp. 2d 1365, 1367 (J.P.M.L. 2007). Furthermore, a particular judge's willingness, ability, and motivation for handling complex litigation is an essential element in venue selection.[17] *In re Dial Complete Mktg. & Sales Practices Litig.*, 804 F. Supp. 2d 1380, 1381 (J.P.M.L. 2011) (transferring to the District Court of New Hampshire on grounds that the judge "is willing and able to accept the assignment").

Judge Michael Truncale readily satisfies these criteria and is the best choice for transfer and consolidation of this matter. Judge Truncale is well respected by both sides of the bench for his intelligence and skills as a trial judge. Before his judicial appointment, he was a trial lawyer thirty-four years with the firm of Orgain Bell & Tucker, LLP.[18] Judge Truncale is Board Certified in Civil Trial Law by the National Board of Trial Advocacy, and Board Certified in Personal Injury Litigation by the Texas Board of Legal Specialization.[19] From 2004 through 2018, he served as a member of the Standing Committee of the State Bar of Texas Pattern Jury Charges—Malpractice,

---

[17] In a 2008 Tulane Law Review article entitled, A View from the Panel: Part of the Solution, 82 Tul. L. Rev. 2225, 2240, Judge John G. Heyburn, II emphasized the importance of the transferee judge and stated "[t]he willingness and motivation of a particular judge to handle an MDL docket are ultimately the true keys to whether centralization will benefit the parties and the judicial system." Id.
[18] https://edtxbenchbar.com/panelist/michael-j-truncale/
[19] Id.

Premises, and Products Liability. Currently, he serves on the Fifth Circuit Pattern Jury Charge for Criminal Law.[20] Judge Truncale was appointed to the bench in 2019 by President Donald Trump.[21]

Because Judge Truncale has not presided over an MDL, assigning Judge Truncale this MDL would broaden the pool of jurists with MDL experience, which in itself is a worthwhile goal. Even more importantly, Judge Truncale has experience adjudicating large scale cases involving numerous plaintiffs, defendants, and a variety of complex claims. *See, e.g., Rogers v. 12291 CBW, LLC*, No. 1:19cv266, 2022 U.S. Dist. LEXIS 242732, *1 (E.D. Tex. March 31, 2022) (FLSA collective action); *Costellow v. Becht Eng'g Co.*, No. 1:20cv179, 2020 U.S. Dist. LEXIS 249063, *1 (E.D. Tex. Dec. 9, 2020) (FLSA collective action); *Free v. Allstate*, No. 9:20cv190, ECF No. 103 (E.D. Tex. May 1, 2023) (insurance class action).

Judge Truncale has a deserved reputation as a thoughtful, deliberate, and dedicated trial judge, and he unquestionably has the intellect and strong case-management skills that an MDL case demands. Moreover, Judge Truncale appears to have a strong willingness, motivation, and ability to handle the instant complex litigation, as indicated by his decision to take on additional TVPRA cases, and the praiseworthy job his has done advancing the human trafficking litigation in the Eastern District of Texas.

Judge Truncale currently presides over an informal consolidation of twenty-four (18) cases filed in the Beaumont and Lufkin Divisions of the Eastern District of Texas. Judge Truncale will conduct all pre-trial matters with respect to these cases. He has entered individual scheduling orders and set trials for the first thirteen (13) cases. He is already grappling with protecting the identity of the trafficking victim and limits on the disclosure of her identity during the investigation and discovery of the case. Sixteen 12b6 Motions to Dismiss have been filed

---

[20] Id.
[21] Id.

and fully briefed to date.[22] The G6 Hospitality motions are nearly identical, and all turn on the alleged facts necessary to state a claim under the TVPRA. The Franchisee 12b6 Motions to Dismiss although filed by different parties are also remarkably similar to the Franchisor motions.

Indeed, the work Judge Truncale has performed to advance the ball provides a strong rationale in favor of designating him as the transferee judge. See In re Glaceau VitaminWater Marketing and Sales Practices Litigation, 764 F. Supp. 2d 1349, 1351 (J.P.M.L. 2011) (The Panel ordered transfer to the Eastern District of New York, where "[t]he court has ruled on a motion to dismiss, and discovery is underway."); In re Nat'l Arbitration Forum Antitrust Litigation, 682 F. Supp. 2d 1343, 1346 (J.P.M.L. 2010) (The District of Minnesota was an appropriate transferee forum because, inter alia, discovery was underway in several actions pending in that district.); In re Sepracor Inc. Fair Labor Standards Act (FLSA) Litigation, 629 F. Supp. 2d 1356, 1356 (J.P.M.L. 2009) (The Panel ordered transfer to the district where "discovery [was] well under way."); In re Cintas Corp. Overtime Pay Arbitration Litigation, 444 F. Supp. 2d 1353, 1355 (J.P.M.L. 2006) (First-filed and most significantly advanced litigation was pending in transferee district); In re National Sec. Agency Telecommunications Records Litigation, 444 F. Supp. 2d 1332, 1335 (J.P.M.L. 2006), subsequent determination, 474 F. Supp. 2d 1355 (J.P.M.L. 2007) (transferring MDL to jurisdiction with the first-filed and most significantly advanced cases, as well as transferee before judge well-versed in the issues involved); In re Levaquin Products Liability Litigation, 560 F. Supp. 2d 1384, 1385 (J.P.M.L. 2008) (First-filed action, in which discovery had started, was pending in transferee.); In re Saturn L-Series Timing Chain Products Liability Litigation, 536 F. Supp. 2d 1367, 1368 (J.P.M.L. 2008) (Transferee district was site of first-filed

---

[22] Those actions include: 1:23cv269; 1:23cv270; 1:23cv280; 1:23cv286; 1:23cv303; 9:23cv165; 9:23cv174; 9:23cv198.

case.); In re Standard Automotive Corp. Retiree Benefits "ERISA" Litigation, 431 F. Supp. 2d 1357, 1358 (J.P.M.L. 2006) (Pretrial proceedings were underway in transferee district.). For the reasons set forth above, Judge Truncale is an excellent judicial candidate for this MDL.

### 3. Convenience of the Parties and Witnesses.

G6 Hospitality is represented almost always by the same counsel. This group of defense attorneys coordinate with counsel for Franchisee Defendants, filing similar motions and potentially sharing some of the same experts in the litigation. G6 Hospitality and its related entities all maintain their principal place of business in the Eastern District of Texas. G6 Franchisees agreed to litigate any disputes arising under their agreement in Texas including claims of contribution and indemnity. As such, the Eastern District of Texas represents a forum in which Defendants contractually agreed was convenient for litigation.

To date, it has been shown that G6 Hospitality, with its principal place of business in the Eastern District of Texas, is the repository for the overwhelming majority of documents. This includes documents relevant to its knowledge and conduct and the knowledge of its franchisees. The convenience of the Eastern District of Texas goes beyond physical and electronic documents but also includes key witnesses relevant to both Franchisor and Franchisee liability. Twenty-four (24) of the forty-three (43) identified actions are already properly venued in the Easter District of Texas, Beaumont Division and G6 Hospitality is already litigating in that forum and before a state court MDL before Judge Mark Davidson in Houston, Texas. *In re Avaulta Pelvic Support Systems Products Liability Litigation,* MDL No. 2187, 746 F.Supp.2d 1362 (J.P.M.L.2010).[23] Irrespective

---

[23] The Southern District of West Virginia is the most appropriate transferee district for pretrial proceeding in this litigation. Seventeen actions are now pending in this district, counsel for all parties are already litigating there, and centralization in this district will facilitate coordination with West Virgina state court actions.

of where the litigation is pursued or consolidated, a significant part of the discovery will occur in the Eastern District of Texas.

## IV. CONCLUSION

In light of the foregoing, Plaintiffs respectfully request that this Honorable Panel order the actions in the Schedule of Actions and all tag-along actions be consolidated and coordinated for pretrial proceedings before Judge Michael J. Truncale of the United States District Court for the Eastern District of Texas, Beaumont Division.

Dated: February 7, 2024

Respectfully submitted,

/s/ **Bryan O. Blevins, Jr.**
Bryan O. Blevins, Jr.
Provost ✷ Umphrey Law Firm, L.L.P.
350 Pine Street, Suite 1100
Beaumont, Texas 77701
Telephone: 409-835-6000
Facsimile: 409-813-8610
E-Mail: bblevins@pulf.com

Attys for Plaintiffs