Query    Reports    Utilities    Help    Log Out

# U.S. District Court
## United States District Court - District of New Mexico (Albuquerque)
## CIVIL DOCKET FOR CASE #: 1:23-cv-00451-KG-JMR

Doe v. The Sheraton, LLC et al
Assigned to: District Judge Kenneth J. Gonzales
Referred to: Magistrate Judge Jennifer M. Rozzoni
Cause: Civil Miscellaneous Case

Date Filed: 05/24/2023
Jury Demand: Plaintiff
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: Federal Question

**Plaintiff**

**Jane Doe**
*S.C., an idividual*

represented by  **Edward Fisher**
350 Pine Street, Suite 1100
Beaumont, TX 77701
409-838-8813
Email: efisher@pulf.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**James A. Montalbano**
Youtz & Valdez PC
900 Gold Avenue SW
Albuquerque, NM 87102
505-244-1200
Email: james@youtzvaldez.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick Barrett**
4205 Hillsboro Pike, Suite 303
Nashville, TN 37215
615-463-4000
Email: pbarrett@pulf.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephen Curtice**
Youtz & Valdez, PC
900 Gold Ave SW
Albuquerque, NM 87102
(505) 244-1200
Fax: 505-244-9700
Email: stephen@youtzvaldez.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Shane C Youtz**
Youtz & Valdez PC

900 Gold Ave. SW
Albuquerque, NM 87102
505-244-1200
Fax: 505-244-9700
Email: shane@youtzvaldez.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**The Sheraton, LLC**                    represented by   **Andrew G. Schultz**
                                                          Rodey Dickason Sloan Akin & Robb, P.A.
                                                          P.O. Box 1888
                                                          Albuquerque, NM 87103
                                                          505-765-5900
                                                          Fax: 505-768-7395
                                                          Email: aschultz@rodey.com
                                                          *TERMINATED: 01/31/2024*
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Linda M Vanzi**
                                                          Rodey Dickason Sloan Akin & Robb PA
                                                          NM
                                                          P.O. Box 1888
                                                          87103
                                                          Albuquerque, NM 87102
                                                          505-768-7262
                                                          Email: lvanzi@rodey.com
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Melanie B Stambaugh**
                                                          Rodey Dickason Sloan Akin & Robb PA
                                                          PO Box 1888
                                                          Albuquerque, NM 87103
                                                          505-768-7288
                                                          Fax: 505-768-7395
                                                          Email: MStambaugh@rodey.com
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Noell Sauer Huffmyer**
                                                          Rodey, Dickason, Sloan, Akin & Robb, P.A.
                                                          201 Third St. NW
                                                          Ste. 2200
                                                          Albuquerque, NM 87102
                                                          505-768-7216
                                                          Email: nhuffmyer@rodey.com
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Ellen Dew**

DLA Piper LLC (US)
650 South Exeter Street, Suite 1100
Baltimore, MD 21202
(410) 580-3000
Fax: (410) 580-3001
Email: ellen.dew@us.dlapiper.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael P. O'Day**
DLA Piper LLC (US)
650 South Exeter Street, Suite 1100
Baltimore, MD 21202
(410) 580-3000
Fax: (410) 580-3001
Email: michael.oday@us.dlapiper.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Starwood Hotels & Resorts Worldwide,
LLC**                                    represented by **Andrew G. Schultz**
(See above for address)
*TERMINATED: 01/31/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Linda M Vanzi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Melanie B Stambaugh**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Noell Sauer Huffmyer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ellen Dew**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael P. O'Day**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Starwood Hotels & Resorts Worldwide,
Inc.**                                   represented by **Andrew G. Schultz**
(See above for address)

*TERMINATED: 01/31/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Linda M Vanzi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Melanie B Stambaugh**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Noell Sauer Huffmyer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ellen Dew**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael P. O'Day**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **Marriott International, Inc.** | represented by | **Andrew G. Schultz** |

(See above for address)
*TERMINATED: 01/31/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Linda M Vanzi**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Melanie B Stambaugh**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Noell Sauer Huffmyer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ellen Dew**
(See above for address)
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Michael P. O'Day**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Louisiana Hotel Corporation**
*doing business as*
Sheraton Albuquerque Uptown

represented by **Charlotte A. Lamont**
Miller Stratvert P.A.
500 Marquette N.W.
Suite 1100
Albuquerque, NM 87102
505-842-4723
Fax: 505-243-4408
Email: clamont@mstlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dan A Akenhead**
Miller Stratvert PA
PO Box 25687
Albuquerque, NM 87125
505-842-1950
Fax: 505-243-4408
Email: dakenhead@mstlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Laureana A. Larkin**
Miller Stratvert PA
P.O. Box 25687
Albuquerque, NM 87125
505-842-4751
Email: llarkin@mstlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 05/24/2023 | 1 | COMPLAINT against All Defendants ( Filing Fee - Online Payment), filed by Jane Doe (S.C.). (Attachments: # 1 Civil Cover Sheet)(Youtz, Shane) (Entered: 05/24/2023) |
| 05/24/2023 | | Filing and Administrative Fees Received: $ 402 receipt number ANMDC-8839348 re 1 Complaint filed by Jane Doe (S.C.) (Payment made via Pay.gov)(Youtz, Shane) (Entered: 05/24/2023) |
| 05/24/2023 | | United States Magistrate Judge Steven C. Yarbrough and United States Magistrate Judge Jennifer M. Rozzoni assigned. (jg) (Entered: 05/24/2023) |
| 05/24/2023 | 2 | PLEASE TAKE NOTICE that this case has been randomly assigned to United States Magistrate Judge Steven C. Yarbrough to conduct dispositive proceedings in this matter, including motions and trial. Appeal from a judgment entered by a Magistrate Judge will be to the United States Court of Appeals for the Tenth Circuit. **It is the responsibility of the** |

| | | |
|---|---|---|
| | | case filer to serve a copy of this Notice upon all parties with the summons and complaint. *Consent is strictly voluntary, and a party is free to withhold consent without adverse consequences. Should a party choose to consent, notice should be made no later than 21 days after entry of the Order setting the Rule 16 Initial Scheduling Conference.* For e-filers, visit our Web site at www.nmd.uscourts.gov for more information and instructions. [THIS IS A TEXT-ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (jg) (Entered: 05/24/2023) |
| 05/25/2023 | 3 | ORDER TO SHOW CAUSE by Magistrate Judge Jennifer M. Rozzoni. Show Cause Response due by 6/15/2023. (ccp) (Entered: 05/25/2023) |
| 05/25/2023 | 4 | ASSOCIATION of Attorney Licensed Outside the District for Plaintiff Jane Doe by Shane C Youtz on behalf of:<br>Edward Fisher<br>Provost Umphrey Law Firm<br>350 Pine Street, Suite 1100<br>Beaumont, TX 77701<br>4098388813<br>efisher@pulf.com<br><br>(Association Dues - Online Payment)<br>(Youtz, Shane)<br>[THIS IS A TEXT-ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 05/25/2023) |
| 05/25/2023 | 5 | ASSOCIATION of Attorney Licensed Outside the District for Plaintiff Jane Doe by Shane C Youtz on behalf of:<br>Patrick Barrett<br>Provost Umphrey Law Firm<br>4205 Hillsboro Pike, Suite 303<br>Nashville, TN 37215<br>6154634000<br>pbarrett@pulf.com<br><br>(Association Dues - Online Payment)<br>(Youtz, Shane)<br>[THIS IS A TEXT-ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 05/25/2023) |
| 05/25/2023 | 6 | NOTICE by Jane Doe *of Certifications of Good Standing of Edward Fisher and Patrick Barrett* (Attachments: # 1 Affidavit Fisher, # 2 Affidavit Barrett) (Youtz, Shane) (Entered: 05/25/2023) |
| 05/25/2023 | | Association Dues Received: $ 100 receipt number ANMDC-8842275 re: # 4 Association of Attorney Licensed Outside the District, filed by Jane Doe (Payment made via Pay.gov) (Youtz, Shane) (Entered: 05/25/2023) |
| 05/25/2023 | | Association Dues Received: $ 100 receipt number ANMDC-8842283 re: # 5 Association of Attorney Licensed Outside the District, filed by Jane Doe (Payment made via Pay.gov) (Youtz, Shane) (Entered: 05/25/2023) |
| 05/25/2023 | 7 | *Plaintiff's* RESPONSE re 3 Order to Show Cause filed by Jane Doe. (Youtz, Shane) (Entered: 05/25/2023) |
| 05/25/2023 | | Summons Issued as to Louisiana Hotel Corporation, Marriott International, Inc., Starwood Hotels & Resorts Worldwide, Inc., Starwood Hotels & Resorts Worldwide, LLC, The Sheraton, LLC. (jg) (Entered: 05/25/2023) |
| 06/06/2023 | 9 | FILED IN ERROR: SUMMONS Returned Executed by Jane Doe. Marriott International, Inc. served on 5/31/2023, answer due 6/21/2023. (Youtz, Shane) Modified on 6/7/2023 to |

| | | add error text, summons not signed by clerk. (bc) (Entered: 06/06/2023) |
|---|---|---|
| 06/06/2023 | 10 | FILED IN ERROR: SUMMONS Returned Executed by Jane Doe. The Sheraton, LLC served on 5/31/2023, answer due 6/21/2023. (Youtz, Shane) Modified on 6/7/2023 to add error text, summons not signed by clerk. (bc). (Entered: 06/06/2023) |
| 06/06/2023 | 11 | FILED IN ERROR: SUMMONS Returned Executed by Jane Doe. Louisiana Hotel Corporation served on 6/1/2023, answer due 6/22/2023. (Youtz, Shane) Modified on 6/7/2023 to add error text, summons not signed by clerk.(bc). (Entered: 06/06/2023) |
| 06/07/2023 | 12 | SUMMONS Returned Executed by Jane Doe. Marriott International, Inc. served on 5/31/2023, answer due 6/21/2023 (Youtz, Shane) Modified on 6/8/2023 (bc). (Entered: 06/07/2023) |
| 06/07/2023 | 13 | SUMMONS Returned Executed by Jane Doe. The Sheraton, LLC served on 5/31/2023, answer due 6/21/2023 (Youtz, Shane) Modified on 6/8/2023 (bc). (Entered: 06/07/2023) |
| 06/07/2023 | 14 | SUMMONS Returned Executed by Jane Doe. Louisiana Hotel Corporation served on 6/1/2023, answer due 6/22/2023 (Youtz, Shane) Modified on 6/8/2023 (bc). (Entered: 06/07/2023) |
| 06/21/2023 | 15 | NOTICE of Appearance by Andrew G. Schultz on behalf of Marriott International, Inc., Starwood Hotels & Resorts Worldwide, Inc., Starwood Hotels & Resorts Worldwide, LLC, The Sheraton, LLC (Schultz, Andrew) (Entered: 06/21/2023) |
| 06/21/2023 | 17 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Marriott International, Inc., Starwood Hotels & Resorts Worldwide, Inc., Starwood Hotels & Resorts Worldwide, LLC, The Sheraton, LLC. (Attachments: # 1 Exhibit 1) (Schultz, Andrew) (Entered: 06/21/2023) |
| 06/21/2023 | 18 | Corporate Disclosure Statement by The Sheraton, LLC identifying Corporate Parent Marriott International, Inc. for The Sheraton, LLC. (Schultz, Andrew) (Entered: 06/21/2023) |
| 06/21/2023 | 19 | Corporate Disclosure Statement by Marriott International, Inc. (Schultz, Andrew) (Entered: 06/21/2023) |
| 06/21/2023 | 20 | Corporate Disclosure Statement by Starwood Hotels & Resorts Worldwide, Inc., Starwood Hotels & Resorts Worldwide, LLC identifying Corporate Parent Marriott International, Inc. for Starwood Hotels & Resorts Worldwide, Inc., Starwood Hotels & Resorts Worldwide, LLC. (Schultz, Andrew) (Entered: 06/21/2023) |
| 06/23/2023 | 21 | ORDER by Magistrate Judge Jennifer M. Rozzoni. Pursuant to Fed. R. Civ. P. 16 (b)(2), the Court finds good cause to delay entering a scheduling order at this time due to the pending Motion to Dismiss (Doc. 17) filed on June 21, 2023. [THIS IS A TEXT-ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (kms) (Entered: 06/23/2023) |
| 07/03/2023 | 22 | ORDER Quashing 3 Order to Show Cause and Granting Petition to Proceed Anonymously by Magistrate Judge Jennifer M. Rozzoni. (kms) (Entered: 07/03/2023) |
| 07/05/2023 | 23 | AMENDED COMPLAINT against All Defendants., filed by Jane Doe. (Attachments: # 1 Civil Cover Sheet)(Youtz, Shane) (Entered: 07/05/2023) |
| 07/14/2023 | 24 | SUMMONS Returned Executed by Jane Doe. Louisiana Hotel Corporation served on 7/8/2023, answer due 7/31/2023. (Youtz, Shane) (Entered: 07/14/2023) |
| 07/19/2023 | 25 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *(First Amended Complaint)* by Marriott International, Inc., Starwood Hotels & Resorts Worldwide, Inc., Starwood Hotels & Resorts Worldwide, LLC, The Sheraton, LLC. (Attachments: # 1 Exhibit 1) (Schultz, Andrew) (Entered: 07/19/2023) |

| 07/20/2023 | 26 | ASSOCIATION of Attorney Licensed Outside the District for Defendants Marriott International, Inc., Starwood Hotels & Resorts Worldwide, Inc., Starwood Hotels & Resorts Worldwide, LLC, The Sheraton, LLC by Andrew G. Schultz on behalf of: Michael P. O'Day DLA Piper LLC (US) 650 South Exeter Street, Suite 1100 Baltimore, Maryland 21202 (410) 580-3000 Fax (410) 580-3001 michael.oday@us.dlapiper.com

(Association Dues - Online Payment) (Schultz, Andrew) [THIS IS A TEXT-ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 07/20/2023) |
| 07/20/2023 | | Association Dues Received: $ 100 receipt number ANMDC-8923436 re: # 26 Association of Attorney Licensed Outside the District,, filed by The Sheraton, LLC, Marriott International, Inc., Starwood Hotels & Resorts Worldwide, Inc., Starwood Hotels & Resorts Worldwide, LLC (Payment made via Pay.gov)(Schultz, Andrew) (Entered: 07/20/2023) |
| 07/20/2023 | 27 | ASSOCIATION of Attorney Licensed Outside the District for Defendants Marriott International, Inc., Starwood Hotels & Resorts Worldwide, Inc., Starwood Hotels & Resorts Worldwide, LLC, The Sheraton, LLC by Andrew G. Schultz on behalf of: Ellen Dew DLA Piper LLC (US) 650 South Exeter Street, Suite 1100 Baltimore, Maryland 21202 (410) 580-3000 Fax (410) 580-3001 ellen.dew@us.dlapiper.com

(Association Dues - Online Payment) (Schultz, Andrew) [THIS IS A TEXT-ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (Entered: 07/20/2023) |
| 07/20/2023 | | Association Dues Received: $ 100 receipt number ANMDC-8923460 re: # 27 Association of Attorney Licensed Outside the District,, filed by The Sheraton, LLC, Marriott International, Inc., Starwood Hotels & Resorts Worldwide, Inc., Starwood Hotels & Resorts Worldwide, LLC (Payment made via Pay.gov)(Schultz, Andrew) (Entered: 07/20/2023) |
| 07/20/2023 | 28 | NOTICE of Appearance by Andrew G. Schultz on behalf of Marriott International, Inc., Starwood Hotels & Resorts Worldwide, Inc., Starwood Hotels & Resorts Worldwide, LLC, The Sheraton, LLC (Schultz, Andrew) (Entered: 07/20/2023) |
| 07/20/2023 | 29 | NOTICE of Appearance by Andrew G. Schultz on behalf of Marriott International, Inc., Starwood Hotels & Resorts Worldwide, Inc., Starwood Hotels & Resorts Worldwide, LLC, The Sheraton, LLC (Schultz, Andrew) (Entered: 07/20/2023) |
| 07/20/2023 | 30 | ORDER by Magistrate Judge Jennifer M. Rozzoni. Pursuant to Fed. R. Civ. P. 16 (b)(2), the Court finds good cause to delay entering a scheduling order at this time due to the pending Motion to Dismiss (Doc. 25) filed on July 19, 2023. [THIS IS A TEXT-ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (ccp) (Entered: 07/20/2023) |

| 08/02/2023 | 32 | RESPONSE in Opposition re 25 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *(First Amended Complaint)* filed by Jane Doe. (Youtz, Shane) (Entered: 08/02/2023) |
| 08/16/2023 | 33 | REPLY to Response to Motion re 25 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *(First Amended Complaint)* filed by Marriott International, Inc., Starwood Hotels & Resorts Worldwide, Inc., Starwood Hotels & Resorts Worldwide, LLC, The Sheraton, LLC. (Schultz, Andrew) (Entered: 08/16/2023) |
| 08/16/2023 | 34 | NOTICE of Briefing Complete by Marriott International, Inc., Starwood Hotels & Resorts Worldwide, Inc., Starwood Hotels & Resorts Worldwide, LLC, The Sheraton, LLC re 25 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *(First Amended Complaint)* filed by The Sheraton, LLC, Marriott International, Inc., Starwood Hotels & Resorts Worldwide, Inc., Starwood Hotels & Resorts Worldwide, LLC (Schultz, Andrew) (Entered: 08/16/2023) |
| 08/28/2023 | 35 | NOTICE by Jane Doe *of Supplemental Authorities* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2) (Youtz, Shane) (Entered: 08/28/2023) |
| 08/30/2023 | 36 | RESPONSE re 35 Notice (Other) filed by Marriott International, Inc., Starwood Hotels & Resorts Worldwide, Inc., Starwood Hotels & Resorts Worldwide, LLC, The Sheraton, LLC. (Schultz, Andrew) (Entered: 08/30/2023) |
| 11/01/2023 | 37 | ORDER TO SHOW CAUSE by Magistrate Judge Jennifer M. Rozzoni. Show Cause Response due by 11/15/2023. (kms) (Entered: 11/01/2023) |
| 11/14/2023 | 38 | PRAECIPE / Request for Clerk's Entry of Default as to *Defendant Louisiana Hotel Corporation* by Jane Doe. (Youtz, Shane) Modified on 11/15/2023 (jg). (Entered: 11/14/2023) |
| 11/14/2023 | 39 | CERTIFICATE OF SERVICE by Jane Doe re 38 MOTION for Default Judgment as to *Defendant Louisiana Hotel Corporation* (Youtz, Shane) (Entered: 11/14/2023) |
| 11/14/2023 | 40 | RESPONSE re 37 Order to Show Cause filed by Jane Doe. (Attachments: # 1 Exhibit Ex. A - Barrett Declaration, # 2 Exhibit Ex. 1 to Barrett Declaration) (Youtz, Shane) (Entered: 11/14/2023) |
| 11/15/2023 | 41 | PLEASE TAKE NOTICE that this case has been reassigned to District Judge Kenneth J. Gonzales as the trial judge.<br><br>Under D.N.M.LR-Civ. 10.1, the first page of each document must have the case file number and initials of the assigned judges.<br><br>***Accordingly, further documents filed in this matter must bear the case number and the judges' initials shown in the case caption and the NEF for this document.* Kindly reflect this change in your filings.**<br><br>Magistrate Judge Steven C. Yarbrough no longer assigned to this case.<br>[THIS IS A TEXT-ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (dr) (Entered: 11/15/2023) |
| 11/15/2023 | 42 | Clerk's ENTRY OF DEFAULT as to Louisiana Hotel Corporation (jg) (Entered: 11/15/2023) |
| 11/15/2023 | 43 | CERTIFICATE OF SERVICE by Jane Doe re 42 Clerk's Entry of Default (Youtz, Shane) (Entered: 11/15/2023) |
| 11/20/2023 | 44 | ORDER QUASHING 37 Order to Show Cause by Magistrate Judge Jennifer M. Rozzoni. |

| | | (kms) (Entered: 11/20/2023) |
|---|---|---|
| 11/21/2023 | 45 | NOTICE REGARDING DOCUMENT ENTRIES: Because this case has been reassigned to a district judge, please be advised that any documents filed by the parties under Rule 73(b) have been permanently removed from the docket. Document(s) removed: Nos. 8 and 16. [THIS IS A TEXT-ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (kg) (Entered: 11/21/2023) |
| 11/27/2023 | 46 | NOTICE of Appearance by Charlotte A. Lamont on behalf of Louisiana Hotel Corporation (Lamont, Charlotte) (Entered: 11/27/2023) |
| 12/01/2023 | 47 | Unopposed MOTION to Set Aside Judgment *to Plaintiff's Entry of Default* by Louisiana Hotel Corporation. (Lamont, Charlotte) (Entered: 12/01/2023) |
| 12/04/2023 | 48 | ORDER by District Judge Kenneth J. Gonzales granting 47 Unopposed Motion to Set Aside Default Judgment. (tah) (Entered: 12/04/2023) |
| 12/19/2023 | 49 | MOTION to Dismiss *Plaintiff's First Amended Complaint and Incorporated Memorandum of Law* by Louisiana Hotel Corporation. (Lamont, Charlotte) (Entered: 12/19/2023) |
| 01/02/2024 | 50 | RESPONSE in Opposition re 49 MOTION to Dismiss *Plaintiff's First Amended Complaint and Incorporated Memorandum of Law filed by Louisiana Hotel Corp.* filed by Jane Doe. (Youtz, Shane) (Entered: 01/02/2024) |
| 01/03/2024 | 51 | ORDER by District Judge Kenneth J. Gonzales denying as moot 17 Motion to Dismiss Original Complaint for Failure to State a Claim. *See* succeeding 25 Motion to Dismiss First Amended Complaint for Failure to State a Claim. [THIS IS A TEXT-ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (tah) (Entered: 01/03/2024) |
| 01/16/2024 | 52 | Unopposed MOTION for Extension of Time to File Response/Reply by Louisiana Hotel Corporation, The Sheraton, LLC. (Lamont, Charlotte) (Entered: 01/16/2024) |
| 01/17/2024 | 53 | ORDER by District Judge Kenneth J. Gonzales granting 52 Unopposed Motion for Extension of Time to File Reply in Support of Motion to Dismiss. Reply due by 1/19/2024. [THIS IS A TEXT-ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.] (tah) (Entered: 01/17/2024) |
| 01/19/2024 | 54 | RESPONSE in Support re 49 MOTION to Dismiss *Plaintiff's First Amended Complaint and Incorporated Memorandum of Law* filed by Louisiana Hotel Corporation, The Sheraton, LLC. (Lamont, Charlotte) (Entered: 01/19/2024) |
| 01/19/2024 | 55 | REPLY to Response to Motion re 49 MOTION to Dismiss *Plaintiff's First Amended Complaint and Incorporated Memorandum of Law Amended* filed by Louisiana Hotel Corporation, The Sheraton, LLC. (Lamont, Charlotte) (Entered: 01/19/2024) |
| 01/25/2024 | 56 | NOTICE of Briefing Complete by Louisiana Hotel Corporation re 49 MOTION to Dismiss *Plaintiff's First Amended Complaint and Incorporated Memorandum of Law* filed by Louisiana Hotel Corporation (Lamont, Charlotte) (Entered: 01/25/2024) |
| 01/30/2024 | 57 | NOTICE by Marriott International, Inc., Starwood Hotels & Resorts Worldwide, Inc., Starwood Hotels & Resorts Worldwide, LLC, The Sheraton, LLC *of Withdrawal of Counsel (Andrew Schultz)* (Schultz, Andrew) (Entered: 01/30/2024) |
| 01/31/2024 | 58 | NOTICE of Appearance by Linda M Vanzi on behalf of All Defendants (Vanzi, Linda) (Entered: 01/31/2024) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 02/14/2024 09:17:40 | | | |
| **PACER Login:** | bblevins110290 | **Client Code:** | HT-1 mms |
| **Description:** | Docket Report | **Search Criteria:** | 1:23-cv-00451-KG-JMR |
| **Billable Pages:** | 9 | **Cost:** | 0.90 |

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

JANE DOE (S.C.), an individual,
Plaintiff,

v.                                             CIVIL ACTION NO: 23-451 SCY-JMR

THE SHERATON, LLC, STARWOOD
HOTELS & RESORTS WORLDWIDE,
LLC, STARWOOD HOTELS & RESORTS
WORLDWIDE,      INC.,      MARRIOTT
INTERNATIONAL,      INC.      AND
LOUISIANA  HOTEL  CORPORATION
d/b/a   SHERATON   ALBUQUERQUE
UPTOWN,
Defendants

## FIRST AMENDED COMPLAINT

COMES NOW Plaintiff Jane Doe (S.C.), by and through the undersigned counsel, and respectfully submits her complaint for damages and makes the following averments.

## SUMMARY

1.      As sex trafficking has grown to epidemic proportions, it has become widely recognized that the law must look beyond just the pimp and sex buyer in order to stop sex trafficking. It must seek to hold accountable the other individuals and entities who facilitate and benefit from sex trafficking.

2.      The facilitation of sex trafficking is unlawful under federal law. The Trafficking Victims Protection Reauthorization Act ("TRVPA"), 18 U.S.C. § 1581, *et seq*, expands trafficking liability beyond the sex seller and buyer to also prohibit individuals or entities from knowingly benefiting or attempting to benefit "financially or by receiving anything of value from participation in a venture which that person knew or should have known" was engaged in trafficking.

3.     This case is about the sex trafficking of S.C. that occurred at the Sheraton Albuquerque Uptown located at 2600 Louisiana Blvd NE, Albuquerque, New Mexico 87110 ("subject Sheraton"). The Sheraton Albuquerque Uptown was owned and operated by Louisiana Hotel Corporation as a franchisee of The Sheraton, LLC, Starwood Hotels & Resorts Worldwide, LLC, Starwood Hotels & Resorts Worldwide, Inc., and Marriott International, Inc.

4.     As discussed herein, each of the defendants in this case knowingly benefitted from participation in a venture that facilitated trafficking, and ultimately S.C.'s trafficking, at the subject Sheraton. Accordingly, S.C. brings suit under the TVPRA.

## JURISDICTION & VENUE

5.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the TVPRA.

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this claim occurred in this District and Division.

7.     S.C. was trafficked in this District.

## PARTIES

8.     S.C. is a natural person who is currently a resident and citizen of Arizona.

9.     Defendant Louisiana Hotel Corporation d/b/a Sheraton Albuquerque Uptown is a duly qualified and licensed corporation in the State of New Mexico. It can be served by its registered agent, Damen Kompanowski, 2600 Louisiana Blvd. NE, Albuquerque, New Mexico 87110-3600.

10.     Defendant The Sheraton, LLC, is a Delaware corporation with its principal place of business in New York. It can be served through its registered agent, C T Corporation System, 206 S. Coronado Ave., Espanola, New Mexico 87532-2792.

11.     Defendant Starwood Hotels & Resorts Worldwide, LLC is a Maryland limited liability company with its principal place of business in Maryland.  It can be served with process through its registered agent, The Corporation Trust Incorporated, 2405 York Road, Suite 201, Lutherville Timonium, Maryland 21093-2264.

12.     Defendant Starwood Hotels & Resorts Worldwide, Inc. is a Maryland corporation with its principal place of business in Connecticut.  It can be served with process through its agent, The Corporation Trust Incorporated, 351 West Camden Street, Baltimore, Maryland 21201-7912.

13.     Defendant Marriott International, Inc. is a Delaware corporation with a principal place of business in Maryland.  Marriott International, Inc. is the successor entity to Starwood Hotels & Resorts and is responsible for the acts and omissions of Starwood Hotels & Resorts, as franchisor to the Sheraton Albuquerque Uptown. It can be served with process through its registered agent, C T Corporation System, 206 S. Coronado Ave., Espanola, New Mexico 87532.

14.     Defendants The Sheraton, LLC, Starwood Hotels & Resorts Worldwide, LLC, Starwood Hotels & Resorts Worldwide, Inc., and Marriott International, Inc., in its capacity as successor entity, (collectively, "Sheraton") individually and collectively acted as franchisors of the Sheraton Albuquerque Uptown during the time when S.C. was trafficked there.

## FACTS

**The Hotel Industry's Role in Sex Trafficking**

15.      What Defendants knew or should have known about the sex trafficking occurring in their jointly operated hotel, including the trafficking of S.C., is shaped by the widely known and pervasive relationship between the hotel industry and sex trafficking.

16.      Defendants are aware of the important role that hotels play in the proliferation of sex trafficking and of the revenue they derive from sex trafficking, both directly and indirectly, from sex trafficking that occurs at their properties.   Today, sex slavery is pervasive in the United States, and hotels are the primary place where it happens.[1] For years, sex traffickers have "been able to reap these profits with little risk when attempting to operate within hotels."[2] In 2014, 92% of calls received by the National Human Trafficking Hotline involved reports of sex trafficking taking place at hotels.[3] Hotels have been found to account for over 90% of commercial exploitation of children.[4]

17.     To address the crisis of sex trafficking at hotels, multiple agencies and organizations who actively combat sex trafficking, including the United States Department of Homeland Security, the National Center for Missing and Exploited Children, the Polaris

---

[1] "This is not only a dominant issue, it's an epidemic issue." *See* Jaclyn Galucci, *Human Trafficking is an Epidemic in the U.S. It's Also Big Business*, Fortune (April 2019), https://fortune.com/2019/04/14/human-sex-trafficking-us-slavery/ (citing Cindy McCain, who chairs the McCain Institute's Human Trafficking Advisory Council). "It's also something that is hiding in plain sight. It's everywhere—it's absolutely everywhere." *Id.*

[2]      *See Human Trafficking in the Hotel Industry*, Polaris Project (Feb. 10, 2016), https://polarisproject.org/blog/2016/02/10/human-trafficking-hotel-industry; *see also* Eleanor Goldberg, *You Could Help Save A Trafficking Victim's Life With Your Hotel Room Pic*, Huffington Post (June 2016), http://www.huffingtonpost.com/entry/taking-a-photo-of-your-hotel-room-could-help-save-a-trafficking-victimslife_us_57714091e4b0f168323a1ed7.

[3] Michele Sarkisian, *Adopting the Code: Human Trafficking and the Hotel Industry*, Cornell Hotel Report (Oct. 2015), https://scholarship.sha.cornell.edu/cgi/viewcontent.cgi?article=1222&context=chrpubs.

[4] *See* Erika R. George and Scarlet R. Smith, *In Good Company: How Corporate Social Responsibility Can Protect Rights and Aid Efforts to End Child Sex Trafficking and Modern Slavery*, 46 N.Y.U. J. Int'l L. & Pol. 55, 66-67 (2013).

Project, the Texas Attorney General, Love 146, EPCAT, among others, have established recommended policies and procedures for recognizing the signs of sex trafficking.[5]

18.     These agencies have worked directly with members of the hotel industry, including one or more of the Defendants, in the understanding of the substantial risk of sex trafficking in their hotels, the adoption and implementation of policies and procedures to eliminate sex trafficking in their branded hotels, and the effective enforcement of said policies and procedures.

19.     Some of the recommended policies and procedures intended to reduce or eliminate sex trafficking, which Defendants are aware or should be aware of, include learning to identify warning signs and indicators of sex trafficking, including but not limited to:[6]

- Individuals show signs of fear, anxiety, tension, submission, and/or nervousness;

- Individuals show signs of physical abuse, restraint, and/or confinement;

- Individuals exhibit evidence of verbal threats, emotional abuse, and/or being treated in a demeaning way;

- Individuals show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

- Individuals lack freedom of movement or are constantly monitored;

- Individuals avoid eye contact and interaction with others;

- Individuals have no control over or possession of money or ID;

---

[5] United States Department of Homeland Security Blue Campaign – One Voice. One Mission. End Human Trafficking, https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf (last visited April 13, 2023); National Center for Missing and Exploited Children, https://www.missingkids.org/theissues/trafficking#riskfactors (last visited April 13, 2023); Love 146, *Red Flags for Hotel & Motel Employees*, https://love146.org/wp-content/uploads/2017/04/Hospitality-Red-Flag-and-Reporting-Love146.pdf (last visited April 13, 2023); Texas Attorney General, *Human Trafficking Red Flags*, https://www2.texasattorneygeneral.gov/files/human_trafficking/human_trafficking_red_flags_handout.pdf (last visited April 13, 2023).

[6] *See Id.*

- Individuals dress inappropriately for their age or have lower quality clothing compared to others in their party;

- Individuals have few or no personal items—such as no luggage or other bags;

- Individuals appear to be with a significantly older "boyfriend" or in the company of older males;

- A group of girls appears to be traveling with an older female or male;

- A group of males or females with identical tattoos in similar locations. This may indicate "branding" by a trafficker;

- Drug abuse or frequent use of "party drugs" such as GHB, Rohypnol, Ketamine, MDMA (Ecstasy), Methamphetamines, Cocaine, and Marijuana;

- Possession of bulk sexual paraphernalia such as condoms or lubricant;

- Possession or use of multiple cell phones; and

- Possession or use of large amounts of cash or pre-paid cards.

20.    All Defendants were aware or should have known that commercial sex acts, which are illegal in the state of New Mexico, are closely linked with human trafficking and that by facilitating commercial sex acts in their hotels they were facilitating human trafficking.

21.    All Defendants were aware or should have been aware of these signs of sex trafficking and best practices for responding when operating, controlling, and managing the Sheraton Albuquerque Uptown, when enacting and enforcing policies and procedures applicable to that hotel, and when training, educating, and supervising the staff of the Sheraton Albuquerque Uptown.

22.    Sheraton's statements regarding trafficking confirm they are aware of the trafficking problem in the hospitality industry. Recognizing the unique vantage point that hotels and their staff often have to identify human trafficking ventures and victims on their properties, several major hotel chains, including franchisors, franchisees, and

owner/operators, have told the public they have accepted the unique opportunity and responsibility to stop facilitating sex trafficking. For example:

    a.  In 2010, Starwood Hotels and Resorts publicly acknowledged it was in a "unique position" to help put an end to the sexual exploitation of children in the travel and tourism industries.[7]

    b.  Starwood adopted a Human Rights Policy as early as 2007 stating a purported commitment to raise awareness of sexual exploitation to help prevent and punish such crimes.[8]

    c.  In 2009, Starwood committed to developing a "centralized approach" to social responsibility, including policy updates, associate training, and monitoring and reporting protocols to address human trafficking.[9]

23.    Sheraton had a duty to and assumed the responsibility to identify potential sex trafficking at its branded hotels and not to facilitate the trafficking.

24.    Each and every Defendant named herein had the opportunity and responsibility to adopt, effectively implement, and enforce reasonable and effective policies at the subject Sheraton to detect and stop the facilitation of sex trafficking. Unfortunately for S.C., the Defendants' promises proved empty. Such policies were not in place or were inadequately enforced at the Sheraton Albuquerque Uptown.

25.    Instead, Defendants adopted, enforced, and continued to implement policies and protocols that they knew or should have known were facilitating sex trafficking and failing the victims of sex trafficking at their hotel(s) including at the Sheraton Albuquerque Uptown. Defendants have failed, at all levels, to take appropriate and effective action in response to their knowledge of widespread and ongoing human trafficking in their hotels.

---

[7] https://media.business-humanrights.org/media/documents/files/reports-and-materials/Starwood-response-re-CBIS-trafficking-appeal-15-Jun-2010.pdf
[8] https://media.business-humanrights.org/media/documents/files/reports-and-materials/Starwood-response-re-CBIS-trafficking-appeal-15-Jun-2010.pdf
[9] https://media.business-humanrights.org/media/documents/files/reports-and-materials/Starwood-response-re-CBIS-trafficking-appeal-15-Jun-2010.pdf

Instead, they have continued financially benefiting by providing venues for the sexual exploitation of victims like S.C.

**The Use of Sheraton Branded Properties for Sex Trafficking is Prevalent**

26.     The use of Sheraton hotels for sex trafficking is well known to Sheraton. Sheraton has known for years that pimps and traffickers use their hotels to carry out their crimes. News stories dating back for years highlight Defendants' knowledge of such conduct.[10] For example, in 2011, a 63-year-old man was arrested for sex trafficking at the Sheraton Airport Hotel in Cleveland.[11] In 2013, a homeless woman escaped from a Florida Sheraton where she was being forced to engage in prostitution.[12] The same year, the head of a multi-state prostitution ring was arrested after trying to arrange a meeting between a prostitute and undercover agents at a Tennessee Sheraton.[13] Prior to the sex trafficking of Plaintiff and continuing thereafter, Sheraton was on notice of the frequent use of Sheraton hotels including the subject Sheraton Albuquerque Uptown for commercial sex and other associated illegal activity.

27.     The use of Sheraton hotels for sex trafficking was not isolated to one Sheraton hotel or geographic area and the common use of Sheraton hotels for sex trafficking turned into a nationwide problem that stemmed from decisions at the top.

28.     In 2010, Sheraton was specifically advised of the trafficking problem at its hotels, and received recommendations to address the problem, including specific steps to take to combat human trafficking and child sex exploitation.  Sheraton essentially ignored these

---

[10] *See, e.g., supra* notes 11-13.
[11] https://www.ice.gov/news/releases/german-man-sentenced-15-years-prison-following-sex-tourism-sting
[12] https://www.sun-sentinel.com/news/fl-xpm-2013-06-28-fl-human-trafficking-charge-20130628-story.html
[13] https://www.chattanoogan.com/2013/10/6/260738/Madame-Of-Multi-State-Prostitution-Ring.aspx

recommendations. This directly led to the trafficking of S.C. at the Sheraton Albuquerque Uptown.

29.     Moreover, each Defendant knew or should have known about the widespread and ongoing trafficking at the Sheraton Albuquerque Uptown specifically.

30.     Each Defendant knew or should have known that Albuquerque is a major hotspot for human trafficking.

31.     Upon information and belief, traffickers repeatedly and intentionally chose to use the Sheraton Albuquerque Uptown for their sex trafficking activity because they knew that members of the staff looked the other way, because the policies and practices of the hotel facilitated their trafficking, and because of the access and security the hotel provided. These traffickers repeatedly interacted with the staff of the Sheraton Albuquerque Uptown. The signs of this widespread sex trafficking were obvious, and the hotel staff knew about this activity or was willfully blind to it.

32.     Each Defendant knew of the sex trafficking crisis prevalent in the hotel industry generally, as well as specifically at Sheraton branded hotels, including the Sheraton Albuquerque Uptown, and while Defendants claim not to tolerate such activity, the evidence shows and will show at trial that sex trafficking continued at the subject Sheraton frequently and long after the trafficking of the Plaintiff.

**S.C. Was Trafficked at the Sheraton Albuquerque Uptown**

33.     One of the lives devalued and otherwise adversely affected by Defendants' inattention to the prevention and eradication of sex trafficking was S.C.

34.     When she was just 20 years old, S.C.'s first trafficker used manipulation and fraud to cause S.C. to move from her home in Arizona to California and then used coercion and

violence to cause her to engage in commercial sex acts for his financial benefit. While she was in California, S.C. met her second trafficker online. He initially offered to help her return to her home in Arizona but instead used fraud and coercion to cause her to engage in commercial sex acts for his benefit, including at the Sheraton Albuquerque Uptown. S.C. eventually escaped from trafficking with the help of a family she met while being trafficked.

35.     In May of 2013, S.C. was repeatedly trafficked for sex at the Sheraton Albuquerque Uptown located at 2600 Louisiana Blvd NE, Albuquerque, New Mexico 87110.

36.     S.C.'s trafficker required her to travel to Albuquerque to perform commercial sex acts for his benefit and selected the Sheraton Albuquerque Uptown specifically because he knew that Sheraton policies and practices were favorable to trafficking, including that S.C. would be allowed to pay in cash.

37.     While S.C. was at the Sheraton Albuquerque Uptown, there were numerous signs that she was being trafficked, which matched the well-established "red flags" for sex trafficking that each Defendant had been informed of and knew.

38.     The hotel rooms in which S.C. was trafficked were frequently paid for with cash.

39.     S.C. arrived with few or no personal items for a multi-day stay.

40.     S.C. wore provocative clothing while at the Sheraton Albuquerque Uptown.

41.     S.C.'s trafficker required her to sit at the hotel bar, dressed in provocative clothing, trying to solicit Johns. While S.C. was at the bar, hotel staff were present and heard her having conversations with potential customers about her services and her prices.

42.     S.C. had a nervous demeanor and would avoid eye contact with staff.

43.     There was also heavy foot traffic in and out of S.C.'s room involving men who were not hotel guests. She saw 4 or 5 men each night. These men had to pass the front desk to get to the room and were observed by the hotel staff. These individuals entered and left at unusual hours and were present at the hotel for less than an hour. The hotel staff observed these men entering and leaving at unusual times and in an unusual pattern.

44.     There were numerous signs of S.C.'s trafficking observed by housekeeping staff, such as constant use of the "do not disturb" sign, frequent requests for housekeeping services (such as additional towels and new linens) while denying staff entry into the room, refusal of cleaning services for multiple days, and numerous condom wrappers left in the room.

45.     There were other signs of S.C.'s trafficking that were observed by hotel staff, which are consistent with the "red flags" for trafficking.

46.     The staff and management of the Sheraton Albuquerque Uptown knew or were willfully blind to the fact that S.C. was being trafficked.

47.     Upon information and belief, each of the Defendants knew or should have known about the widespread and ongoing trafficking at the Sheraton Albuquerque Uptown, including the trafficking of S.C., because of information available through numerous channels, including but not limited to:

   a. Louisiana Hotel Corporation's direct supervision and monitoring of the Sheraton Albuquerque Uptown and its hotel staff

   b. Collection and review of surveillance footage at the Sheraton Albuquerque Uptown

   c. Sheraton's protocols that, on their face, required staff at the Sheraton Albuquerque Uptown to report suspected criminal activity and suspected trafficking to Sheraton.

   d. Information obtained by Sheraton's field-based associates that visited hotels to discuss safety issues, including human trafficking issues.

   e. Defendants' joint regular monitoring of online reviews

    f.   Defendants' joint involvement in soliciting, monitoring, analyzing and responding to guest surveys and guest complaints.

    g.   Sheraton's capture, retention, and analysis of extensive data about virtually all aspects of the operation of the Sheraton Albuquerque Uptown, including extensive guest data and detailed reports about hotel operations.

    h.   Sheraton's regular inspections of the Sheraton Albuquerque Uptown.

    i.   Other sources of non-public information available exclusively to the Defendants.

48.      Upon information and belief, Louisiana Hotel Corporation and hotel staff were required to report suspected trafficking to Sheraton and did, in fact, report numerous instances of prostitution, sex workers, and sex trafficking at the Sheraton Albuquerque Uptown.

49.      Sheraton also had constructive knowledge of the trafficking of S.C. because that trafficking was a result of Sheraton facilitating widespread and ongoing trafficking at the Sheraton Albuquerque Uptown.

**Defendant, Louisiana Hotel Corporation, as Franchisee, Was Required to Report to the Franchisor, Sheraton.**

50.      The relationship between Louisiana Hotel Corporation, as franchisee, and Sheraton, as franchisor, was governed by a franchise agreement.

51.      Louisiana Hotel Corporation provided the "boots on the ground" for the Sheraton Albuquerque Uptown.

52.      Louisiana Hotel Corporation is responsible for the acts, omissions, and knowledge of all employees of the Sheraton Albuquerque Uptown because:

    a.   . These acts and omissions were committed in the scope and course of employment.

    b.   Louisiana Hotel Corporation ratified these acts and omissions.

    c.   Louisiana Hotel Corporation failed to exercise reasonable care with regard to the hiring, training, and supervision of these employees given the specific risks, known

to Louisiana Hotel Corporation, of human trafficking, occurring at the Sheraton Albuquerque Uptown.

53.     At all material times, Sheraton had robust reporting requirements in place for its franchisees, such as Louisiana Hotel Corporation.

54.     Sheraton requires its franchisees, such as Louisiana Hotel Corporation, to report all suspected instances of crime at Sheraton-branded properties.

55.     Sheraton requires its franchisees, such as Louisiana Hotel Corporation, to report all suspected instances of sex trafficking at Sheraton-branded properties.

56.     Based on information observed by the staff at the Sheraton Albuquerque Uptown, reports should have been made to Sheraton, about the sex trafficking of S.C.

57.     As a result of the strict reporting requirements, at all material times, Defendants knew or should have known of their facilitation of sex trafficking at the Sheraton Albuquerque Uptown, including the facilitation of the sex trafficking of S.C.

**S.C.'s Trafficking Could Have Been Prevented at the Sheraton Albuquerque Uptown**

58.     At all material times, Defendants owned, operated, managed, supervised, controlled, and/or were responsible for the operations of the Sheraton Albuquerque Uptown.

59.     Defendants acted jointly to rent rooms at the Sheraton Albuquerque Uptown.

60.     Louisiana Hotel Corporation participated in the rental of rooms through on-site boots on the ground at the front desk of the Sheraton Albuquerque Uptown.

61.     Upon information and belief, Sheraton directly participated in renting rooms to traffickers at the Sheraton Albuquerque Uptown, including to S.C.'s traffickers, in ways including but not limited to the following:

a. Sheraton controlled all details of the guest reservation, check-in, and payment processes through its management of and control over all systems used for those processes and through its adoption and enforcement of detailed and specific policies dictating the means and methods used for the day-to-day implementation of these processes.

b. Sheraton directly took reservations for rooms at the subject Sheraton and accepted payment for those rooms through a central reservation system that it controlled and operated.

c. Sheraton could make reservations and take payment for rooms at the Sheraton Albuquerque Uptown without any involvement or approval by the franchisee.

d. When a guest did not make a reservation in advance through the central reservation system, Sheraton nonetheless controlled the specific process used to register a walk-in guest and generate a reservation for that guest by requiring its franchisee to use a Sheraton system to process the room rental and payment.

e. Sheraton set or otherwise controlled room prices, required discounts, and reward programs. Sheraton also controlled the room rates offered to each guest.

f. Sheraton controlled all guest data related to room rentals,

g. Sheraton controlled and restricted the ability of hotel staff to refuse or cancel a reservation.

h. Sheraton established detailed policies and protocols that dictated, step-by-step, everything that would happen from the time a guest arrived at the hotel until they entered their guest room. This included operational directives regarding payment methods, identification requirements, the number of guests that could be in each room and whether information needed to be collected for each guest, what questions hotel staff should and should not ask, and other matters related to check-in.

i. Sheraton required franchisees to use a property management system, which was owned, maintained, and controlled by Sheraton, for virtually all aspects of hotel operations related to room rentals. Through the backend of this system, Sheraton had direct involvement in room rentals.

j. Sheraton collected, tracked, and reported comprehensive information about each guest at the subject Sheraton.

62.   Even though the hotel staff knew or was willfully blind to their trafficking activities, the hotel staff continued associating with sex traffickers, including S.C.'s trafficker, by renting rooms, accepting cash, ignoring obvious sex trafficking signs and taking other steps to facilitate trafficking activities.

63.   Each of the Defendants continued renting rooms and providing related services to traffickers whom it knew or should have known were engaged in sex trafficking. In doing

so, each Defendant formed an association in fact with the traffickers operating at the subject Sheraton who chose the hotel because the acts and willful or negligent omissions of each Defendant made it a favorable venue for sex trafficking.

64.     S.C.'s trafficker chose the Sheraton Albuquerque Uptown hotel for the purpose of trafficking S.C. for sex because the manner in which the hotel was operated by Defendants allowed his illegal activity to proceed without interference and with minimal traceability.

65.     Each of the Defendants knew or should have known that S.C. was being trafficked and, despite this, continued associating with her traffickers by providing hotel rooms and related services, for her sexual exploitation.

66.     There was an implicit agreement between Defendants and S.C.'s sex trafficker as evidenced by the circumstances surrounding the trafficker's use of the facilities of the Sheraton Albuquerque Uptown, including but not limited to Defendants' rental of rooms to S.C.'s trafficker despite apparent warning signs that S.C. was being trafficked.

67.     Defendants were jointly responsible for customer safety and, specifically, prevention of human trafficking at the Sheraton Albuquerque Uptown. Sheraton retained control over, and thus had a duty with respect to, customer safety at the Sheraton Albuquerque Uptown generally and specifically regarding detection of and response to human trafficking at the Sheraton Albuquerque Uptown.

68.     Upon information and belief, Sheraton participated directly in aspects of the operation of the subject Sheraton that influenced whether and to what extent trafficking occurred at the hotel, including but not limited to the following:

   a.   Sheraton retained control over and responsibility for training related to detecting and responding to human trafficking.

b. Sheraton retained control over and responsibility for setting, supervising, overseeing, and enforcing all policies and protocols regarding detecting and responding to human trafficking.

c. Sheraton was responsible for maintaining, monitoring, and analyzing patterns of criminal activity in franchised hotels.

d. Sheraton assumed responsibility for distributing safety-related information, including information related to trafficking, to franchisees and hotel staff.

e. Sheraton assumed responsibility for monitoring circumstances and events associated with a high risk of trafficking and notifying franchisees and hotel staff of the same; and

f. Sheraton retained control over the setting, supervision, overseeing, and enforcement of detailed policies and protocol for housekeeping services at the hotel, including policies for how often rooms must be entered, how to respond to guest refusals of entry into rooms, and steps to monitor guest safety issues through housekeeping services.

69.    Armed with knowledge of the prevalence of trafficking in the hotel industry, at Sheraton hotels across the country, and the signs present at the Sheraton Albuquerque Uptown, Defendants had an obligation to enact, implement, follow, and enforce policies to identify sex trafficking and not to participate in or benefit from the facilitation thereof. Defendants failed to do so and thus facilitated sex trafficking that operated out of the Sheraton Albuquerque Uptown.

70.    The most effective weapon against sexual exploitation and human trafficking is education and training.[14] As ECPAT concluded:

The hospitality industry is in a unique position to identify and report human trafficking due to its perceived anonymity. Traffickers believe they can go unnoticed while exploiting victims across the globe in hotels— ranging from budget properties to luxury resorts. From check-in to check-out there are a number of indicators victims and exploiters exhibit during the time they are on a hotel property.[15]

---

[14] Polaris, *Recognizing Human Trafficking*, https://polarisproject.org/recognizing-human-trafficking/ (last visited April 13, 2023).
[15] ECPAT USA, *Training for Hotel Associates*, https://www.ecpatusa.org/hotel-training (last visited April 13, 2023). *See also* Carolin L. et al., *Sex Trafficking in the Tourism Industry*, J. Tourism Hospit. (2015), https://www.longdom.org/open-access/sex-trafficking-in-the-tourism-industry-2167-0269-1000166.pdf.

71.     This same conclusion is echoed by others who seek to eliminate or minimize sex trafficking in the hospitality industry, including the American Hotel Lodging Association: "Hotel employees who have undergone training are more aware of trafficking when it happens – and are more willing to report it – than those who have not been trained.[16] In reference to companies like the Defendants, ECPAT observed: "If they do nothing to raise awareness or to prevent child trafficking, they risk becoming an indirect and unintentional conduit for the abuse that takes place."

72.     If the Defendants had implemented and enforced sex trafficking guidelines, "red flags," training policies and procedures, and other recommendations adopted in the industry, and then adequately trained their hotel staff, each and every Defendant would have or should have known of S.C.'s trafficking at the Sheraton Albuquerque Uptown and would have been in a position to prevent the trafficking of S.C.

73.     The "red flags" and signs of a sex trafficking venture described above were observed by Defendant Louisiana Hotel Corporation. Upon information and belief, Louisiana Hotel Corporation should have reported the signs of sex trafficking to Sheraton.

74.     Had Defendants educated and/or trained their actual or apparent agents, servants, franchisees, employees and/or staff regarding human trafficking and their warning signs, their actual or apparent agents, servants, franchisees, employees and/or staff would have more aware of human trafficking taking place at their hotels, including the Sheraton Albuquerque Uptown, and could have, at best, prevented it from happening or, at worst, been more willing to report it when it happened.

---

[16] AHLA, *Free Online Training*, https://www.ahla.com/issues/human-trafficking (last visited April 13, 2023).

75.     Defendants' active decision not to prevent and stop sex trafficking and sexual exploitation at their hotels, including the Sheraton Albuquerque Uptown, makes them accountable to victims of sex trafficking, including the Plaintiff S.C.

76.     Defendants engaged in acts and omissions that supported, facilitated, harbored, and otherwise furthered the trafficker's sale and victimization of S.C. for commercial sexual exploitation.

77.     Each of the Defendants knew or should have known that the way it was operating the Sheraton Albuquerque Uptown was leading to widespread sex trafficking but elected to continue operating the hotel in the same way, which it knew or should have known would lead to further sex trafficking at the hotel.

78.     Louisiana Hotel Corporation facilitated sex trafficking at the Sheraton Albuquerque Uptown in ways including but not limited to: failing to adequately train and supervise frontline staff, failing to follow written policies and directives regarding sex trafficking, affirmatively adopting practices that made the Sheraton Albuquerque Uptown a more attractive venue for sex trafficking, and otherwise implicitly providing support for the activities of sex traffickers.

79.     Upon information and belief, Sheraton continued participating in a venture at that hotel, with its franchisee and the hotel staff, in a way that it knew or should have known would lead to additional sex trafficking at the hotel, in ways including but not limited to the following:

   a.  Sheraton adopted inappropriate and inadequate practices for hiring, training, supervising, managing, and disciplining franchisees and front-line hotel staff regarding issues related to human trafficking.
   b.  Sheraton implicitly condoned and endorsed the franchisee's repeated decisions not to report or respond to trafficking appropriately.

c.  Sheraton continued to use policies, protocols, and practices that had been shown to lead to widespread trafficking.

d.  Sheraton deviated from and disregarded stated policies when operating the hotel.

e.  Sheraton allowed traffickers to reserve rooms using cash, which provided relative anonymity and non-traceability.

f.  Sheraton provided access to high volumes of unregistered guests all going into the same room without logging these guests or requiring identification.

g.  Sheraton attracted traffickers by affirmatively creating a favorable venue where access was easy, risks of interference were low, and traceability was minimal.

h.  Sheraton continued to allow the hotel to use its trademarks despite actual or constructive knowledge of ongoing sex trafficking in that hotel.

80.    If Sheraton had used reasonable diligence when working with its franchisee and the hotel staff to operate the subject Sheraton, then Sheraton would have prevented the hotel from being used to facilitate widespread and ongoing sex trafficking, including the trafficking of S.C. Instead, Sheraton engaged in conduct that affirmatively facilitated widespread and ongoing sex trafficking, including the trafficking of S.C.

81.    Because policies purportedly enacted and enforced by Sheraton to identify signs of sex trafficking and stop it from occurring were not properly implemented at the Sheraton Albuquerque Uptown by either Sheraton or Louisiana Hotel Corporation, S.C.'s trafficker was able to continue the trafficking venture at the Sheraton Albuquerque Uptown. Had Sheraton adequately enforced the policies and procedures they enacted to prevent trafficking from occurring within their Sheraton branded hotels after observing the obvious signs of trafficking as described above, S.C.'s trafficking would have been identified and reported, and ultimately would have been prevented at the Sheraton Albuquerque Uptown. Furthermore, had Defendant Louisiana Hotel Corporation properly followed the franchise policies enacted by Sheraton to identify and prevent trafficking from occurring at Sheraton branded hotels as described above, S.C.'s trafficking would have been identified and

reported, which would have prevented her trafficking at the Sheraton Albuquerque Uptown.

82.     Defendants, acting by and through their agents, managers, vice-principals and employees, failed to reduce or eliminate the human sex trafficking in the Sheraton Albuquerque Uptown, despite the obvious signs of sex trafficking and commercial sex taking place there because said Defendants were actively engaged in facilitation of and benefiting from said activities.

83.     The motivation behind Defendants' ongoing willful blindness and ongoing failure to act is plain and simple – limitless corporate greed; Defendants ignored all of the signs of and/or solutions to human trafficking out of an unfettered fealty to their profit margins and a corresponding complete disregard for the value of human life.

**Defendants Knowingly Benefitted from S.C.'s Sex Trafficking**

84.     Plaintiff alleges that Defendants knowingly received benefits from participating in the venture that facilitated S.C.'s trafficking at the Sheraton Albuquerque Uptown.

85.     As a result of the strict reporting requirements at all material times, all  Defendants knew they were both facilitating and benefitting from sex trafficking at the Sheraton Albuquerque Uptown including the sex trafficking of S.C.

86.     Sheraton, as franchisor, generates substantial income from operations of hotels such as the Sheraton Albuquerque Uptown. In exchange for providing the services described above and more specifically delineated in the controlling franchise agreement, Sheraton received a share of the profits from room rentals collected by Defendant Louisiana Hotel Corporation at the Sheraton Albuquerque Uptown. The primary source of Sheraton's income is the franchising royalty fee, but Sheraton also profits from reservation fees,

marketing fees, loyalty program fees, and other miscellaneous ancillary fees, as described in the franchise documents. The fees generated by Sheraton are primarily based on gross room rentals, and Sheraton's profits increase with each room rental.

87.     Defendant Louisiana Hotel Corporation, as franchisee, profited from every stay by every patron at the Sheraton Albuquerque Uptown, both from room rentals and other hotel services.

88.     Upon information and belief, Sheraton knowingly benefitted from its participation in the sex trafficking venture carried on at the Sheraton Albuquerque Uptown in that it received a portion of the proceeds collected by its franchisee.

89.     At all material times, Sheraton and Defendant Louisiana Hotel Corporation received monetary payment for the rental of rooms at the Sheraton Albuquerque Uptown, including the rooms where S.C. was being trafficked.

90.     By participating in a venture that facilitated sex trafficking, each Defendant also benefitted by keeping operating costs low, maintaining the loyalty of the segment of their customer base that seeks to participate in the sex trade and by not acknowledging the pervasive nature of sex trafficking in their hotels generally and the Sheraton Albuquerque Uptown specifically

91.     Despite knowledge of the sex trafficking venture occurring at the Sheraton Albuquerque Uptown, both Defendant Louisiana Hotel Corporation and Sheraton continued to financially benefit from S.C.'s stay at located at the Sheraton Albuquerque Uptown, all while failing  to prevent or stop criminal activity-sex trafficking, including the trafficking of S.C., from occurring on their property.

92.     As a result of the monies paid by S.C.'s trafficker to the secure rooms for her

trafficking at the Sheraton Albuquerque Uptown, Sheraton and Defendant Louisiana Hotel

Corporation knowingly benefitted from participating in the venture that trafficked,

harbored, and maintained S.C.'s trafficking at the Sheraton Albuquerque Uptown.

93. Through the conduct described above, Louisiana Hotel Company and Sheraton

knowingly benefited from engaging in a venture with sex traffickers at the subject

Sheraton, including S.C.'s traffickers, as follows:

a.  Sheraton and Louisiana Hotel Company both received benefits, including increased
revenue, every time a room was rented at the Sheraton Albuquerque Uptown.

b.  This venture engaged in violations of 18 U.S.C. §1591 through the actions of the
criminal traffickers at the Sheraton Albuquerque Uptown, which Sheraton and
Louisiana Hotel Company knew or should have known about.

c.  Sheraton and Louisiana Hotel Company associated with traffickers, including
S.C.'s traffickers, by acting jointly to continue to rent rooms to these traffickers
despite having actual or constructive knowledge of their sex trafficking activity.

d.  Sheraton and Louisiana Hotel Company had a mutually beneficial relationship with
the traffickers at the Sheraton Albuquerque Uptown, fueled by sexual exploitation
of victims.

e.  Sex traffickers, including Jane Doe's traffickers, frequently used the Sheraton
Albuquerque Uptown for their trafficking because of an implicit understanding that
hotel was a venue that would facilitate their trafficking, providing minimal
interference and lowering their risk of detection. This understanding occurred
because of the conduct of Sheraton and Louisiana Hotel Company facilitating that
trafficking as described throughout this Complaint.

f.  Both Sheraton and Louisiana Hotel Company participated in this venture through
the conduct described throughout this Complaint as they were jointly responsible
for relevant aspects of hotel operations.

g.  S.C.'s trafficking at the Sheraton Albuquerque Uptown was a result of Sheraton
and Louisiana Hotel Company's participation in a venture with criminal traffickers.
If Sheraton and Louisiana Hotel Company had not continued participating in a
venture that they knew or should have known violated 18 U.S.C. §1591(a), they

would not have received a benefit from S.C.'s trafficking at the Sheraton Albuquerque Uptown.

94. Through the conduct described above, Sheraton also knowingly benefited from engaging in a venture with Louisiana Hotel Company operating the Sheraton Albuquerque Uptown as follows:

   a. Sheraton associated with Louisiana Hotel Company to operate the Sheraton Albuquerque Uptown.

   b. Pursuant to the terms of the franchising agreement, both Sheraton and Louisiana Hotel Company received financial benefits from operating the Sheraton Albuquerque Uptown, including revenue generated specifically by renting rooms to traffickers. They engaged in revenue sharing and had a common incentive to maximize revenue.

   c. This venture engaged in violations of 18 U.S.C. §1595(a) and 18 U.S.C. §1591(a) through the conduct of Louisiana Hotel Company and the widespread sex trafficking at the Sheraton Albuquerque Uptown.

   d. Despite its actual or constructive knowledge that the venture was engaged in violations of 18 U.S.C. §1595(a) and 18 U.S.C. §1591(a), Sheraton participated in the venture by continuing to associate with Louisiana Hotel Company to operate the Sheraton Albuquerque Uptown in a way that it knew or should have known would lead to further violations of 18 U.S.C. §1595(a) and18 U.S.C. §1591(a), including trafficking of victims like S.C.

   e. S.C.'s trafficking at the Sheraton Albuquerque Uptown was a result of Sheraton's and Louisiana Hotel Company's facilitation of widespread and ongoing sex trafficking at the Sheraton Albuquerque Uptown. Had Sheraton not continued participating in a venture that it knew or should have known was facilitating sex trafficking, it would not have received a benefit from S.C.'s trafficking at the Sheraton Albuquerque Uptown.

**Franchisor Sheraton exercised systematic and pervasive control over Louisiana Hotel Corporation and operations of the Sheraton Albuquerque Uptown**

95. Sheraton functioned as an integrated enterprise with highly integrated operations, as alter-egos and/or instrumentalities, and as a joint venture with respect to franchising the Sheraton Albuquerque Uptown. The Sheraton entities shared profits, operated for a common purpose, and exercised mutual control over the franchising of the Sheraton

Albuquerque Uptown. The Sheraton entities were separately and jointly responsible for compliance with all laws.

96.     Sheraton exercised pervasive and systematic control over Louisiana Hotel Corporation.

97.     Sheraton exercised an ongoing and systemic right of control over Louisiana Hotel Corporation regarding the operation of the Sheraton Albuquerque Uptown, including day-to-day operations. These written standards, protocols, and requirements:

   a.   did not merely identify quality or outcome standards but instead specifically controlled the means, methods, and tools used at the Sheraton Albuquerque Uptown;
   b.   covered virtually all aspects of hotel operations, including internal operating functions;
   c.   dictated the specific way Louisiana Hotel Corporation and hotel staff must carry out most day-to-day functions at the Sheraton Albuquerque Uptown; and
   d.   significantly exceeded what was necessary for Sheraton to protect its registered trademarks.

98.     Sheraton retained a broad authority to revise or adopt new requirements due to market trends, economic conditions, technological advances, or for any other reason that it elected to do so.

99.     Sheraton retained the right to grant a variance, in its sole discretion, for any reason that it deemed important to any aspect of the hotel's operation.

100.    At all relevant times, Defendant Louisiana Hotel Corporation was subject to and required to comply with franchise agreement standards, policies, and rules adopted by Sheraton. These standards and policies are detailed and control the specific manner and means by which Defendant Louisiana Hotel Corporation must operate the Sheraton Albuquerque Uptown.

101.    Sheraton requires its franchisees, such as Louisiana Hotel Corporation, to allow Sheraton to inspect its Sheraton branded hotels "at any time without notice" to verify that its franchisees are in compliance with its franchise agreement, and that Sheraton branded hotels are operated lawfully.

102.    Sheraton regularly inspected the Sheraton Albuquerque Uptown.

103.    One of Sheraton's most valuable assets is its brand.

104.    In addition to the ways described above, upon information and belief, Sheraton exercised and reserved the right to exercise systemic and pervasive control over Louisiana Hotel Corporation's day-to-day operation of the Sheraton Albuquerque Uptown in ways including but not limited to the following:

a.  retaining the right to interview hotel management candidates and retaining sole discretion to approve or reject a general manager for the hotel proposed by Louisiana Hotel Corporation;

b.  requiring that Louisiana Hotel Corporation use specific interviewing processes developed by Sheraton;

c.  requiring Louisiana Hotel Corporation, the general manager, the Director of Marketing, finance personnel, and all senior executives to attend mandatory training provided by Sheraton;

d.  mandating specific training for employees at the Sheraton Albuquerque Uptown;

e.  requiring the use of standardized training methods for employees at the Sheraton Albuquerque Uptown;

f.  retaining sole discretion to determine whether training has been completed in a satisfactory manner;

g.  requiring Louisiana Hotel Corporation and hotel management to participate in global, national, or regional conventions or conferences;

h.  adopting detailed job descriptions for employees to staff the Sheraton Albuquerque Uptown and drafting policies and requirements that specifically dictate which staff members must perform day-to-day functions and how they must perform those functions;

i.  controlling channels for guests to report complaints or provide feedback regarding the Sheraton Albuquerque Uptown and supervising and/or dictating the response of Louisiana Hotel Corporation to those complaints;

j.  restricting Louisiana Hotel Corporation's use of guest data and asserting ownership over all guest data;

k.  retaining the ability to require Louisiana Hotel Corporation to participate in mandatory centralized programs for aspects of the operations of the Sheraton Albuquerque Uptown at Sheraton's discretion, including for human resources, operations, and accounting;

l.  requiring Louisiana Hotel Corporation to build and maintain the Sheraton Albuquerque Uptown in a manner specified by Sheraton;

m. requiring Louisiana Hotel Corporation to operate the Sheraton Albuquerque Uptown in a manner to maximize gross room revenue and retaining the right to supervise and oversee operations of the Sheraton Albuquerque Uptown to ensure Sheraton Albuquerque Uptown follows this requirement;

n.  exercising significant control over Louisiana Hotel Corporation's procurement by designating what specific equipment and supplies it must purchase and designating approved vendors from which purchases can be made;

o.  adopting standardized or strict rules of operation for the Sheraton Albuquerque Uptown;

p.  conducting regular inspection of the Sheraton Albuquerque Uptown and its operation by Sheraton;

q.  restricting Louisiana Hotel Corporation's right to grant security interests or obtain certain forms of financing;

r.  requiring Louisiana Hotel Corporation to promote other Sheraton-branded hotels;

s.  providing an online booking platform for the Sheraton Albuquerque Uptown and requiring Louisiana Hotel Corporation to use it;

t.  establishing detailed recordkeeping and reporting requirements for the Sheraton Albuquerque Uptown, including for day-to-day operations of the hotel and internal-facing operations;

u.  collecting, monitoring, and analyzing dozens of reports regarding the Sheraton Albuquerque Uptown through the backend of the property management system and using these reports to supervise and control the day-to-day operations;

v.  imposing detailed requirements for the insurance that Louisiana Hotel Corporation was required to purchase;

w. retained the virtually unlimited right to revise policies or adopt new requirements for the day-to-day aspects of hotel operations; and

x.  other actions that deprived Louisiana Hotel Corporation of independence in the business operations of the Sheraton Albuquerque Uptown.

105.  Sheraton specifically retained control over the day-to-day operation of Defendant Louisiana Hotel Corporation with regard to aspects of the operation of the Sheraton

Albuquerque Uptown that caused S.C.'s harm, including but not limited to reservation policies and procedures, staff training, security policies and training, education polices, and procedure regarding human trafficking.

106.    Sheraton regularly advised Defendant Louisiana Hotel Corporation on operational changes necessary for it to remain in compliance with Sheraton's strict regulations.

107.    Sheraton had the ability to impose fees or fines on Louisiana Hotel Corporation. Furthermore, at all material times, Sheraton retained an absolute right to cancel its franchise agreement with Defendant Louisiana Hotel Corporation if Sheraton's rules were violated or if Louisiana Hotel Corporation otherwise failed to comply with its contractual obligations.

108.    Sheraton exercised a degree of control beyond that necessary to protect its registered marks under the Lanham Act.

109.    At all relevant times, Defendant Louisiana Hotel Corporation acted as the agent of Sheraton when operating the Sheraton Albuquerque Uptown.

110.    Sheraton and Defendant Louisiana Hotel Corporation shared control of the terms and conditions of the employment of staff at the Sheraton Albuquerque Uptown, and Sheraton and Louisiana Hotel Corporation are joint employers. Upon information and belief, Sheraton exercised control over the terms and conditions of employment of staff at the Sheraton Albuquerque Uptown by advertising employment opportunities, making or influencing employment decisions, setting employee wages, and adopting standardized rules of operations that govern the day-to-day work of the employees.

111.    Sheraton has ratified the acts and omissions of the Louisiana Hotel Corporation and the staff of the Sheraton Albuquerque Uptown.

**Marriott International, Inc.'s Successor Liability**

112.    In November 2015, Marriott International, Inc. announced its plan to acquire Starwood Hotels & Resorts. In September 2016, the FTC approved the merger.

113.    This acquisition resulted in an effective merger between Marriott International, Inc. and Starwood Hotels & Resorts.

114.    Following the merger, Marriott International, Inc. acted as a franchisor of the Sheraton Albuquerque Uptown.

115.    Marriott International, Inc. implicitly agreed to assume the liabilities of Starwood Hotels & Resorts, including liabilities related to franchising of the Sheraton Albuquerque Uptown.

116.    Marriott International, Inc. is the successor entity to Starwood Hotels & Resorts and is responsible for the acts and omissions of Starwood Hotels & Resorts franchising the Sheraton Albuquerque Uptown.

117.    All references to Marriott International, Inc. in this Complaint include references to its predecessor entities.

## <u>CAUSE OF ACTION—SEX TRAFFICKING UNDER THE TVPRA</u>

118.    S.C. incorporates all other allegations.

119.    At all relevant times, S.C. was and is a victim within the meaning of 18 U.S.C. § 1591 and 1595(a).

120.    Defendants are liable as perpetrators within the meaning of 18 U.S.C. § 1595(a) because in the ways described above:

a. Each Defendant knowingly or recklessly participated in harboring, maintenance, and/or other acts in further of sex trafficking, including the sex trafficking of S.C.; and

b. Each Defendant knowingly benefitted, by receiving financial and other compensation, through their participation in a venture that they knew or were reckless in not knowing involved the trafficking, harboring, and maintenance of sex trafficking victims in exchange for financial benefits. 18 U.S.C. §§ 1590(a), 1591(a)(2), 1593A.

121.    Defendants are liable as beneficiaries within the meaning of 18 U.S.C. § 1595(a) because, as described above, Defendants knowingly benefitted, by receiving financial and other compensation, from their participation in a venture they knew or should have known was engaged in a violation of the TVPRA, 18 U.S.C. § 1581, *et seq.*

122.    Despite knowledge of S.C.'s sex trafficking by the Defendants, S.C.'s trafficker was able to continue renting rooms for the sexual exploitation of S.C. at the Sheraton Albuquerque Uptown.

123.    Each Defendant participated in a venture together and with, among others, S.C.'s trafficker. Defendants had an ongoing business relationship and association in fact with S.C.'s trafficker. Despite the fact that Defendants knew or should have known that S.C. was being sex trafficked in violation of the TVPRA, S.C.'s trafficker was able to rent rooms for the sexual exploitation of S.C. at the Sheraton Albuquerque Uptown. S.C.'s sex trafficker used the Sheraton Albuquerque Uptown because he knew that staff members looked the other way despite obvious signs of trafficking. Each of the venturers shared a common purpose – the rental of hotel rooms and the making of profits. Each Defendant

profited while S.C.'s trafficker was able to rent a secure venue to earn profits by trafficking S.C. Each Defendant participated in the venture by continually renting rooms to S.C.'s trafficker, failing to properly implement anti-trafficking rules and policies, and assisting traffickers to continue their sexual exploitation with minimal risk of detection and disturbance, all the while ignoring the obvious signs of S.C.'s trafficking.

124.    Through the acts and omissions described throughout this Complaint, Sheraton received a financial benefit from participating in a venture with Louisiana Hotel Corporation and the staff of the Sheraton Albuquerque Uptown even though Sheraton knew or should have known this venture was engaged in a violation of the TVPRA, 18 U.S.C. §§ 1595(a) and 1591(a).

125.    Each Defendant's failure to train and supervise their agents and employees and their inattention to the plights of their patrons, including S.C. at the Sheraton Albuquerque Uptown, enabled and contributed to the sex trafficking of S.C.

126.    Each Defendant received substantial financial benefits as a result of these acts and/or omissions. Sheraton received benefits in the way of management fees, royalty fees, reservation fees, marketing fees, and other ancillary fees from the operation of the Sheraton Albuquerque Uptown. Louisiana Hotel Corporation received benefits in the way of room rental fees, in-room purchases, and other ancillary expenses by patrons and visitors of the Sheraton Albuquerque Uptown.

127.    The facts alleged establish that each Defendant knowingly benefitted, financially or by receiving anything of value, from participating in a venture that Defendants knew or should have known has engaged in an act in violation of the TVPRA.

128.   147.   The venture or ventures in which each Defendant participated were a direct, producing, and proximate cause of the injuries and damages to S.C.

129.   S.C. further alleges that, as a result of the relationship between Sheraton and Louisiana Hotel Corporation, Sheraton is vicariously liable for the acts of Louisiana Hotel Corporation, including at the Sheraton Albuquerque Uptown. Factors that support this allegation are that Sheraton shared profits, standardized employee training, standardized and strict rules of operations, Sheraton controlled pricing and reservations, regularly conducted inspections, operational support and control, and other acts described above. Finally, Sheraton had the right to terminate any franchisee, including Louisiana Hotel Corporation, that failed to comply with the requirements promulgated by Sheraton. Thus, Sheraton retained control, or the right to control, the mode and manner of work contracted for.

130.   S.C. further alleges that Sheraton is vicariously liable for the acts and omissions of the staff at the Sheraton Albuquerque Uptown because Sheraton together with Louisiana Hotel Corporation, acted as the joint employer of these employees because Sheraton and Louisiana Hotel Corporation jointly controlled the terms and conditions of their employment.

## DAMAGES

131.   Sheraton and Louisiana Hotel Corporation's acts and omissions, individually and collectively, caused S.C. to sustain legal damages.

132.   Sheraton and Louisiana Hotel Corporation are joint and severally liable for all past and future damages sustained by S.C.

133.    S.C. is entitled to be compensated for personal injuries and economic damages, including:

    a. Actual damages;

    b. Direct damages;

    c. Incidental and consequential damages;

    d. Mental anguish and emotional distress damages (until trial and in the future);

    e. Lost earning capacity in the future;

    f. Loss of self-esteem and self-worth;

    g. Necessary medical expenses;

    h. Physical pain and suffering;

    i. Physical impairment;

    j. Emotional impairment;

    k. Unjust enrichment; and

    l. Penalties.

134.    S.C. is entitled to exemplary damages.

135.    S.C. is entitled to treble damages.

136.    S.C. is entitled to recover attorneys' fees and costs of court.

137.    S.C. is entitled to pre- and post-judgment interest at the maximum legal rates.

138.    A constructive trust should be imposed on Sheraton and Louisiana Hotel Corporation, and the Court should sequester any benefits or money wrongfully received by Sheraton or Louisiana Hotel Corporation for the benefit of S.C.

### **DISCOVERY RULE**

139.    To the extent Defendants assert an affirmative defense of limitations, Plaintiff invokes the discovery rule. At the time Plaintiff was harmed, Plaintiff did not know that she was the victim of human trafficking, that her injury arose from being trafficked at Defendants' hotel or that she was a person trafficked, much less that she was being victimized by a human trafficking venture, and she did not discover and was not in a position to discover the legal cause of her injury, and certainly not more than ten years before suit was filed. Moreover, at the time the trafficking occurred, Plaintiff did not know what "human trafficking" was, much less that she was being victimized by a human trafficking venture, and she did not discover and was not in a position to discover the existence of a cause of action until shortly before suit was filed, and certainly not more than ten years before suit was filed.

## JURY TRIAL

140.    S.C. demands a jury trial on all issues.

## RELIEF SOUGHT

Wherefore, S.C. respectfully requests judgment against The Sheraton, LLC, Starwood Hotels & Resorts Worldwide, LLC, Starwood Hotels & Resorts Worldwide, Inc., Marriott International, Inc., and Louisiana Hotel Corporation, jointly and severally, for actual damages in excess of the minimum jurisdictional limits of this Court, pre- and post-judgment interest as allowed by law, costs of suit, attorney fees, and all other relief, at law or in equity, to which she may be justly entitled.


Dated: July 5, 2023                              Respectfully submitted,

                                                 **YOUTZ & VALDEZ, P.C.**

By: */s/ Shane Youtz*
Shane Youtz
Stephen Curtice
James A. Montalbano
900 Gold Ave. SW
Albuquerque, NM  87102
Telephone: (505) 244-1200
shane@youtzvaldez.com
stephen@youtzvaldez.com
james@youtzvaldez.com

**PROVOST ★ UMPHREY LAW FIRM**

By: */s/ Edward Fisher*
Edward Fisher
State Bar No.: 24012624
350 Pine Street, Suite 1100
Beaumont, Texas 77701
Telephone: (409) 838-8813
efisher@pulf.com
*Admitted Pro Hac Vice*

Patrick Barrett
Texas Bar No.: 00787042
4205 Hillsboro Pike, Suite 303
Nashville, TN 37215
615-463-4000
pbarrett@pulf.com
*Admitted Pro Hac Vice*

*Counsel for Plaintiff*

I hereby certify that a true and correct
copy of the foregoing pleading was
electronically filed and served through
the CM/ECF system this 5th day of
July, 2023, on all registered parties.

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.
Andrew G. Schultz
Melanie B. Stambaugh
Noell S. Huffmyer
Email: aschultz@rodey.com
mstambaugh@rodey.com
nhuffmyer@rodey.com

Michael P. O'Day
Ellen Dew
**DLA PIPER LLP (US)**
Email: michael.oday@us.dlapiper.com
Email: ellen.dew@us.dlapiper.com
*Attorneys for Defendants The Sheraton LLC, Starwood Hotels & Resorts Worldwide, LLC, Starwood Hotels & Resorts Worldwide, Inc., and Marriott International, Inc.*


_____*/s/ Shane Youtz*_____
Shane Youtz