# U.S. District Court [LIVE]
## Western District of Texas (Austin)
## CIVIL DOCKET FOR CASE #: 1:24-cv-00109-DII

Doe (A.R.J.) v. Wyndham Hotels & Resorts, Inc. et al
Assigned to: Judge Docket II - Austin
Cause: 18:1595 Peonage, Slavery, and Trafficking in Persons -
Civil Remedy

Date Filed: 01/30/2024
Jury Demand: Plaintiff
Nature of Suit: 360 P.I.: Other
Jurisdiction: Federal Question

**Plaintiff**

**Jane Doe (A.R.J.)**
*an individual*

represented by   **Bryan O. Blevins , Jr.**
Provost & Umphrey
350 Pine Street
Suite 1100
Beaumont, TX 77701
409-835-6000
Email: bblevins@pulf.com
*ATTORNEY TO BE NOTICED*

**Kelley Bogusevic**
Fibich Leebron Copeland Briggs
1150 Bissonnet Street
Houston, TX 77005
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kenneth T. Fibich**
Fibich Lebbron Copeland Briggs
1150 Bissonnet
Houston, TX 77005
(713)751-0025
Fax: (713) 751-0030
Email: tfibich@fibichlaw.com
*ATTORNEY TO BE NOTICED*

**Matt Matheny**
Provost Umphrey Law Firm
350 Pine Street
Ste. 1100
Beaumont, TX 77701
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sara J. Fendia**
Fibich, Hampton, Leebron & Garth, L.L.P.
1401 McKinney
Suite 1800
Houston, TX 77010-9998
(713) 751-0025
Fax: 713/751-0030
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Colin D. Moore**
Provost Umphrey Law Firm, L.L.P.
350 Pine Street, Suite 1100
Beaumont, TX 77701
409-835-6000
Email: cmoore@provostumphrey.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Wyndham Hotels & Resorts, Inc.**
*formerly known as*
Wyndham Worldwide Corporation
*doing business as*
Super 8 Hotel

**Defendant**

**Wyndham Hotel Group, LLC**

**Defendant**

**Akshar Krupa, L.L.C.**
*doing business as*
A Super 8

**Defendant**

**Super 8 Worldwide, Inc**

| Date Filed | # | Docket Text |
|---|---|---|
| 01/30/2024 | 1 | COMPLAINT *Jane Doe ARJ* ( Filing fee $ 405 receipt number ATXWDC-18363607). No Summons requested at this time, filed by Jane Doe ARJ. (Attachments: # 1 Civil Cover Sheet)(Moore, Colin) (Entered: 01/30/2024) |
| 01/30/2024 | | Case assigned to Judge Docket II - Austin. CM WILL NOW REFLECT THE JUDGE INITIALS AS PART OF THE CASE NUMBER. PLEASE APPEND THESE JUDGE INITIALS TO THE CASE NUMBER ON EACH DOCUMENT THAT YOU FILE IN THIS CASE. (kp) (Entered: 01/31/2024) |
| 01/30/2024 | | If ordered by the court, all referrals and consents in this case will be assigned to Magistrate Judge Dustin Howell. (kp) (Entered: 01/31/2024) |
| 01/30/2024 | | DEMAND for Trial by Jury by Jane Doe (A.R.J.). (kp) (Entered: 01/31/2024) |
| 01/31/2024 | 2 | REQUEST FOR ISSUANCE OF SUMMONS by Jane Doe ARJ. (Moore, Colin) (Entered: 01/31/2024) |
| 01/31/2024 | 3 | Pro Hac Vice Letter to Sara J. Fendia and Kelley Bogusevic. (kp) (Entered: 01/31/2024) |
| 01/31/2024 | 4 | Pro Hac Vice Letter to Matt Matheny. (kp) (Entered: 01/31/2024) |
| 01/31/2024 | 5 | Summons Issued as to Akshar Krupa, L.L.C., Super 8 Worldwide, Inc, Wyndham Hotel Group, LLC, Wyndham Hotels & Resorts, Inc.. (kp) (Entered: 01/31/2024) |

| 02/12/2024 | 6 | SUMMONS Returned Executed by Jane Doe (A.R.J.). Wyndham Hotels & Resorts, Inc. served on 2/8/2024, answer due 2/29/2024. (Moore, Colin) (Entered: 02/12/2024) |
|---|---|---|

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 02/14/2024 09:50:49 | | |
| **PACER Login:** | bblevins110290 | **Client Code:** | HT-1 mms |
| **Description:** | Docket Report | **Search Criteria:** | 1:24-cv-00109-DII |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

JANE DOE (A.R.J.), an Individual

*Plaintiff*

v.                                              CAUSE NO.: _____

WYNDHAM HOTELS & RESORTS, INC. f/k/a
WYNDHAM WORLDWIDE CORPORATION,              JURY TRIAL DEMAND
d/b/a SUPER 8 HOTEL, AKSHAR KRUPA,
L.L.C, WYNDHAM HOTEL GROUP, LLC, AND
SUPER 8 WORLDWIDE, INC.

*Defendants*

## PLAINTIFF'S ORIGINAL COMPLAINT

Comes now, Plaintiff, (A.R.J.), and files this Plaintiff's Original Complaint against Defendants,

Wyndham Hotels & Resorts, Inc. f/k/a Wyndham Worldwide Corporation d/b/a Super 8 Hotel,

Akshar Krupa, L.L.C., hereinafter referred to as ("AKLLC"), Wyndham Hotel Group, L.L.C., and

Super 8 Worldwide, Inc. and for cause of action would show the Court as follows:

## BACKGROUND

1.      Jane Doe (A.R.J.) files this civil lawsuit seeking compensation for the harm she

suffered as a result of the sex trafficking, she endured in a hotel owned, operated, maintained, and

controlled by Defendants and their agents and employees.

2.      Sex trafficking is the recruitment, harboring, transportation, provision, obtaining,

patronizing, or soliciting of a person for the purpose of causing the person to engage in a commercial

sex act either (1) before the person turns 18 years old; or (2) through force, fraud, or coercion.[1]

---

[1] 18 U.S.C. §1591; 22 U.S.C. § 7102.

3.      Commercial sex act means any sex act, on account of which anything of value is given to or received by any person.[2] Traffickers or 'pimps' use threats, violence, manipulation, lies, debt, bondage, and other forms of coercion to compel adults and children to engage in commercial sex acts against their will.

4.      Sex trafficking has become a public health crisis that has reached epidemic proportions in the United States. It is now widely recognized, including by Congress and many state legislatures, that combating sex trafficking requires more than just criminal penalties for pimps and sex buyers.

5.      Since 2003, federal law, through the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §1581, et seq, has provided victims of sex trafficking a civil remedy against perpetrators of criminal sex trafficking.

6.      In 2008, Congress recognized the need to extend liability beyond sex buyers and sellers and intentionally expanded the scope of the TVPRA to reach those who—while not criminally liable under the TVPRA—financially benefit from participation in a venture that they know or *should know* engages in criminal sex trafficking.

7.      As discussed herein, Defendants derived financial benefit from facilitating sex trafficking by providing venues where traffickers could exploit victims, including victims like Jane Doe (A.R.J.), with minimal risk of detection or interruption.

8.      Defendants continued supporting traffickers, including Jane Doe (A.R.J.)'s trafficker, despite evident and apparent signs of widespread and ongoing sex trafficking at its hotels and specifically at the Super 8 located at 3304 South Eastman Road, Longview, Texas 75602.  Defendants were, therefore, knowingly receiving a benefit from participation in a venture that Defendants knew or should have known was engaged in sex trafficking.

---

[2] 18 U.S.C. §1591(e)(3).

## PARTIES

9.      **Plaintiff, Jane Doe (A.R.J.)** is a natural person who is currently a resident and citizen of Texas.

10.      Plaintiff, Jane Doe (A.R.J.) is a victim of sex trafficking under 18 U.S.C. §1591(a) because she was harbored, transported, and provided for the purpose of being caused, through force, fraud, or coercion, to commit a commercial sex act.

11.      The trafficking of Plaintiff (A.R.J.) occurred in or affected interstate commerce.

12.      Given the nature of the allegations in this lawsuit, there is a collective and compelling interest in not publicly revealing (A.R.J.)'s identity.

**Wyndham Hotels & Resorts, Inc., ("WHR")**

13.      **Wyndham Hotels & Resorts, Inc., f/k/a Wyndham Worldwide Corporation, d/b/a Super 8 ("WHR")** is a Delaware corporation with its principal place of business who may be served at **22 Sylvan Way, Parsippany, New Jersey 07054**. Defendant WHR is the successor entity to the hotel business of Wyndham Worldwide Corporation and its former subsidiaries. Defendant WHR is responsible, as successor, for all liabilities of Wyndham Worldwide Corporation and its predecessor subsidiaries related to franchising, controlling, and operating the Super 8 located at 3304 South Eastman Road, Longview, Texas 75602. All references to WHR include the acts and omissions of predecessor entities for which WHR is responsible, including Wyndham Worldwide Corporation and its former subsidiaries.

**Wyndham Hotel Group, L.L.C. ("WHG")**

14.      **Wyndham Hotel Group, L.L.C. ("WHG")** is a for-profit Delaware company with its principal place of business in Parsippany, New Jersey. It can be served by its registered agent **Corporate Creations Network, Inc., 1521 Concord Pike, Suite 201, Wilmington, DE 19803**.

Upon information and belief, WHG is a wholly owned subsidiary of WHR and a former subsidiary of Wyndham Worldwide Corporation.

**Super 8**

15.     **Akshar Krupa, L.L.C., d/b/a Super 8,** is a Texas corporation that, during the period at issue, owned, operated, controlled, and/or managed the Super 8 located at 3304 South Eastman Road, Longview, Texas 75602, through the Wyndham franchising system.  Akshar Krupa, L.L.C. may be served through its registered agent for service: **Varsha Patel, 3505 Highway 259 North, Longview, Texas 75602.** It will be referred to as "Super 8 Longview."

16.     **Super 8 Worldwide, Inc. ("S8W")** is a for-profit Delaware company with its principal place of business in Parsippany, New Jersey. It can be served by serving its registered agent, **Corporate Creations Network, Inc., 5444 Westheimer, #1000, Houston, Texas 77056.** Upon information and belief, S8W is a direct subsidiary of WHG, an indirect subsidiary of WHR, and a former subsidiary of Wyndham Worldwide Corporation.

17.     WHR, WHG, S8W, and AKLLC are referred to collectively as the "Wyndham Brand Defendants."

18.     Upon information and belief, at all relevant times, the Wyndham Brand Defendants, either directly or through the acts of predecessors for which they are responsible, owned, operated, controlled, and/or managed the Super 8 located at 3304 South Eastman Road, Longview, Texas 75602, (hereinafter "Super 8") through the Wyndham franchising system.

## STATEMENT OF FACTS

**I.      Jane Doe (A.R.J.) was a Victim of Unlawful Sex Trafficking at a Hotel Owned, Operated, Managed, and Controlled by Defendants.**

19.     Jane Doe (A.R.J.)'s path to the Super 8 Longview began when she was ensnared by one of her sex traffickers who deceived her into thinking he planned to take care of her. Her traffickers kidnapped her, threatened her, posted advertisements online, and forced her to have commercial sex

for their financial benefit. After acquiescing to her traffickers demands under the constant threats of violence, she began to find herself forced to do increasingly depraved sex acts, in increasingly depraved locations, such as the Super 8 located at 3304 South Eastman Road, Longview, Texas 75602.

20.     Between January 1, 2014, and January 31, 2014, Jane Doe (A.R.J.) was unlawfully and repeatedly trafficked at the Super 8 Longview.

21.     At all relevant times, the Super 8 Longview was a Wyndham brand hotel. Wyndham is the largest hotel operator in the world. Its portfolio includes more than 24 hotel brands. WHR and WHG—directly and through predecessor entities—have at all relevant times directly participated in operation of these hotels, along with and through wholly-owned subsidiary entities—such as S8W—specific to each brand.

22.     Upon information and belief, at all relevant times, there has been a centralized approach to security and trafficking-related issues at all Wyndham branded properties, including Super 8 properties.

23.     (A.R.J.)'s sexual exploitation occurred repeatedly in rooms of the Super 8 Longview and was facilitated by all Defendants.

24.     Staff and management at the Super 8 Longview had a reasonable opportunity to observe (A.R.J.), who at all relevant times was being trafficked.

25.     Based on observing (A.R.J.), the Super 8 Longview hotel staff and management knew or should have known individuals were being trafficked at the Super 8 Longview.

26.     (A.R.J.)'s trafficking had profound effects on her, consistent with "red flags" of trafficking that are well-recognized in the hospitality industry.[3] These effects were obvious and apparent to the staff and management of the Super 8 Longview, including effects on (A.R.J.)'s

---

[3] *See supra* paragraph 36 and accompanying footnote for discussion of "red flags" of trafficking.

appearance, demeanor, movements throughout the hotel, and her interactions with her traffickers, hotel staff, and others. Observing these effects provided Defendants with notice that (A.R.J.) was being trafficked and subject to coercion, control, and exploitation by her traffickers.

27.     (A.R.J.)'s traffickers and other sex traffickers frequently used the Super 8 Longview in Longview, Texas for sex trafficking with approval, acquiescence, and/or implicit support of Defendants and their employees and agents, including the staff of the Super 8 Longview.

## II.     The Hotel Industry's Role in Sex Trafficking and Defendants' Knowledge of the Problem.

28.     The widely known and pervasive relationship between sex trafficking and the hotel industry necessarily shapes what the Defendants knew or should have known regarding the trafficking at their hotel properties, including (A.R.J.)'s trafficking.

29.     Today, sex slavery is pervasive in the United States, and hotels are the primary place where it happens.[4] For years, sex traffickers have "been able to reap these profits with little risk when attempting to operate within hotels."[5] In 2014, 92% of calls received by the National Human Trafficking Hotline involved reports of sex trafficking taking place at hotels.[6] Hotels have been found to account for over 90% of commercial exploitation of children.[7]

30.     The Texas Department of Health recognizes that "[h]otels, motels, and short-term rentals are key players in addressing sex trafficking in all Texas communities."[8]

---

[4] "'This is not only a dominant issue, it's an epidemic issue." See Jaclyn Galucci, Human Trafficking is an Epidemic in the U.S. It's Also Big Business, Fortune, April 2019, at https://fortune.com/2019/04/14/human-sex-trafficking-us- slavery/ citing Cindy McCain, who chairs the McCain Institute's Human Trafficking Advisory Council. "It's also something that is hiding in plain sight. It's everywhere—it's absolutely everywhere." Id.
[5] See Human Trafficking in the Hotel Industry, Polaris Project, February 10, 2016, at https://polarisproject.org/blog/2016/02/10/human-trafficking-hotel-industry; see
also Eleanor Goldberg, You Could Help Save A Trafficking Victim's Life With Your Hotel Room Pic, Huffington Post, June     2016,     at http://www.huffingtonpost.com/entry/taking-a-photo-of-your-hotel-room-could-help-save-a-trafficking-victims life_us_57714091e4b0f168323a1ed7
[6] Michele Sarkisian, Adopting the Code: Human Trafficking and the Hotel Industry, Cornell Hotel Report, October
2015, at https://scholarAKLLCp.sha.cornell.edu/cgi/vi ewcontent.cgi?article=1222&context=chrpubs Oct. 2015
[7] See Erika R. George and Scarlet R. Smith, In Good Company: How Corporate Social Responsibility Can Protect
Rights and Aid Efforts to End Child Sex Trafficking and Modern Slavery, 46 N.Y.U. J. Int'l L. & Pol. 55, 66-67 (2013).
[8] https://www.health.state.mn.us/communities/safeharbor/communities/hoteltrafficking.html

31.     Before (A.R.J.)'s trafficking, law enforcement in Texas recognized the problem of sex trafficking in area hotels and was working with hotels on how to detect sex trafficking and report it to law enforcement.

32.     To address the crisis of sex trafficking at hotels, multiple agencies and organizations who actively combat sex trafficking, including the United States Department of Homeland Security, the National Center for Missing and Exploited Children, the Polaris Project, the Texas Attorney General, Love 146, ECPAT, among others, have established recommended policies and procedures for recognizing the signs of sex trafficking.[9]

33.     Widely recognized signs of sex trafficking, which can be observed by hotel staff and which Defendants were made of aware of, include but are not limited to:

- Individuals show signs of fear, anxiety, tension, submission, and/or nervousness;

- Individuals show signs of physical abuse, restraint, and/or confinement;

- Individuals exhibit evidence of verbal threats, emotional abuse, and/or being treated in a demeaning way;

- Individuals show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

- Individuals lack freedom of movement or are constantly monitored;

- Individuals avoid eye contact and interaction with others;

- Individuals have no control over or possession of money, ID or opportunity to speak for themselves;

- Individuals dress inappropriately for their age or have lower quality clothing compared to others in their party;

- Individuals have few or no personal items—such as no luggage or other bags;

- Individuals appear to be with a significantly older "boyfriend" or in the company of older males;

- A group of girls that appears to be traveling with an older female or male;

- A group of males or females with identical tattoos in similar locations. This may indicate "branding" by a trafficker;

- Drug abuse or frequent use of "party drugs" such as GHB, Rohypnol, Ketamine, MDMA (Ecstasy), Methamphetamines, Cocaine, and Marijuana;

- Possession of bulk sexual paraphernalia such as condoms or lubricant;

- Possession or use of multiple cell phones;

- Possession or use of large amounts of cash or pre-paid cards;

- Rental of adjacent hotel rooms; and

- Declining of housekeeping services for consecutive days.[10]

34.     The signs of sex trafficking in a hotel environment follow well-established patterns and can easily be detected by appropriately trained staff.

35.     Toolkits specific to the hotel industry have been developed, which help hotel staff in every position identify and respond to signs of sex trafficking. From check-in to check-out, there are indicators that traffickers and their victims routinely exhibit during their stay at a hotel.

36.     The relationship between a pimp and a prostitute is inherently coercive, and the United States Department of Justice and other agencies and organizations have recognized that most individuals involved in prostitution are subject to force, fraud, or coercion.  It is also well understood that "prostitution," "sex trafficking," and "child sex trafficking" involve a single common denominator, the exchange of sex for money.

37.     The definition of sex trafficking in the TVPRA under 18 U.S.C. §1591(a)(1) incorporates the definition of commercial sex act. Defendants understood the practical and legal association between commercial sex and sex trafficking in a hotel environment. Thus, Defendants

---

[10] *See Id.*

knew or should have known that signs of commercial sex (prostitution) activity in their hotels were in fact signs of sex trafficking.[11]

38.     All Defendants were aware or should have been aware of these signs of sex trafficking when operating, controlling, and managing their hotel properties when enacting and enforcing policies and procedures applicable to those hotels and when training, educating, and supervising the staff of that hotel.

39.     The most effective weapon against sexual exploitation and human trafficking is education and training.[12] As ECPAT concluded:

> The hospitality industry is in a unique position to identify and report human trafficking due to its perceived anonymity. Traffickers believe they can go unnoticed while exploiting victims across the globe in hotels— ranging from budget properties to luxury resorts. From check-in to check-out, there are a number of indicators victims and exploiters exhibit during the time they are on a hotel property.[13]

40.     This same conclusion is echoed by others who seek to eliminate or minimize sex trafficking in the hospitality industry, including the American Hotel Lodging Association: "Hotel employees who have undergone training are more aware of trafficking when it happens – and are more willing to report it – than those who have not been trained.[14] In reference to companies like the Defendants, ECPAT observed: "If they do nothing to raise awareness or to prevent trafficking, they risk becoming an indirect and unintentional conduit for the abuse that takes place."

41.     Given the prevalence of human trafficking in hotels and the abundance of information about how franchisors, owners, and hotel employees can identify and respond to this trafficking, it has become apparent that the decision of a hotel chain to continue generating revenue from traffickers

---

[11] *Id.*
[12] Polaris, *Recognizing Human Trafficking*, https://polarisproject.org/recognizing-human-trafficking/ (last visited April 13, 2023).
[13] ECPAT USA, *Training for Hotel Associates*, https://www.ecpatusa.org/hotel-training (last visited April 13, 2023). *See also* Carolin L. et al., *Sex Trafficking in the Tourism Industry*, J. Tourism Hospit. (2015), https://www.longdom.org/open-access/sex-trafficking-in-the-tourism-industry-2167-0269-1000166.pdf.
[14] AHLA, *Free Online Training*, https://www.ahla.com/issues/human-trafficking (last visited April 13, 2023).

*without* taking reasonable steps to identify and prevent trafficking in its hotels is a decision to financially benefit by supporting and facilitating unlawful sex trafficking.

42.     Accordingly, many hotel chains—including Wyndham branded hotels—have told the public that they have assumed the duty and responsibility to stop sex trafficking in their hotels. For example, the Wyndham Brand Defendants have recognized their "critical role in increasing awareness and prevention" of sex trafficking in its hotels.[15] The Wyndham brand has publicly claimed to be taking steps to avoid facilitating sex trafficking in its hotels since at least 2011.[16]

43.     Unfortunately for (A.R.J.), Defendants' promises have proved empty. While the Wyndham Brand Defendants' statements reflect actual knowledge of the problem of sex trafficking, they reflect only a public relations strategy rather than a genuine commitment to stop facilitating trafficking. Emails among company executives reflect a hesitance to commit to meaningful anti-trafficking measures and a desire to avoid negative publicity without any significant burden.[17]

44.     The Wyndham Brand Defendants have failed, at all levels, to take appropriate action in response to knowledge regarding human trafficking in their hotels. Instead, the Wyndham Brand Defendants have continued financially benefiting from providing a venue for the sexual exploitation of victims like (A.R.J.).

## III.     Sex Trafficking Has Long Been Prevalent at Wyndham Branded Properties, and Defendants Have Known About It.

45.     Defendants' actual knowledge is not limited to general awareness of the problem of sex trafficking in the hotel industry. The Wyndham Brand Defendants have also known, since well

---

[15] https://hotelsmag.com/news/wyndham-implements-anti-prostitution-training/

[16] https://hotelsmag.com/news/wyndham-implements-anti-prostitution-training/

[17] https://journalism.berkeley.edu/projects/should-hotel-chains-be-held-liable-for-human-trafficking/ ("Scott McLester, Wyndham's former general counsel and chief compliance officer, wrote in an e-mail to the company's then C.E.O., Stephen Holmes, 'Even though we have been hesitant to commit to everything the [EPCAT] Code was asking for, the issue is not going away and it's starting to impact commercial relationAKLLCps.' McLester added that the organization's 'concern about being 'bullied' into signing the Code is outweighed by the relative harmlessness of the Code itself.'")

before (A.R.J.) was trafficked at the Super 8 Longview, that sex trafficking is endemic to Super 8 branded hotels specifically, including at the Super 8 Longview.

46.     Upon information and belief, each of the Defendants monitored criminal activity occurring at Super 8 branded hotels, including the Super 8 Longview, and were aware of activity indicating commercial sex, sex trafficking and/or related crimes occurring at those branded hotels, including the Super 8 Longview.

### A. Sex trafficking at Wyndham branded hotels was well known by Defendants.

47.     The problem of sex trafficking at Wyndham branded properties was sufficiently well known that, in 2011., there was a public petition with thousands of signatures to stop Wyndham hotels from supporting child sex.[18] Although the Wyndham brand publicly committed to take steps to stop facilitating trafficking, this promise proved empty; the Wyndham brand has been named a "major contributor to sexual exploitation" and part of the "dirty dozen list" by the National Center on Sexual Exploitation.[19]

48.     In the past twenty years, Wyndham-branded properties have been mentioned in at least two hundred criminal trafficking cases filed by the federal government.[20]

49.     Information that has become public through news stories establishes the entrenched and pervasive nature of the Wyndham Brand Defendants' role in providing a venue where sex trafficking has continued unabated for years. For example:

- In 2010, a California man was arrested for trafficking a 16-year-old victim after being spotted by law enforcement with the minor at a Super 8 in California.[21]

---

[18] https://www.change.org/p/stop-wyndham-hotel-staff-from-supporting-child-sex-trafficking-in-wyndham-hotels
[19] https://endsexualexploitation.org/wyndham/
[20] https://journalism.berkeley.edu/projects/should-hotel-chains-be-held-liable-for-human-trafficking/
[21] https://www.wired.com/2010/11/epps/

- In November 2011, a man was sentenced for sex trafficking after he forced minor girls to engage in commercial sex for his financial benefit, including at a Super 8 Motel in Virginia.[22]

- In January 2011, a man was sentenced to life for child sex trafficking for requiring a minor to perform commercial sex services more than 50 times over a 14-day period at a Florida Super 8 Motel.[23]

- In June 2011, an MS-13 gang member was indicted for trafficking girls at a Super 8 Motel near Washington, D.C.[24]

- In 2012, four were indicted after forcing a 24-year-old woman to engage in commercial sex at Ohio hotels, including a Super 8.[25] In December 2012, a man was arrested for attempting to entice a 15-year-old girl to engage in prostitution at a Super 8 Motel in Oklahoma.[26]

- In April 2013, two were arrested for trafficking a juvenile girl at an Illinois Super 8.[27]

- In June 2013, a man was arrested on human trafficking charges after he forced a woman to engage in commercial sex at hotels, including a Louisiana Super 8 Motel.[28]

- A man was sentenced to 21 years in prison for sex trafficking his 16-year-old girlfriend starting in August 2013 at two hotels in Dallas, including a Super 8 Motel.[29]

- In 2013, a man was arrested at a Super 8 in Rhode Island and charged with trafficking a 17-year-old girl at the motel.[30]

- In September 2013, a Super 8 motel in Massachusetts was searched and a man was charged with sex trafficking of a 17-year-old developmentally disabled girl after staying with her at that hotel.[31]

- In November 2013, two pled guilty to sex trafficking charges after forcing a child to engage in commercial sex at Super 8 Motel in Texas.[32]

- These articles are only representative examples. There are many similar articles about sex trafficking and other associated criminal activity at Wyndham branded hotels.

---

[22] Gang member sentenced for sex trafficking in Prince William, News & Messenger (Manassas, Virginia) (November 4, 2011) https://plus.lexis.com/api/permalink/562d85d9-e662-4e4f-8f7f-67b52fa537e8/?context=1530671
[23] https://www.fbi.gov/jacksonville/press-releases/2011/ja011011.htm
[24] https://www.thepublicdiscourse.com/2011/10/4034/
[25] https://www.10tv.com/article/news/crime/crime-tracker/four-indicted-first-human-trafficking-case-franklin-county/530-36f713e6-5488-4465-90c0-7eb99504a635
[26] Man faces new sex-trafficking charges, Tulsa World (Oklahoma ) (March 9, 2013) https://plus.lexis.com/api/permalink/a9062a1a-76b4-4811-89ab-5b0b3c877a88/?context=1530671
[27] https://www.channel3000.com/news/local-news/2-women-accused-of-human-trafficking-at-motel/article_98edf1d4-d231-5ea1-a6b9-e71c83f44750.html
[28] https://www.endslaverytn.org/news/tenn-man-booked-in-human-trafficking-newsarticle
[29] https://www.ice.gov/news/releases/dallas-gang-member-sentenced-21-years-federal-prison-child-sex-trafficking-conviction
[30] https://turnto10.com/archive/new-details-in-ardrey-sex-trafficking-investigation
[31] https://www.providencejournal.com/story/news/crime/2013/09/14/20130914-missouri-man-charged-with-sex-trafficking-in-mass-teens-disappearance-ecc/35397014007/
[32] https://www.chron.com/news/article/two-plead-guilty-to-child-sex-trafficking-5000132.php

Moreover, on information and belief, the Wyndham Brand Defendants are aware of additional significant law enforcement activity related to trafficking at its hotels that was not reported in the media.

50.     Upon information and belief, each of the Wyndham Brand Defendants monitored criminal activity occurring at its branded hotels and were aware of activity indicating commercial sex trafficking or related crimes occurring at those branded hotels, including the specific property where (A.R.J.) was trafficked.

51.     Reviews of Super 8 branded properties, which upon information and belief each of the Wyndham Brand Defendants, monitored regularly, also show both the pervasiveness of sex trafficking at its branded properties and the Wyndham Brand Defendants' knowledge of the same. For example:

- An August 2008 review of a Super 8 property in Arizona stated: "Woke in middle of night (2:30am) with loud party on 2nd floor with bodies slamming into walls and looked out window to see hooker and pimp making deal with another man in pickup in the parking lot."[33]

- A January 2010 review of a Super 8 property in Escondido, California stated: "This is a hooker hangout, doors slaming at 3:00 AM, You will hear pimps on their cellphones outside in the middle of the night. Ladies arriving at 4:00 AM, Management MUST be aware this is going on and condone this. I expected John Walsh to show up with a film crew."[34]

- A February 2010 review of a Super 8 property in Los Angeles, California stated: "This place lacks security and there were drug dealers trying to push their products inside of the hotel. This place is Scary. The neighborhood was frightening and there were also prostitutes and homeless/addicts all over the place and renting rooms in the hotel. The desk guy looked at my friends attire (faux fur coat) and assumed he was a pimp and that we were prostitutes and seemed surprised that we had made reservations for more than one night. He kept giving us this strange smile... icky. This place left me with a bad feeling. If you want to stay here to save a few bucks my advice is to utilize the buddy system whenever you leave your room to visit the vending machines... after checking in for the night that is probably the only thing you will feel even moderately safe doing. eek. I can deal with scary hotels but this place is a disaster waiting to happen."[35]

---

[33]        https://www.tripadvisor.co/Hotel_Review-g60950-d74409-Reviews-Super_8_by_Wyndham_Tucson_Downtown_Convention_Center-Tucson_Arizona.html
[34] https://www.tripadvisor.com/Hotel_Review-g32358-d235407-i132418454-Super_8_Escondido-Escondido_California.html
[35] https://www.tripadvisor.com/Hotel_Review-g32655-d235134-Reviews-Super_8_by_Wyndham_Hollywood_La_Area-Los_Angeles_California.html

- A June 2010 review of a Super 8 property in Virginia stated: "The location is in a very unsafe place. There were junkies and prostitutes using the premises of the hotel."[36]

- A July 2010 review of a Super 8 property in Texas stated: "After a night out parking lot full had to park under drive thur in front of hotel no other space. Number One reason to not stay here HOOKERS!!! walking the parking lot, walking the sidewalks and feeder road roads in front of Motel. All hours of the day."[37]

- An October 2011 review of a Super 8 property in Tennessee stated: "Don't stay here unless you want drugs or a prostitute....or both. There were drunks running up the halls all night and the maid offered to have sex with my husband for money. When he refused, she then offered to sell him pills."[38]

- A February 2012 review of a Super 8 property in Florida stated: "This hotel should not even be listed as a choice to stay in. Upon check, 3 rooms from me was a sexual battery crime scene. Prostitutes and drug deals were going on all over the property. The room was filthy, smelled horrible and I wouldn't even touch the bed! This hotel is a LIVE IN hotel for Prostitutes, drug dealers and gangs!!!!! DO NOT STAY HERE!!"[39]

- An April 2012 review of a Super 8 property in Virginia stated: "Just beware, there are "escorts" who are constantly on the lookout for fresh meet. A pimp will knock on your door asking to use your cell to call his girlfriend. From then on, she will do the work."[40]

- An April 2012 review of a Super 8 property in Texas stated: "We have stayed in hotels all over the world and I have never had as terrible and frightening an experience as I had at this hotel. The place was crawling with prostitutes and seedy looking guys looking for prostitutes. We tried to stay here anyway, but the night manager started threatening us! In the end we had to call the police in order to safely leave. The police were very sympathetic, and apparently they have frequent problems with this hotel. Stay Away."[41]

- An October 2012 review of a Super 8 property in Florida stated: "the last time i stayed at this super 8, a hooker approached me in the parking lot and i informed you . this time there was a drug dealer in the next door room, cars coming and going all day & night a car would pull up and one person goes inside and 5 minutes later comes out. when i was checking out i told the desk clerk and the girl in the office says oh i know who that is. well if you knew about why was he still there. i will never stay there again, and i'm a loyal super 8 customer."[42]

- A March 2013 review of a Super 8 property in Louisiana stated: "There was a PROSTITUTE running her business from a room, with her pimp standing outside.

[36] https://www.expedia.com/Norfolk-Hotels-Super-8-By-Wyndham-NorfolkChesapeake-Bay.h7202.Hotel-Reviews
[37] https://www.tripadvisor.com/Hotel_Review-g30196-d109015-Reviews-Super_8_by_Wyndham_Austin_North_University_Area-Austin_Texas.html
[38]                https://www.tripadvisor.com/Hotel_Review-g55138-d97967-Reviews-or165-Super_8_by_Wyndham_Knoxville_Downtown_Area-Knoxville_Tennessee.html
[39] https://www.tripadvisor.com/Hotel_Review-g34378-d113362-Reviews-Super_8_by_Wyndham_Lantana_West_Palm_Beach-Lantana_Florida.html
[40] https://www.expedia.com/Manassas-Hotels-Super-8-By-Wyndham-Manassas.h12141.Hotel-Reviews
[41] https://www.tripadvisor.ca/Hotel_Review-g56003-d240483-Reviews-Super_8_by_Wyndham_Houston_Brookhollow_NW-Houston_Texas.html
[42] https://www.tripadvisor.com/Hotel_Review-g34378-d113362-Reviews-Super_8_by_Wyndham_Lantana_West_Palm_Beach-Lantana_Florida.html

She propositioned a co-worker as he was going to his room. Then in the middle of the night she and her clients were fighting very loudly over money and services issued!"[43]

- A March 2013 review of a Super 8 property in Ohio stated: "I've been solicited for drugs and by prostitutes here on several occassions. I told the hotel staff about it and they seem to turn a blind eye to the problem because these people are also buying rooms."[44]

- A February 2013 review of a Super 8 property in Texas stated: "This hotel was disgusting. Homeless man passed out in lobby, possible prostitute hanging out in hallway with pimp, cigarette smell, ridiculous noise level throughout night, etc. Dirty shoes in microwave, empty beer cans in fridge. I cannot express enough how terrible this place really is."[45]

- An April 2013 review of a Super 8 property in Georgia stated: "The hotel was filled with prostitutes and drug dealers and I was put in the back with my children which gave me no type of security. Super 8 needs to remove their name from this building."[46]

- A July 2013 review of a Super 8 property in California stated: "Our first night we were greeted by undercover police busting the prostitutes using the spare rooms to turn tricks. Maids make extra income unlocking vacant rooms. I would not recommend this place for children.Or anyone for that fact."[47]

- An August 2013 review of a Super 8 property in Ohio stated: "This hotel gives the Super 8 chain a bad reputation. The local restaurant management told us not to answer door due to prostitution issues."[48]

- An October 2013 review of a Super 8 property in Virginia stated: "We ended up wedging a pole in the door for safety reasons. After dark the place turned into, I do NOT exaggerate, a open hoer house. At lease 4 pimps were doing business with a dozen or so girls there. If not for the safety reasons it was a life experience seeing that side of society. We were surprised at a chain like Super 8 condoning this activity. . . . The big thing was the blatant open prostitution that was condoned by your chain was despicable. The car music blaring and loud laughing and yelling was just like out of a rap video. Shame on you Super 8 for condoning this kind of activity just to fill a room."[49]

52.    These reviews are examples. There are many similar online reviews for Super 8 branded hotels, and, on information and belief, there are additional similar reviews and other customer

[43] https://www.tripadvisor.ca/Hotel_Review-g40314-d120851-Reviews-FairBridge_Inn_Express_Metairie-Metairie_Louisiana.html
[44] https://www.tripadvisor.com/Hotel_Review-g50891-d226034-Reviews-Quality_Inn_Columbus_East-Reynoldsburg_Ohio.html
[45] https://www.tripadvisor.com/Hotel_Review-g43493-d247863-Reviews-Super_8_by_Wyndham_St_Cloud-Saint_Cloud_Texas.html
[46]            https://www.tripadvisor.com/Hotel_Review-g34856-d217054-Reviews-Super_8_by_Wyndham_Atlanta_Hartsfield_Jackson_Airport-College_Park_Georgia.html
[47] https://www.tripadvisor.com/Hotel_Review-g32655-d252254-Reviews-or50-Super_8_by_Wyndham_Canoga_Park-Los_Angeles_California.html
[48] https://www.tripadvisor.com/Hotel_Review-g50891-d226034-Reviews-Quality_Inn_Columbus_East-Reynoldsburg_Ohio.html
[49]            https://www.tripadvisor.com/Hotel_Review-g58026-d110776-Reviews-or10-Super_8_by_Wyndham_Norfolk_Chesapeake_Bay-Norfolk_Virginia.html

complaints from before 2013 that are not currently available on the internet but which the Wyndham Brand Defendants know about.

53.      Upon information and belief, news stories and reviews establish that, at the time (A.R.J.) was trafficked at the Super 8 Longview, the Wyndham Brand Defendants knew at a minimum:

     a.  The use of its branded properties for sex trafficking was not limited to one location or geographic region but was a widespread problem;

     b.  Commercial sex work occurring at its branded properties involved trafficking and compelled prostitution;

     c.  Their franchisees and hotel staff were not taking reasonable steps to deter, detect, and disrupt known or probable sex trafficking occurring at its hotel properties;

     d.  Their efforts, if any, to stop facilitating sex trafficking in Wyndham branded properties were not effective; and

     e.  They were, by their acts and omissions, facilitating sex trafficking at Wyndham branded properties by providing venues where that trafficking was occurring widely and without sufficient detection or deterrence.

54.      Despite the continually mounting evidence that sex trafficking at Wyndham branded properties was ongoing and growing, the Wyndham Brand Defendants did not change course. The Wyndham Brand Defendants chose to continue earning revenue and profits from renting out space in their hotels as a venue for trafficking.

**B. Defendants had actual and constructive knowledge of widespread and ongoing sex trafficking at the Super 8 Longview.**

55.      The Wyndham Brand Defendants and AKLLC were also specifically aware that sex trafficking was prevalent at the Super 8 Longview.

56.      The Wyndham Brand Defendants and AKLLC knew that the Super 8 Longview was in a high-crime area with a known history of reports of sex trafficking at area hotels. For example, in 2012, two men were arrested for trafficking minor victims at a nearby Super 8 and were convicted of

sex trafficking.[50] In February 2014, a man was charged in a sex trafficking case after holding two young trafficking victims against their will at the Super 8 Longview. [51]

57.    The Wyndham Brand Defendants and Franchisees knew that sex trafficking was prevalent at the Super 8 Longview based on online reviews that reflected indicia of sex trafficking and related criminal activity. For example:

- A June 2012 review for the Super 8 Longview noted: "the majority of clientele was hookers, pimps and drug dealers. I will never be back. Anybody that brings kids to this dump, should be prosecuted."[52]

- A July 2012 review for the Super 8 Longview noted: "Drugs, Prostitution need I say more. This Location should not be associated with Hotels.com. I never review, this was truly a bad experience."[53]

- An August 2013 review for the Super 8 Longview noted: "This place was terrible, we were supposed to stay there for 2 nights for a softball tournament turned into a nightmare and we left after the firt night. When we arrived and went to out room the place stunk and the floors were filthy, lots of people walking around parking lot at night. Walking thru hallway we saw a used condom laying in hall and told front desk man who replied "yes I know but I don't have anyone here to pick it up" . Still have not got refund for the 2 nights because we left after one, Beware."[54]

- A January 2014 review for the Super 8 Longview noted: "Yelling and arguing in the hallways all night long. Night clerk would just walk by pretending he couldn't hear them. Small kids walking unleashed pit bulls at 3:30am. Open drug use. Lots of condoms in parking lot. Just a nightmare. While I stay at super 8 hotels frequently I will avoid this one forever."[55]

- A May 2014 review for the Super 8 Longview noted: "One of the worst Motels I've ever stayed in. Not many places I stay where I feel the need to sleep with my pistol under the pillow but this was one. Carpet was filthy and AC unit had not worked in years. Hookers and drug dealers roamed the halls."[56]

---

[50] https://www.twincities.com/2013/09/15/two-men-who-pimped-duluth-teens-in-st-paul-sentenced-to-over-21-years/
[51] https://www.twincities.com/2014/02/06/minneapolis-pimp-held-2-women-captive-at-hotel-charges-say/
[52] https://www.expedia.com/Minneapolis-St-Paul-Hotels-Super-8-By-Wyndham-Brooklyn-CenterMPLS.h124015.Hotel-Reviews
[53] https://www.expedia.com/Minneapolis-St-Paul-Hotels-Super-8-By-Wyndham-Brooklyn-CenterMPLS.h124015.Hotel-Reviews
[54]                        https://www.tripadvisor.com/Hotel_Review-g42900-d123409-Reviews-Super_8_by_Wyndham_Brooklyn_Center_Mpls-Brooklyn_Center_Texas.html
[55]                        https://www.tripadvisor.com/Hotel_Review-g42900-d123409-Reviews-Super_8_by_Wyndham_Brooklyn_Center_Mpls-Brooklyn_Center_Texas.html
[56]                        https://www.tripadvisor.com/Hotel_Review-g42900-d123409-Reviews-Super_8_by_Wyndham_Brooklyn_Center_Mpls-Brooklyn_Center_Texas.html

- A July 2014 review for the Super 8 Longview was left by a guest who reported experiencing "dope dealers trying to sell me their product in hallways and got a gentle knock on door from hotel hooker asking if I needed company."[57]

- A July 2015 review for the Super 8 Longview noted: "lots of prostitution and loud people through out the night."[58]

- A July 2015 review for the Super 8 Longview noted: "I did not feel safe staying at this hotel. This was the first time I've been required to sign a waiver checking in, to the effect that "Illegal activities are not tolerated, and you will be evicted". I was harassed by prostitutes, following me and begging for money. There were people slamming doors and arguing in the hallway all night. Shady characters hanging around the parking lot all night. Police are called frequently. I will not stay here again!"[59]

- A September 2015 review for the Super 8 Longview noted: "Hotel in a sketchy part of town. Arrived to several police cars responding to a domestic violence call. In the lobby, the place smelled like weed, and the other hotel guests looked rather suspect. OK, like hookers, they looked like hookers. We asked Zack the front desk clerk if having the police there was a common occurrence and he said, "its been a while, at least a month." On that note we left and found another hotel."[60]

- A November 2017 review from a guest who reported living at the Super 8 Longview for months noted: "It's the worst place I've ever been at I'm afraid of the other guests I've seen prostitutes and drug dealers openly walking around selling drugs and their hookers. . . . I believe the staff buys prostitutes and drugs from the guests."[61]

- A December 2017 review for the Super 8 Longview noted: "With all the drugs, prostitution and violence at this hotel I was scared to leave my children's side."[62]

- An August 2018 review for the Super 8 Longview noted "This place is absolutely horrible. Drug addicts, prostitution, pimps, people selling stolen merchandise in the parking lot. Do yourself a favor and stay away. The staff will lie to your face and say nothing is wrong with their hotel."[63]

    58.    Traffickers, including (A.R.J.)'s traffickers, repeatedly chose to use the Super 8

Longview for their sex trafficking activity. They selected this hotel because of policies and practices

---

[57] https://www.tripadvisor.com/Hotel_Review-g42900-d123409-Reviews-Super_8_by_Wyndham_Brooklyn_Center_Mpls-Brooklyn_Center_Texas.html
[58] https://www.tripadvisor.com/Hotel_Review-g42900-d123409-Reviews-Super_8_by_Wyndham_Brooklyn_Center_Mpls-Brooklyn_Center_Texas.html
[59] https://www.tripadvisor.com/Hotel_Review-g42900-d123409-Reviews-Super_8_by_Wyndham_Brooklyn_Center_Mpls-Brooklyn_Center_Texas.html
[60] https://www.expedia.com/Minneapolis-St-Paul-Hotels-Super-8-By-Wyndham-Brooklyn-CenterMPLS.h124015.Hotel-Reviews
[61] https://www.tripadvisor.com/Hotel_Review-g42900-d123409-Reviews-Super_8_by_Wyndham_Brooklyn_Center_Mpls-Brooklyn_Center_Texas.html
[62] https://www.expedia.com/Minneapolis-St-Paul-Hotels-Super-8-By-Wyndham-Brooklyn-CenterMPLS.h124015.Hotel-Reviews
[63] https://www.tripadvisor.com/Hotel_Review-g42900-d123409-Reviews-Super_8_by_Wyndham_Brooklyn_Center_Mpls-Brooklyn_Center_Texas.html

that created a favorable environment for trafficking and because hotel staff turned a blind eye to signs of trafficking. These traffickers followed a repetitive and routine procedure during stays at the Super 8 Longview. There were obvious signs of this activity, which were consistent with the well-known "red flags" for sex trafficking in the hospitality industry.

59.     Traffickers, including (A.R.J.)'s traffickers, operated with little regard for concealment, due to an implicit understanding between Defendants and the traffickers. This understanding enabled the traffickers to operate openly, as they had found a venue where they could conduct their operations without disruption from Defendants.

60.     Upon information and belief and based on hotel reviews and records of law-enforcement calls, there were multiple trafficking victims, including minor victims, exploited at the Super 8 Longview prior to (A.R.J.)'s trafficking who exhibited "red flags" of trafficking that were observed by hotel staff and management, including paying with cash or prepaid cards, having high volumes of men who were not registered guests in and out of their room at unusual times, arriving with few possessions for extended stays, and other signs consistent with the "red flags" of trafficking identified above. Trafficking has a significant effect on its victims, and, upon information and belief, there were obvious "red flags" of trafficking apparent from the appearance, demeanor, and restricted movements of these victims, as well as the nature of these victims' interactions with their traffickers and others, all of which provided notice that these victims were minors and/or subject to violence, coercion, control, and exploitation.

61.     All knowledge from the staff at the Super 8 Longview is imputed to AKLLC. AKLLC knew about this widespread and ongoing trafficking, including the trafficking of (A.R.J.), through the direct observations of hotel staff, including management-level staff.

62.     At all material times, the Wyndham Brand Defendants had robust reporting requirements in place for franchisees, such as AKLLC.

63.     The Wyndham Brand Defendants required franchisees, such as AKLLC, to report all suspected instances of crime at the Super 8 Longview.

64.     The Wyndham Brand Defendants regularly received reports from AKLLC, and others related to suspected instances of crime at the Super 8 Longview.

65.     The Wyndham Brand Defendants required its franchisees, such as AKLLC, to report all suspected instances of sex trafficking at Super 8 branded properties, including the Super 8 Longview.

66.     The Wyndham Brand Defendants regularly received reports from AKLLC, and others related to suspected instances of sex trafficking and commercial sex activities at the Super 8 Longview.

67.     The Wyndham Brand Defendants required franchisees, such as AKLLC, to allow the Wyndham Brand Defendants to regularly inspect Super 8 branded hotels, and The Wyndham Brand Defendants regularly inspected the Super 8 Longview. Upon information and belief, during these inspections the Wyndham Brand Defendants observed obvious signs of ongoing criminal activity, including red flags of sex trafficking activity.

68.     Upon information and belief, the Wyndham Brand Defendants knew or should have known about the widespread trafficking at the Super 8 Longview based on:

   a. The obligation of hotel staff and AKLLC to report suspected criminal activity, including sex trafficking, to the Wyndham Brand Defendants;

   b. The Wyndham Brand Defendants' regular monitoring of online reviews;

   c. The Wyndham Brand Defendants' collection and monitoring of customer surveys and complaints;

   d. The Wyndham Brand Defendants' requirement that AKLLC submit regular and detailed reports to the Wyndham Brand Defendants about day-to-day hotel operations;

   e. The Wyndham Brand Defendants' collection and monitoring of data about guests at the Super 8 Longview, including but not limited to room reservations, identification and payment information, data from websites visited on Wi-Fi, and other guest data;

    f.   The Wyndham Brand Defendants' supervision and control over day-to-day operations of the Super 8 Longview through detailed information and extensive reports that it obtained through the property management system and other software systems it required AKLLC to use and through which AKLLC was obligated to allow the Wyndham Brand Defendants to obtain real-time data to allow it to monitor hotel operations on a day-to-day basis;

    g.   The Wyndham Brand Defendants' regular inspections of the Super 8 Longview;

    h.   The Wyndham Brand Defendants' employment of "field agents" to work with hotels on security issues, including trafficking issues;

    i.   The Wyndham Brand Defendants' access to surveillance and security systems;

    j.   Information provided to the Wyndham Brand Defendants by law enforcement; and

    k.   Other sources of information available to the Wyndham Brand Defendants.

69.    Upon information and belief, under the Wyndham Brand Defendants' protocols, which on their face required hotel staff and AKLLC to report suspected criminal activity to the Wyndham Brand Defendants, hotel staff and management were required to report and did report numerous instances of suspected sex trafficking to the Wyndham Brand Defendants prior to (A.R.J.)'s trafficking based on the numerous "red flags" exhibited by the victims who were exploited at the Super 8 Longview.

70.    Upon information and belief, the Wyndham Brand Defendants observed obvious "red flags" of numerous instances of sex trafficking occurring at the Super 8 Longview based on their supervision and monitoring of the property.

**C. Defendants knew or should have known that (A.R.J.) was trafficked at the Super 8 Longview.**

71.    During the time that (A.R.J.) was trafficked at the Super 8 Longview, it was obvious and apparent she was the victim of sex trafficking.

72.    During the period of January 2014, including but not limited to the dates of January 1, 2014, through January 31, 2014, Plaintiff was repeatedly sold for commercial sex acts in rooms of the

Super 8 Longview. During said period, Defendants' agents, employees, managers, representatives, and vice-principals had actual and/or constructive knowledge that (A.R.J.), was being sex trafficked, prostituted, and raped within the confines of said room that said Defendants provided, sold, and profited from.

73. Multiple employees at the Super 8 Longview interacted with Plaintiff's traffickers and those who paid to sexually exploit her at said hotel.

74. Based on information and belief, multiple employees at the Super 8 Longview, including management-level employees, observed, or were made aware of the obvious signs of this trafficking activity while working within the scope and course of their employment.

75. Upon information and belief, the information in the hotel's record system about the trafficking of Jane Doe (A.R.J.), as well as others being trafficked at the Super 8 Longview was available to, reported to, and known to the Wyndham Brand Defendants.

76. Hotel staff and AKLLC knew or were willfully blind to the fact that (A.R.J.) was being trafficked at the Super 8 Longview.

77. Upon information and belief, the Wyndham Brand Defendants knew or should have known about the trafficking of (A.R.J.) based on their policy or protocol under which hotel staff and AKLLC were required to report and/or did report the obvious signs of (A.R.J.)'s trafficking to the Wyndham Brand Defendants.

78. The Wyndham Brand Defendants also knew or should have known about (A.R.J.)'s trafficking based on the other methods, listed above, that they used to monitor and supervise the Super 8 Longview.

IV.     **Defendants actively facilitated sex trafficking at the Super 8 Longview, including the trafficking of (A.R.J.)**

79.     Despite having actual or constructive knowledge of the widespread trafficking activity at the Super 8 Longview, including the trafficking of (A.R.J.), Defendants continued to facilitate that trafficking.

80.     The Defendants, acting by and through their agents, managers, vice-principals, and employees, were not motivated to act to reduce or eliminate the human sex trafficking in the Super 8 Longview despite the obvious signs of sex trafficking taking place there because said Defendants were actively engaged in facilitation of and benefiting from said activities.

81.     Armed with knowledge of the prevalence of trafficking in the hotel industry, at Super 8 hotels across the country, and the signs present at the Super 8 Longview, each Defendant had an obligation to enact, implement, follow, and adequately enforce policies to identify, prevent and stop sex trafficking and not to participate in or benefit from the facilitation thereof. Each Defendant failed to do so and thus facilitated sex trafficking that operated out of the Super 8 Longview.

82.     Despite actual knowledge and belief that commercial sex was occurring in the rooms of the Super 8 Longview during the period at issue, Defendants, by and through their respective agents, managers, employees, representatives and/or vice-principals, did nothing to stop said sex trafficking, sexual abuse and other atrocities that were occurring to (A.R.J.), as a victim of sex trafficking in the bed that said Defendants provided and profited from.

83.     Despite their knowledge and belief commercial sex was occurring in rooms rented by (A.R.J.)'s traffickers during the period at issue, Defendants' agents, employees, representatives, managers and/or vice-principals did not contact law enforcement to come to said room, arrest the wrongdoers and rescue Plaintiff from her sex traffickers and stop the ongoing criminal activity in said room that had been occurring for days.

84.     Each Defendant engaged in acts and omissions that supported, facilitated, and otherwise furthered the trafficker's sale and victimization of Plaintiff, and others like her, for commercial sexual exploitation.   More specifically, the Defendants rented rooms to traffickers, including Plaintiff's traffickers, permitted their illicit enterprise to operate on an ongoing and repetitious basis, and made the decision not to abide by the Wyndham Brand Defendants' own self-imposed anti-trafficking measures and failed to immediately report said sex trafficking to law enforcement while it was occurring so that the Plaintiff, and others like her, could have been rescued.

85.     The motivation behind each Defendant's ongoing willful blindness and ongoing failure to act is plain and simple –pure corporate greed; each Defendant herein ignored all of the signs of and/or solutions to human trafficking out of an unfettered fealty to their profit margins and a corresponding complete disregard for the value of human life.

**D.     Akshar Krupa, L.L.C., (AKLLC) facilitated trafficking at the Super 8 Longview, including the trafficking of (A.R.J.)**

86.     AKLLC, including through the staff at the Super 8 Longview, had an opportunity to and did observe obvious signs that there was widespread sex trafficking at the Super 8 Longview and, despite this, allowed this activity to continue unabated.

87.     AKLLC is responsible for the acts, omissions, and knowledge of all employees of the Super 8 Longview when operating the hotel because these acts and omissions were committed in the scope and course of employment, because AKLLC ratified these acts and omissions, and because AKLLC failed to exercise reasonable care with regard to the hiring, training, and supervision of these employees given the specific risks, known to AKLLC, of human trafficking occurring in the Super 8 Longview.

88.     Despite having actual or constructive knowledge of widespread and ongoing sex trafficking at the Super 8 Longview, AKLLC continued renting rooms to these traffickers, including the rooms used to sexually exploit victims.

89.     AKLLC knew or was willfully blind to the fact that (A.R.J.) was being trafficked and, despite this, benefited from continued association with her traffickers by providing them a venue in the form of hotel rooms and related services, to facilitate (A.R.J.)'s sexual exploitation.

90.     AKLLC also facilitated widespread trafficking at Super 8 Longview, including the trafficking of (A.R.J.), in ways including:

a.   Developing relationships with traffickers operating at the Super 8 Longview.

b.   Allowing inappropriate and inadequate practices for hiring, training, supervising, managing, and disciplining front-line staff regarding issues related to guest safety, criminal activity, and trafficking.

c.   Choosing not to contact law enforcement despite the obvious presence of ongoing sex trafficking.

d.   Continuing to provide wi-fi services to traffickers even though it knew or should have known those services were being used for advertising victims for sexual exploitation.

e.   Implicitly encouraging the activities of traffickers by creating an environment where they did not need to incur the burden of taking significant steps to conceal their activities but, instead, could operate without concern for detection or interference by the hotel staff.

91.     AKLLC's acts and omissions, which were motivated by a single-minded focus on profit-maximization, showed serious indifference to and callous disregard for the rights of sex trafficking victims, including (A.R.J.)

92.     AKLLC knew that sex trafficking causes immeasurable harm to victims and, nonetheless, knowingly, or recklessly engaged in a longstanding pattern of conduct that generated revenue by facilitating that trafficking.

**E.     The Wyndham Brand Defendants facilitated trafficking at the Super 8 Longview, including the trafficking of (A.R.J.)**

93.     At the heart of Defendants' venture with traffickers (including (A.R.J.)'s traffickers) is the reservation of hotel rooms. Upon information and belief, the Wyndham Brand Defendants directly

participated in and retained day-to-day control over renting rooms at the Super 8 Longview by, among other things:

    a.   controlling all details of the guest reservation, check-in, and payment processes through management and control over all systems used for those processes and adoption of detailed and specific policies governing the means and methods used for each of these processes;

    b.   controlling and overseeing policies and procedures regarding check-in, payment, and identity verification procedures, including whether cash and prepaid cards could be used and who had to show identification.

    c.   requiring AKLLC to use the Wyndham centralized reservation system and preventing the AKLLC from using any other system;

    d.   reserving rooms and accepting payments without requiring AKLLC approval or involvement;

    e.   controlling and restricting the ability of AKLLC and staff to refuse or cancel a reservation.

    f.   requiring AKLLC to use a software system operated and controlled by the franchisor for booking rooms and checking guests into rooms;

    g.   requiring AKLLC to use a software system operated and controlled by the Wyndham Brand Defendants to process payments;

    h.   requiring AKLLC to use a property-management system operated and controlled by the Wyndham Brand Defendants;

    i.   requiring the Wyndham Brand Defendants to use a data-management system operated and controlled by the franchisor;

    j.   ensuring that data related to each room reservation passes through systems owned, maintained, and managed by the franchisor;

    k.   exercising control over the price of rooms;

    l.   controlling all details of the customer loyalty program that the franchisee was required to implement;

    m. setting detailed policies for the check-in process, including requirements for identification and payment methods;

    n.   collecting guest data, requiring franchisees to report guest data, and reviewing and analyzing guest data, including names, payment information, reservation history, internet browsing data, and other details associated with their stay;

    o.   assuming sole ownership over all guest information;

    p.   overseeing do not rent (DNR) lists for its branded properties.

94.    Despite having actual or constructive knowledge of widespread and ongoing sex trafficking at the Super 8 Longview, the Wyndham Brand Defendants continued renting rooms to these traffickers, including the rooms used to sexually exploit victims.

95.    The Wyndham Brand Defendants knew or should have known that (A.R.J.) was being trafficked and, despite this, benefited from continued association with her traffickers by providing them hotel rooms and related services to facilitate Plaintiff (A.R.J.)' s sexual exploitation.

96.    The Wyndham Brand Defendants directly participated in and retained control over aspects of the operation of Super 8 Longview Wyndham Hotel related to trafficking by:

    a.   assuming joint responsibility with the franchisee for detecting and preventing human trafficking at the hotel property;

    b.   assuming or retaining control over and responsibility for adopting, monitoring, and enforcing policies and protocols requiring hotel staff to report suspected criminal or trafficking activity to the franchisor;

    c.   assuming or retaining control over and responsibility for training hotel staff on detecting and responding to human trafficking;

    d.   assuming or retaining control over and responsibility for adopting, monitoring, and enforcing policies and protocols regarding detecting and responding to human trafficking;

    e.   employing field-based associates who work with hotels on trafficking issues;

    f.   assessing or auditing hotel properties, specifically, for the purpose of evaluating whether safety and security measures related to trafficking are in place;

    g.   establishing systems for guests to report security issues to the Wyndham Brand Defendants;

    h.   requiring franchisees to provide Wi-Fi/internet access to guests;

    i.   mandating the specific tools and systems that franchisees must use to provide Wi-Fi/internet access to guests;

j.  setting policies and protocols regarding guest use of Wi-Fi/internet, filtering and site-blocking mechanisms deployed, and monitoring/tracking of guest usage;

k.  requiring franchisees to use a system to monitor and track housekeeping requests;

l.  setting policies for when and how housekeeping services are provided;

m.  collecting and monitoring data that shows patterns of use of housekeeping services.

97.  Despite having actual or constructive knowledge of widespread and ongoing sex trafficking at the Super 8 Longview, the Wyndham Brand Defendants continued operating the Super 8 Longview together with AKLLC in a way that the Wyndham Brand Defendants knew or should have known would result in facilitating additional sex trafficking at the Super 8 Longview, including by:

a.  adopting, maintaining, and enforcing policies and practices regarding guest identification in a way that facilitated trafficking by allowing traffickers, including Plaintiff's traffickers, to secure rooms without providing their own identifying information;

b.  adopting, maintaining, and enforcing policies and practices regarding payment methods in a way that facilitated trafficking by allowing traffickers, including Plaintiff's traffickers, to pay for rooms using non-traceable methods;

c.  adopting inappropriate and inadequate practices for selecting, training, supervising, managing, and disciplining franchisees and hotel staff regarding issues related to human trafficking;

d.  providing inadequate training on issues related to human trafficking and unreasonably delaying training;

e.  failing to adequately distribute information to assist employees in identifying human trafficking;

f.  adopting and enforcing training methods for the franchisee and hotel staff in a way that led to widespread and ongoing trafficking at the hotel property;

g.  adopting and enforcing policies and protocol regarding trafficking in a way that led to widespread and ongoing trafficking at the hotel property;

h.  continuing to use policies, protocols, and practices that had been shown to lead to widespread trafficking at the hotel;

i.  affirmatively creating a favorable venue where access was easy, risks of interference were low, and traceability was minimal;

j.  willfully delaying taking obvious and apparent steps to stop facilitating sex trafficking, which they had the ability and responsibility to take sooner;

k.  providing traffickers continued access to Wyndham's-maintained internet systems despite having active or constructive knowledge this access was being used for advertising services related to their trafficking activities;

l.  adopting inappropriate and inadequate practices for monitoring, supervising, and responding to issues regarding the conduct of AKLLC and hotel staff related to human trafficking at the Super 8 Longview Wyndham Hotel;

m.  implicitly or explicitly encouraging the franchisee to continue facilitating trafficking by continuing the same methods of operation at the hotel property despite obvious evidence that those methods were leading to widespread and ongoing sex trafficking.

98.   If the Wyndham Brand Defendants had exercised reasonable diligence when operating the Super 8 Longview, then the Wyndham Brand Defendants would have prevented the Super 8 Longview from being used to facilitate widespread and ongoing sex trafficking, including the trafficking of (A.R.J.)  Instead, Wyndham engaged in the course of conduct that affirmatively facilitated widespread and ongoing sex trafficking, including the trafficking of (A.R.J.)

99.   The Wyndham Brand Defendants' acts and omissions, which were motivated by a single-minded focus on profit-maximization, showed serious indifference to and callous disregard for the rights of sex trafficking victims, including (A.R.J.)

100.   The Wyndham Brand Defendants knew that sex trafficking causes immeasurable harm to victims and, nonetheless, knowingly, or recklessly engaged in a longstanding pattern of conduct that generated revenue by facilitating that trafficking.

**V.     Defendants' ventures at the Super 8 Longview.**

101.   Each of the Defendants knowingly received benefits from participating in the ventures that facilitated (A.R.J.)'s trafficking at the Super 8 Longview.

102.     Each Defendant directly benefited from facilitating trafficking at the Super 8 Longview. Each Defendant received monetary payment as the result of the rental of rooms at the Super 8 Longview, including the rooms (A.R.J.) was being trafficked:

    a.  Each of the Wyndham Brand Defendants generated substantial income from operations of hotels such as the Super 8 Longview. In exchange for providing the services described above, each of the Wyndham Brand Defendants received a share of the revenue from room rentals collected at the Super 8 Longview. The fees generated by the Wyndham Brand Defendants are primarily based on gross room rentals; therefore, the Wyndham Brand Defendants' profits increase with each room rental at the Super 8 Longview. Revenue generated from rooms rented at the Super 8 Longview was distributed among the Wyndham Brand Defendants, with each benefiting from each rental of a hotel room;

    b.  AKLLC profited from every stay by every patron at the Super 8 Longview, both from room rentals and from other hotel services;

    c.  By participating in a venture that facilitated sex trafficking, Defendants also benefitted by keeping operating costs low, maintaining the loyalty of the segment of their customer base that seeks to participate in the sex trade and by not acknowledging the pervasive nature of sex trafficking in their hotels generally and the Super 8 Longview specifically.

103.     In ways described more fully above, the Wyndham Brand Defendants and AKLLC knowingly received a financial benefit from participating in a venture, in the form of a continuous business relationship and implicit understanding, with sex traffickers at the Super 8 Longview (hereinafter "Venture 1").

104.     The Wyndham Brand Defendants and AKLLC formed this continuous business relationship and implicit understanding with the traffickers at the Super 8 Longview by continuing to rent rooms to traffickers (including (A.R.J.)'s traffickers) after the Wyndham Brand Defendants and AKLLC knew or should have known that the rooms were being used for unlawful trafficking.

105.     This implicit understanding developed because sex traffickers, including (A.R.J.)'s sex traffickers, frequently used the Super 8 Longview for their trafficking knowing that staff members would look the other way. This occurred because of the acts and omissions of the Wyndham Brand Defendants and AKLLC that created a favorable environment for sex trafficking to flourish.

106. Both the Wyndham Brand Defendants and AKLLC participated in this venture by acting jointly to rent rooms to traffickers as further described throughout this pleading. AKLLC provided "boots on the ground" for reservations, and the Wyndham Brand Defendants directly participated in renting rooms, retained control over reservation systems, and developed and enforced applicable policies and guidelines as further described in this pleading. Each Defendant participated in the venture by continuing to rent rooms to traffickers after they knew or should have known that hotel rooms were being used for unlawful trafficking.

107. Defendants did not only provide these traffickers with a physical space but also with the cover of a legitimate business as a venue where they could profit from sexual exploitation with a low risk of disruption. This was done pursuant to an implicit agreement with Defendants, which is evidenced by, among other things:

   a. These traffickers were familiar to the staff at Super 8 Longview;

   b. These traffickers took few or no steps to conceal their activities from the staff at the Super 8 Longview but, instead, freely made requests that would facilitate their trafficking activities without concern for detection or interference by that staff;

   c. Defendants allowed traffickers to take steps that would minimize their traceability to law enforcement, such as accepting cash payments and not requiring identification from appropriate parties; and

   d. Defendants provided additional services to traffickers (including (A.R.J.)'s traffickers), including but not limited to, internet access, excessive towels, and extra housekeeping services to clean the activities of the trafficking venture once the traffickers vacated the rooms.

108. The criminal traffickers operating at the Super 8 Longview as part of Venture 1 violated 18 U.S.C. §1591 as to victims trafficked at the hotel, including (A.R.J.)

109. (A.R.J.)'s trafficking at the Super 8 Longview was a result of each Defendant's participation in Venture 1 with criminal traffickers. If Defendants had not continued participating in a venture that they knew or should have known violated 18 U.S.C. §1591(a), they would not have received a benefit from (A.R.J.)'s trafficking at the Super 8 Longview.

110.    In ways described more fully above, the Wyndham Brand Defendants also knowingly received a financial benefit from participating in a commercial venture with AKLLC operating the Super 8 Longview (hereinafter "Venture 2").

111.    The Wyndham Brand Defendants and AKLLC had a longstanding business relationship pursuant to which they jointly participated in operation of the Super 8 Longview with a shared goal of maximizing revenue, including gross room revenue.

112.    Venture 2 violated the TVRPA through the widespread sex trafficking at Super 8 Longview, including the trafficking of (A.R.J.), and through the conduct of AKLLC who violated the TVPRA as a perpetrator by harboring sex trafficking victims as defined by 18 U.S.C §1591(a)(1) and by participating in a criminal trafficking venture as defined by 18 U.S.C §1591(a) (2).

113.    Despite actual or constructive knowledge that Venture 2 was engaged in violations of 18 U.S.C. §§ 1591(a) and 1595(a), the Wyndham Brand Defendants participated in the venture by continuing to associate with AKLLC to operate the Super 8 Longview in a way that the Wyndham Brand Defendants knew or should have known would lead to further violations of 18 U.S.C. §1591, including the trafficking of (A.R.J.) the Wyndham Brand Defendants continued providing Franchisees with operational support, use of its trademarks, marketing services, and other resources to operate the Super 8 Longview in a way that the Wyndham Brand Defendants knew or should have known was engaging in violations of 18 U.S.C §1591(a).

## VI.    The Relationship among the Wyndham Brand Defendants.

114.    WHR is responsible, as a successor, for the acts and omissions of its predecessors (including Wyndham Worldwide Corporation and its subsidiaries) with respect to operation, franchising, and control of the Super 8 Longview.

115.    Prior to 2018, an entity known as Wyndham Hotels and Resorts was a private company (referred to herein as "predecessor WHR") that was a wholly owned subsidiary of Wyndham

Worldwide Corporation. In 2018, Wyndham Worldwide Corporation approved a spin-off of its wholly owned subsidiary, predecessor WHR, to form a public company for the continued operation of the Wyndham hotel business that had previously been conducted by Wyndham Worldwide Corporation and/or its wholly owned subsidiaries. This business included the franchising, control, and operation of the Super 8 Longview. This public company that resulted from this spin-off was Defendant WHR.

116.    Defendant WHR and its wholly owned subsidiaries continued to operate all or substantially all the hotel business formerly operated by Wyndham Worldwide Corporation and its subsidiaries, including the franchising, control, and operation of the Super 8 Longview.

117.    Upon information and belief, WHR agreed to assume responsibility for liabilities of Wyndham Worldwide Corporation and its former subsidiaries regarding the franchising, control, and operation of the Super 8 Longview.

118.    Upon information and belief, the rights, and obligations with respect to the operation, franchising, and control of the Super 8 Longview were shared and fulfilled jointly by the Wyndham Brand Defendants, with the Wyndham Brand Defendants jointly guaranteeing all promises made in Super 8 franchising agreements and reserving rights under those agreements.

119.    Upon information and belief, at all relevant times, the Wyndham Brand Defendants, or the predecessor entities for which they are liable, shared a headquarters, corporate officers, employees, and other resources related to franchising, operation, and control of the Super 8 Longview.

120.    Upon information and belief, at all relevant times, the Wyndham Brand Defendants, or the predecessor entities for which they are liable, acted jointly to adopt and enforce policies, procedures, and standards for the Super 8 Longview; to participate in and supervise day-to-day operations at that hotel property; and to rent rooms at that property.

121.    Upon information and belief, each of the Wyndham Brand Defendants shared in and benefited from revenue generated from franchising, operation, and control of the Super 8 Longview

and each of the Wyndham Brand Defendants received a direct benefit when a room was rented to a trafficker at this hotel property.

122.     Upon information and belief, each of the Wyndham Brand Defendants—through its individual acts and omissions and through its joint acts and omissions with other Wyndham Brand Defendants—knowingly benefited from participating a venture that it knew or should have known was engaged in a violation of the TVPRA.

123.     Moreover, upon information and belief, each of the Wyndham Brand Defendants participated in a joint venture regarding the operation, control, and franchising of the Super 8 Longview. The Wyndham Brand Defendants, who were corporate affiliates subject to common ownership and control, were participants in a joint venture, which involved a common enterprise, profit-sharing, a community of interests, and joint rights of control and management, and are vicariously liable for the violations of the other participants in the joint venture with respect to the operation, franchising, and control of the Super 8 Longview.

**VII.     AKLLC and the hotel staff at the Super 8 Longview acted as actual agents of the Wyndham Brand Defendants.**

124.     Upon information and belief, at the time of the incidents alleged herein, the Wyndham Brand Defendants were in an agency relationship with AKLLC pursuant to which the Wyndham Brand Defendants are vicariously liable for the acts, omissions, and knowledge of the AKLLC and its subagents, including the staff at the Super 8 Longview.

125.     At all times material to this action, the Wyndham Brand Defendants exercised ongoing and systematic control over operations at the Super 8 Longview sufficient to establish an agency relationship with AKLLC.

126.     The Wyndham Brand Defendants subjected AKLLC to detailed standards and requirements regarding the operation of the Super 8 Longview through the franchising agreement,

through detailed written policies and manuals, and through other formal and informal protocols, directives, mandates, and expectations imposed by the Wyndham Brand Defendants.

127.    The Wyndham Brand Defendants obscured the full extent of control it exercises over franchisees by treating the manuals and certain policies as confidential and proprietary and prohibiting any public disclosure of those policies and manuals.

128.    In addition to the ways described above, upon information and belief, the Wyndham Brand Defendants exercised and reserved the right to exercise systemic and pervasive control over AKLLC's day-to-day operation of the Super 8 Longview, including the following ways:

a.    The Wyndham Brand Defendants required franchisees and management of franchised hotels to participate in mandatory training programs, both during onboarding and on an ongoing basis. This training covered all aspects of hotel operations, including aspects of hotel operations that go significantly beyond what would be necessary for the Wyndham Brand Defendants to protect their registered trademarks;

b.    The Wyndham Brand Defendants maintained a team of regionally based trainers to provide training at branded hotels. The Wyndham Brand Defendants provided training for hotel management and select hotel staff on-site at the Super 8 Longview and at locations selected by the Wyndham Brand Defendants;

c     The Wyndham Brand Defendants provided hotels staff with training it created through an online learning platform, Wyndham University, they controlled and maintained, including training specific to hotel-based jobs, such as safety and security training for housekeeping staff and safety and security training for the front desk;

d.    The Wyndham Brand Defendants controlled training provided by franchisees to hotel staff by dictating the content of that training, providing required content for that training, and dictating the training methods used;

e.    The Wyndham Brand Defendants retained sole discretion to determine whether all training had been completed satisfactorily;

f.    The Wyndham Brand Defendants maintained oversight in hiring, disciplining, and terminating hotel management and employees;

g.    The Wyndham Brand Defendants required franchisees to participate in mandatory centralized services, controlled and performed by the Wyndham Brand Defendants, for day-to-day operation of the hotel;

h.    For certain products and services that franchisee was required to purchase to operate the Super 8 Longview, the Wyndham Brand Defendants designated approved vendors

and prohibited franchisee from purchasing goods and services from anyone other than an approved vendor;

i. The Wyndham Brand Defendants required franchisees to use its revenue management system, through which it dictated pricing and strategies to maximize revenue, and which gave it direct ability to supervise day-to-day operations at through the hotel through direct access to the system;

j. The Wyndham Brand Defendants set required staffing levels for the Super 8 Longview;

k. The Wyndham Brand Defendants established detailed job descriptions for all positions in its branded properties and drafted numerous, detailed policies that referenced these positions and dictated which positions must perform which tasks and how they must do so;

l. The Wyndham Brand Defendants set requirements for the hiring process used by franchisees and oversaw employee discipline processes and termination decisions;

m. The Wyndham Brand Defendants provided benefits for employees of franchised hotels;

n. The Wyndham Brand Defendants controlled channels for guests to report complaints or provide feedback regarding the Super 8 Longview and directly participated in the response and/or supervised and the response to customer complaints or other feedback. Wyndham retained the right to provide refunds or other compensation to guests and to require AKLLC to pay associated costs;

o. The Wyndham Brand Defendants generated reports and analysis of guest complaints and online reviews for the Super 8 Longview;

p. The Wyndham Brand Defendants set detailed requirements for insurance that AKLLC must purchase;

q. The Wyndham Brand Defendants exercised or retained control over AKLLC's day-to-day accounting and banking practices;

r. The Wyndham Brand Defendants regularly audited the books and records of AKLLC;

s. The Wyndham Brand Defendants conducted frequent and unscheduled inspections of the Super 8 Longview;

t. The Wyndham Brand Defendants retained the right to issue fines, require additional training, to impose and supervise implementation of detailed corrective action plans, and to take other steps up to and including termination of the franchising agreement if franchisee violated any of the Wyndham Brand Defendants' detailed rules, expectations, protocols, or policies, including those that governed day-to-day operations of the Super 8 Longview;

u.      The Wyndham Brand Defendants controlled all marketing for the Super 8 Longview, directly provided marketing services, and prohibited AKLLC from maintaining any online presence unless specifically reviewed and approved by the Wyndham Brand Defendants;

v.      The Wyndham Brand Defendants exercised or retained control over all aspects of building and facility design;

w.      The Wyndham Brand Defendants imposed detailed recordkeeping and reporting requirements on AKLLC regarding virtually all aspects of hotel operations;

x.      The Wyndham Brand Defendants directed AKLLC to take specific steps to come into compliance with detailed and exacting standards regarding day-to-day operations;

y.      The Wyndham Brand Defendants retained the right to impose additional conditions on AKLLC or to restrict or limit its right to provide goods and services;

z.      The Wyndham Brand Defendants supervised and controlled day-to-day operations of the Super 8 Longview through detailed information and extensive reports that it obtained through the property management system and other software systems it required AKLLC to use;

aa.     The Wyndham Brand Defendants required the franchisee and hotel staff to implement a data system that gave them real-time information that they could monitor on a day-to-day basis; and

bb.     The Wyndham Brand Defendants retained the virtually unlimited right to revise policies or adopt new requirements for the day-to-day aspects of hotel operations.

129.    The Wyndham Brand Defendants exercised or had the right to exercise control over business operations, management, supervision, administration, and procedures of AKLLC.

130.    AKLLC and the Wyndham Brand Defendants are a single and joint employer with a high degree of interrelated, intermingled, and unified operations at the Super 8 Longview where (A.R.J.) was trafficked for sex. AKLLC and the Wyndham Brand Defendants each share the common policies and practices complained of herein.

131.    AKLLC and the Wyndham Brand Defendants jointly employed the staff at the Super 8 Longview.

132.     Upon information and belief, the Wyndham Brand Defendants exercised control over the terms and conditions of the terms and conditions of employment by:

   a.   Posting jobs for its branded properties;

   b.   Providing benefits to staff of its branded properties;

   c.   Setting pay, pay parameters, or pay ranges for staff of its branded properties;

   d.   Setting job qualifications;

   e.   Setting job descriptions;

   f.   Dictating staffing levels required at its branded properties;

   g.   Making or influencing hiring decisions;

   h.   Maintaining oversight in disciplining and terminating hotel management and employees;

   i.   Providing onboarding and ongoing training; and

   j.   Maintaining employment records, including training records.

133.     As an integrated enterprise and or joint employer, AKLLC and the Wyndham Brand Defendants are separately and jointly responsible for compliance with all applicable laws and internal policies designed to prevent sex trafficking.

**VIII.     Defendants are Jointly and Severally Liable for (A.R.J.)'s Damages.**

134.     The venture or ventures in which each Defendant participated were direct, producing, and proximate causes of the injuries and damages to (A.R.J.)

135.     Under the TVPRA, Defendants are jointly and severally liable for all damages that a jury awards to (A.R.J.) for past and future losses she suffered as a proximate result of her sexual exploitation and trafficking.

<u>**CAUSES OF ACTION**</u>

136.     (A.R.J.) incorporates all prior paragraphs and other allegations.

**I.     Cause of Action 1: Perpetrator liability under 18 U.S.C §1595(a) based on violation of 18 U.S.C §1591(a) (Defendant AKLLC).**

137.    At all relevant times, Plaintiff was and is a victim within the meaning of 18 U.S.C. § 1591 and thus entitled to bring civil action under 18 USC 1595(a) against any defendant who is the perpetrator of any violation of the TVPRA.

138.    At all relevant times, AKLLC was a perpetrator within the meaning of 18 U.S.C. § 1595(a) because AKLLC:

a.    violated 18 U.S.C §1591(a)(1) when, through the acts and omissions described more fully throughout this pleading, AKLLC harbored and maintained individuals (including (A.R.J.)) at the Super 8 Longview knowing or in reckless disregard of the fact that the victims would be caused through force, coercion, or fraud, to engage in commercial sex acts while at their respective hotel properties.

b.    violated 18 U.S.C §1591(a)(2) when, through the acts and omissions described throughout this pleading, they knowingly received financial benefit by knowingly assisting, supporting, or facilitating a venture that was engaged in violations under 18 U.S.C §1591(a)(1) at the Super 8 Longview by trafficking victims, including (A.R.J.), in the rooms of that hotel.

139.    Violations of 18 U.S.C §1595(a) by AKLLC as a "perpetrator" operated jointly with other unlawful acts and omissions alleged in this pleading, to cause (A.R.J.) suffer substantial physical and psychological injuries and other damages because of being trafficked and sexually exploited at the Super 8 Longview.

## II.    Cause of Action 2: Beneficiary Liability under 28 USC §1595 (a) of the TVPRA (all Defendants)

140.    Plaintiff is a victim of sex trafficking within the meaning of 18 U.S.C §1591 and is thus entitled to bring a civil action under the "beneficiary" theory in 18 U.S.C §1595(a) against anyone who knowingly benefited from participation in a venture that the person knew or should have, with reasonable diligence, known was engaged in a violation of the TVPRA.

141.    All Defendants are liable as beneficiaries within the meaning of 18 U.S.C. § 1595(a) because, in ways further described above, each Defendant knowingly benefitted, by receiving additional revenue and other benefits, from its participation in a venture the Defendant knew or should have known was engaged in a violation of the TVPRA.

142.    **Venture 1:** Through acts and omissions more fully described throughout this pleading, each Defendant received a financial benefit from participating in Venture 1 with sex traffickers, including (A.R.J.)'s traffickers, operating at the Super 8 Longview. Each Defendant violated the TVPRA through its participation, as a beneficiary, in Venture 1 as follows:

a. Venture 1 resulted when Defendants developed and maintained a continuous business relationship and implicit understanding with sex traffickers at the Super 8 Longview by renting them hotel rooms and providing them related services despite the fact that each Defendant knew or should have known these traffickers were using the Super 8 Longview to engage in violations of 18 U.S.C §1591(a)(1) and 18 U.S.C §1591(a)(2), including the trafficking of (A.R.J.)

b. This venture violated the TVPRA through the conduct of the traffickers who repeatedly exploited victims, including (A.R.J.), in the rooms of the Super 8 Longview.

c. Each Defendant knew or should have known Venture 1 engaged in violations of the TVPRA.

d. Each member of Venture 1 pursued the purpose of generating revenue through this continuous business relationship. Traffickers (including (A.R.J.)'s trafficker) rented rooms to earn profits by exploiting trafficking victims (including (A.R.J.)). Each Defendant received a financial benefit every time a trafficker rented a room.

e. Each Defendant participated in the venture by continually renting rooms to traffickers, creating a favorable environment for trafficking, and providing a venture where traffickers could continue to continue their sexual exploitation with minimal risk of detection and disturbance, all the while ignoring the obvious signs of trafficking (including (A.R.J.)'s trafficking).

143.    **Venture 2**: Through acts and omissions more fully described throughout this First Amended Complaint, the Wyndham Brand Defendants received a financial benefit from participating in Venture 2 with AKLLC operating the Super 8 Longview. The Wyndham Brand Defendants violated the TVPRA through participation, as beneficiaries, in Venture 2 as follows:

a. Venture 2 is a commercial venture that resulted from the business relationship between the Wyndham Brand Defendants and AKLLC to operate the Super 8 Longview with a common objective of maximizing revenue at the hotel, including gross room revenue.

b. The venture violated the TVPRA through the widespread sex trafficking that occurred at the Super 8 Longview, including the trafficking of (A.R.J.) This venture also violated the TVPRA through the conduct of AKLLC, who violated 18 U.S.C §1591(a) as a perpetrator as alleged above.

c. The Wyndham Brand Defendants knew or should have known Venture 2 was engaged in violations of the TVPRA.

d. The Wyndham Brand Defendants knowingly benefited from this venture through the management fees, royalty fees, reservation fees, marketing fees, and other ancillary fees from the operation of the Super 8 Longview, which increased every time a room was rented to a trafficker.

e. The Wyndham Brand Defendants participated in this venture by (1) continuing the ongoing business relationship with AKLLC despite actual or constructive knowledge the hotel was facilitating sex trafficking; (2) directly involving themselves in and supporting aspects of hotel operations that they knew or should have known were facilitating trafficking at the hotel; and (3) continuing to lend the perceived legitimacy of the Wyndham brand and provide marketing services for the hotel after they knew or should have known the venture was engaged in violations of the TVPRA.

144. The ventures in which each Defendant participated were a direct, producing, and proximate cause of the injuries and damages to (A.R.J.)

## III.   Cause of Action 3: Liability under 18 U.S.C. § 2255

145. Each of the Defendants are liable to Plaintiff under 18 U.S.C. § 2255 because, as alleged above, each Defendant is liable as a beneficiary under 18 U.S.C. §1595(a).

## IV.   Cause of Action 4:   Vicarious Liability for Violations of TVPRA and §2255 (The Wyndham Brand Defendants)

146. (A.R.J.) further alleges that the Wyndham Brand Defendants are vicariously liable for the acts, omissions, and knowledge of Franchisees and the hotel staff while operating the Super 8 Longview.

147. Through the acts and omissions described throughout this pleading, the Wyndham Brand Defendants exercised or retained the right to exercise systematic and day-to-day control over the means and methods used by AKLLC and hotel staff to operate the Super 8 Longview.

148. AKLLC and hotel staff acted as actual agents of the Wyndham Brand Defendants when operating the Super 8 Longview.

149. While acting as an actual agent of the Wyndham Brand Defendants, AKLLC violated the TVPRA as both a beneficiary and a perpetrator and violated 18 U.S.C. § 2255.

150.    The Wyndham Brand Defendants are vicariously liable for the TVPRA violations and the 18 U.S.C. § 2255 violations of AKLLC.

151.    (A.R.J.) further alleges that the Wyndham Brand Defendants are vicariously liable for the acts and omissions of the staff at the Super 8 Longview as a joint employer. In the ways described throughout this pleading, the Wyndham Brand Defendants and Franchisees jointly controlled the terms and conditions of their employment. As a result, the Wyndham Brand Defendants and AKLLC are the joint employer of the hotel staff.

152.    Each of the Wyndham Brand Defendants is liable for the acts and omissions of each of the other Wyndham Brand Defendants with respect to the operation and franchising of the Super 8 Longview. On information and belief, the Wyndham Brand Defendants, who were corporate affiliates subject to common ownership and control and who shared employees and a single corporate headquarters, operated as a joint venture engaged in profit sharing and subject to mutual control regarding the operation of the Super 8 Longview. They operated as a single integrated enterprise and as alter-egos and/or agents of one another with respect to operation of the Super 8 Longview.

## **DAMAGES**

153.    Defendants' acts and omissions, individually and collectively, caused (A.R.J.) to sustain legal damages.

154.    Plaintiff is entitled to be compensated for personal injuries and economic damages she has suffered in the past and that in reasonable probability she will continue to suffer into the future, including:

    a.   Actual damages;

    b.   Direct damages;

    c.   Incidental and consequential damages;

    d.   Mental anguish and emotional distress damages (until trial and in the future);

    e.   Lost earning capacity in the past and future;

    f.   Loss of self-esteem and self-worth;

    g.   Necessary medical expenses;

    h.   Physical pain and suffering;

    i.   Physical impairment;

    j.   Emotional impairment;

    k.   Unjust enrichment;

    l.   Civil Penalties;

    m.  Attorney's fees and costs;

    n.   Exemplary/punitive damages;

    o.   Costs of this action; and

    p.   Prejudgment and all other interest and penalties recoverable.

155.    Plaintiff is entitled to pre- and post-judgment interest at the maximum legal rates.

156.    A constructive trust should be imposed on Wyndham and AKLLC, and the Court should sequester any benefits or money wrongfully received by Wyndham or AKLLC for the benefit of Plaintiff.

157.    Plaintiff further seeks a revocation of Defendants' right to conduct business as a hotel in the State of Texas.

**EXEMPLARY DAMAGES-STATUTORY VIOLATIONS**

158.    (A.R.J.) is entitled to recover exemplary/punitive damages against each Defendant because recovery of such damages is authorized by the TVPRA for statutory violations and because each Defendant engaged in outrageous conduct that was reckless, grossly negligent, and/or showed serious indifference to and callous disregard for the rights of others, including (A.R.J.) In this regard, Plaintiff would show that each of the Defendants had actual knowledge of the fact that (A.R.J.) was

the victim of sex trafficking at the Super 8 Longview during the period of January 1 through January 31, 2014, yet consciously and/or deliberately disregarded said facts which created a high probability of harm to the Plaintiff.  Plaintiff would further show that each of the Defendants were aware that commercial sex activity was occurring at the Super 8 Longview before the occurrence involving Plaintiff and during Plaintiff's presence on their premises and that Defendants continued to be aware of said ongoing commercial sex trafficking at said hotel thereafter yet did little to nothing to stop it while they continued to profit from it.  Plaintiff would further show that such egregious and deliberate conduct reflects a conscious disregard of Plaintiff's rights and safety while she was forced to act as a sex slave in Defendants' hotel room.  Plaintiff would show that said conduct is a proximate cause of Plaintiff's injuries and damages set forth herein and entitles Plaintiff to punitive damages in an amount deemed fair and just by this Court and the jury to discourage similar conduct in the future and set an example to Defendants and others that sexual trafficking will not be tolerated.

## JURY TRIAL

159.    Plaintiff demands a jury trial on all issues.

## RELIEF SOUGHT

WHEREFORE, Plaintiff prays that this case be set for trial before a jury and that, upon a final hearing of the cause, judgment be entered for Plaintiff against all Defendants jointly and severally for the actual, compensatory, and punitive damages as the evidence may show, and the jury may determine to be proper, together with the costs of suit, prejudgment interest, post-judgment interest, and such other and further relief to which Plaintiff may, in law or in equity, show herself to be justly entitled.

Respectfully submitted,

By:   **PROVOST ★ UMPHREY LAW FIRM**

COLIN MOORE (SB 24041513)
BRYAN O. BLEVINS (SB 02487300)
MATT MATHENY (SB 24039040)
350 Pine Street, Ste., 1100
Beaumont, TX 77701
Phone: (409) 835-6000
bblevins@pulf.com
mmatheny@pulf.com
cmoore@pulf.com
cbrown@pulf.com



By:   /s/ Kenneth T. Fibich
KENNETH T. FIBICH(SBN 0606952600)
SARA J. FENDIA (SBN 06898800)
KELLEY BOGUSEVIC (SBN 24063159)
1150 Bissonnet Street
Houston, Texas 77005
713-751-0025 (Telephone)
713-751-0030 (Facsimile)
tfibich@fibichlaw.com
sfendia@fibichlaw.com
kbogusevic@fibichlaw.com

**ATTORNEYS FOR PLAINTIFF**

JS 44   (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Jane Doe A.R.J.

## DEFENDANTS
Wyndham Hotels & Resorts, Inc., et al

**(b)** County of Residence of First Listed Plaintiff   Marion County, TX
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Morris Co., New Jersey
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Colin D. Moore - Provost Umphrey Law Firm
350 Pine Street, Beaumont, TX 77701 (409) 835-6000

Attorneys *(If Known)*
Unknown

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [x] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [x] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | Product Liability | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
18 USC 1595 AND 1591
Brief description of cause:
tvpra

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE _____   DOCKET NUMBER _____

DATE
01/30/2024

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #   _____   AMOUNT   _____   APPLYING IFP   _____   JUDGE   _____   MAG. JUDGE   _____