UNITED STATES JUDICIAL PANEL
on
MULTIDISTRICT LITIGATION

IN RE: HOTEL INDUSTRY SEX
TRAFFICKING LITIGATION (NO. II)                                    MDL No. 3104

ORDER DENYING TRANSFER

**Before the Panel**:[*] Plaintiffs in 33 actions pending in five districts move under 28 U.S.C. § 1407 to centralize this litigation in the Southern District of Ohio.  This litigation consists of 52 actions pending in twelve districts, as listed on Schedule A.[1]  Since the filing of the motion for centralization, the Panel has been notified of 61 additional actions pending in 22 districts. Plaintiffs in all actions allege that they are victims of sex trafficking that occurred at hotel properties located across the country and that the involved hotel defendants are liable for damages under the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 18 U.S.C. § 1595, and, in some instances, state law.

The responding parties' positions on centralization vary.  Plaintiffs in fourteen actions and potential tag-along actions pending in nine districts support the motion.  Plaintiff in one of these actions alternatively suggests centralization in the District of Massachusetts.  Plaintiff in one Southern District of Ohio action supports the motion and, alternatively, suggests centralization of seven hotel brand-specific MDLs in the Southern District of Ohio.  Plaintiffs in one action and 23 potential tag-along actions suggest centralization of 42 cases against G6 Hospitality[2] in the Eastern District of Texas.  Plaintiffs in seven actions and potential tag-along actions oppose centralization. Plaintiffs in three of these actions alternatively suggest the Northern District of Georgia as transferee district.  All responding defendants oppose centralization on an industry-wide and/or

---

[*]     Judge Nathaniel M. Gorton took no part in the decision of this matter.

[1]     The motion for centralization initially included an additional action, for a total of 53 actions.  This action was settled and dismissed.  Movants represented in their motion that it was filed on behalf of plaintiffs in all 53 actions, but they later clarified that they represent plaintiffs in 37 actions, collectively.

Additionally, the Central District of California *E.C.* action originally was filed in the Southern District of Ohio, but was transferred to the Central District of California under 28 U.S.C. § 1631, as reflected in Schedule A.

[2]     G6 Hospitality LLC, G6 Hospitality Franchising LLC, G6 Hospitality IP LLC, G6 Hospitality Property LLC, G6 Hospitality Purchasing LLC, and Motel 6 Operating L.P.

- 2 -

brand-specific basis.[3]  Some responding defendants propose alternative districts, including the Northern District of Ohio and the Northern District of Georgia.  Six anti-sex trafficking organizations[4] submitted an amicus brief opposing centralization.

This litigation is before us for the second time.  At our January 2020 hearing session, we denied a motion for centralization of 21 actions.  *See  In re Hotel Industry Sex Trafficking Litig.*, 433 F. Supp. 3d 1353 (J.P.M.L. 2020).  Responses to the motion varied, with some plaintiffs, defendants, and amici supporting centralization, and others opposing it.  We denied centralization, even though movants relied "on broad similarities among the actions to support their request for centralization, emphasizing similar alleged failures by hotels to prevent sex trafficking and the importance of corporate responsibility," because any common factual issues would be overwhelmed by unique issues concerning each plaintiff's sex trafficking allegations.  *Id*. at 1355.  The dissimilarities among the actions included "different hotels, … different alleged sex trafficking ventures, different hotel brands, different owners and employees, different geographic locales, different witnesses, different indicia of sex trafficking, and different time periods."  *Id*. at 1356.  Moreover, there was "no common or predominant defendant."  *Id*.  We were not persuaded by plaintiffs' prediction that upwards of 1,500 additional actions could be filed, in part, because "our decision to deny centralization in this matter [was] not based on an insufficient number of actions, but rather the lack of common factual questions in this litigation."  *Id*.  We found that informal coordination could address any overlap in pretrial proceedings among the cases including by, for example, requesting actions pending in the same court be organized before a single judge in that district.  *See id*. at 1356-57.

In this new motion, proponents argue, *inter alia*, that (1) movants' counsel expect to file 1,700 claims, (2) the litigation has narrowed to encompass claims against seven corporate brand hotel defendants, (3) these narrowed claims share common factual questions, and (4) informal

---

[3]    G6 Hospitality; Red Roof Inns, Inc., Red Roof Franchising, LLC, RRF Holding Company, LLC, and RRI West Management, LLC (together, Red Roof Inns); Holiday Hospitality Franchising, LLC, Six Continents Hotels, Inc., and Crowne Plaza, LLC1 (together, the IHG defendants); Wyndham Hotels & Resorts, Inc., Wyndham Hotel Group, LLC, Days Inns Worldwide, Inc., Super 8 Worldwide, Inc., and Travelodge Hotels, Inc. (together, Wyndham); Extended Stay America, Inc., and ESA P Portfolio, LLC (the ESA defendants); Choice Hotels International, Inc. (Choice); Hilton Domestic Operating Co., Inc.; Best Western International; Sarah Hospitality Inc.; Studio 6 Delk Road, LLC; Royal Corporation d/b/a Royal Motel, Oak-Grand Corporation d/b/a Oak Grand Motel, and L&B Motel Inc. d/b/a Ritz Motel; Aesha LLC, Century Lodging LLC, ARTCP LLC, and Lancaster Hospitality LLC; Knights Franchise Systems, Inc.; Krishna Balram, LLC d/b/a/ Dallas Motel 6, LLC; Marriott International, Inc.; Concord Inn and Suites, LP, d/b/a Studio 6; Dorca Co., Inc.; Scottsdale Inn, LLC dba Howard Johnson; PRC Investment LLC; Parimal Parmar; Louisiana Hotel Corp.

[4]    4Sarah, Divas Who Win Freedom Center, Rescuing Hope, Street Grace, Sunrise Ministries, and The Wilbanks Child Endangerment and Sexual Exploitation (CEASE) Clinic.

- 3 -

coordination has been ineffective.  Our denial of centralization in *Hotel Trafficking I* did not foreclose plaintiffs from filing this second motion for centralization, but in reconsidering any prior decisions, we will reach a different result only rarely, when a significant change in circumstances has occurred.  *See In re Plavix Mktg., Sales Pracs. & Prods. Liab. Litig.*, 923 F. Supp. 2d 1376, 1378 (J.P.M.L. 2013).  The circumstances of this litigation have not appreciably changed since we last denied centralization.  Therefore, on the basis of the papers filed and the hearing session held, we conclude that Section 1407 centralization is not necessary for the convenience of the parties and witnesses or to further the just and efficient conduct of the litigation.

When we first denied centralization in 2020, plaintiffs predicted that as many as 1,500 cases would be filed, nearly as many as the 1,700 cases movants now predict.  But "the mere possibility of additional actions does not support centralization, even where thousands of actions are predicted." *In re Hotel Trafficking I*, 433 F. Supp. 3d at 1356.  In the four years since we first denied centralization, nowhere near 1,500 cases have been filed.  To be sure, there are more than twice as many actions included on the motion for centralization today than there were in 2020, but more than half of the cases are pending in two courts.  More fundamentally, we remain unconvinced that the actions share sufficient common factual questions to justify centralization.

As they did four years ago, the proponents of centralization continue to "rely on broad similarities among the actions to support their request for centralization, emphasizing similar alleged failures by hotels to prevent sex trafficking and the importance of corporate responsibility." *Id*. at 1355.  Plaintiffs here allege they were victims of commercial sex trafficking at one or more hotels, that defendants knew or should have known that plaintiffs were being trafficked, and that defendants participated and knowingly financially benefitted by renting rooms to the alleged traffickers in violation of the TVPRA.  But these actions, like the ones before us in 2020, continue to involve "different hotels, … different alleged sex trafficking ventures, different hotel brands, different owners and employees, different geographic locales, different witnesses, different indicia of sex trafficking, and different time periods." *Id*.  There certainly may be common discovery concerning a particular hotel brand's policies at a point in time, or knowledge of sex trafficking within the hotel industry, generally, or at a particular hotel brand's properties.  But any of these general common facts is likely to be overwhelmed by individualized discovery regarding not only the circumstances of a particular plaintiff's alleged trafficking, but also, *inter alia*, the varied defendants and their relationships with each other.  While we often centralize litigation that involves some case-specific factual issues, there is usually a unifying common and fact-intensive inquiry, such as general causation in the context of product liability litigation, or a common or principal defendant whose conduct or failure to act is at issue.  *See, e.g., In re Acetaminophen – ASD/ADHD Prods. Liab. Litig.*, 637 F. Supp. 3d 1372, 1374 (J.P.M.L. 2022) (finding plaintiff-specific causation issues did not preclude centralization where "the issues concerning general causation, the background science, and regulatory history will be substantially the same in all actions" and "all defendants are likely to assert the same preemption defense in each action."); *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, MDL No. 3084, __ F. Supp. 3d __, 2023 WL 6456588 (J.P.M.L. Oct. 4, 2023) (centralizing cases involving common defendant's and its subsidiaries' knowledge, policies, and practices with regard to alleged assaults on users of their ridesharing platform).  Here, case-specific facts relating to the alleged involved parties, the

- 4 -

relevant time periods, and each plaintiff's experience are so varied that the purported common factual questions appear to be vastly overwhelmed by individual inquiries, which would make common pretrial proceedings inefficient in this instance.

Movants attempt to distinguish their motion from the one we previously denied by asserting that "the scope of the requested MDL has … been significantly narrowed" to seven corporate hotel brand defendants. Pls.' Mot. at p. 3. But their failure to articulate the contours of what they seek to include in centralized proceedings, or how they would limit the MDL to just those seven corporate defendants, illustrates that an MDL would be rife with confusion and side disputes before the Panel about which cases should be included. We are, at this late date, unsure whether proponents of centralization are seeking an MDL limited to only cases naming these seven corporate hotel brand defendants, or whether they seek Section 1407(a) separation and remand of claims against any defendants outside of these seven corporate hotel brands. Movants state that they name no franchisees as defendants, yet they include actions on their motion that do just that. Other plaintiffs supporting centralization echo that "this MDL is not meant to encompass claims against hotel franchisees," and they state that 64 related actions are pending, but they fail to identify which of the 113 actions of which we are aware would be included. *See* Pltfs.' Resp., MDL No. 3104 (J.P.M.L. Mar. 5, 2024), ECF No. 187, at p. 6. In these 113 actions, there are more than 200 differently-named defendants, including corporate brand defendants, franchisees, hotel operators, and management companies. The argument that the litigation has been "significantly narrowed," therefore, does not withstand scrutiny. And we remain unconvinced that placing all of these cases and all of these parties before a single judge adds meaningful efficiencies to this already complicated and sensitive litigation. *Cf. In re Uponor, Inc., F1960 Plumbing Fittings Prod. Liab. Litig.*, 895 F. Supp. 2d 1346, 1348 J.P.M.L. 2012) (noting that centralization is "not a cure-all for every group of complicated cases.").

We further find the creation of brand-specific MDLs—as suggested in the alternative by some plaintiffs—would be unworkable. As many parties argued, most victims are trafficked at more than one location, and many of these actions involve multiple hotel brands. Some brands are named in many actions, while others are named in just one or a handful. Creating separate MDLs for each corporate hotel brand—even for those brands named in a sufficient number of actions— would unnecessarily complicate the litigation by multiplying some plaintiffs' claims, as claims against different hotel brands would need to be separated. *See In re ARC Airbag Inflators Prods. Liab. Litig.*, 648 F. Supp. 3d 1378, 1380 (J.P.M.L. 2022).

We are not persuaded that informal coordination is insufficient here. Plaintiffs' counsel overlaps to a significant extent. Even the firms filing different responses to the Section 1407 motion overlap as co-counsel in many cases. The judges presiding over large groups of cases should be able to realize important efficiencies by coordinating with each other and by streamlining the cases before them. Of the 113 known cases in this current litigation, 62 are pending before two judges in two districts. Twenty-two are pending in the Eastern District of Texas, and 40 are pending in the Southern District of Ohio. These two courts do not need the procedural mechanism of Section 1407 centralization in place to exercise their inherent authority to coordinate the cases before them or to establish an efficient pretrial structure. Several

- 5 -

defendants stated their willingness to informally coordinate, and it appears the parties are working to streamline proceedings, including regarding plaintiff identity protections and confidentiality—issues proponents of centralization argued have been repeatedly re-litigated.  *See In re Hotel TVPRA Litig.*, C.A. No. 2:21-cv-4933 (S.D. Ohio Mar. 4, 2024), ECF No. 140 (order noting the parties to 30 cases have reached agreement on a stipulated protective order and production of plaintiffs' identities).

Finally, the previous motion for centralization had support from some plaintiffs, some defendants, and certain anti-sex trafficking organizations filing an amicus brief.  Today, all responding defendants and amici oppose centralization.  This significant shift towards opposition to centralization suggests that an MDL for these cases remains unnecessary.  *See In re Varsity Spirit Athlete Abuse Litig.*, No. MDL 3077, __ F. Supp. 3d __, 2023 WL 3828645, at *2 (J.P.M.L. June 5, 2023) ("We have found persuasive that, of all responding parties, those who would be most affected by centralization ... do not believe that centralization would be beneficial.") (quotation omitted).

IT IS THEREFORE ORDERED that the motion for centralization of these actions is denied.

PANEL ON MULTIDISTRICT LITIGATION

_____
Karen K. Caldwell
Chair

Matthew F. Kennelly          David C. Norton
Roger T. Benitez              Dale A. Kimball
Madeline Cox Arleo

**IN RE: HOTEL INDUSTRY SEX**
**TRAFFICKING LITIGATION (NO. II)**                    MDL No. 3104

**SCHEDULE A**

Central District of California

E.C. v. CHOICE HOTELS INTERNATIONAL, INC., ET AL., C.A. No. 2:24−02322
DOE v. WYNDHAM HOTELS AND RESORTS, ET AL., C.A. No. 8:23−01554


Eastern District of California

J.M. v. CHOICE HOTELS INTERNAT'L, INC., ET AL., C.A. No. 2:22−00672

Northern District of Georgia

W.K., ET AL. v. RED ROOF INNS, INC., ET AL., C.A. No. 1:20−05263

District of Minnesota

T.S. v. WYNDHAM HOTELS & RESORTS, INC., ET AL., C.A. No. 0:23−02530

District of New Mexico

F. v. G6 HOSPITALITY, LLC, C.A. No. 1:23−00879

Northern District of Ohio

J.C. v. G6 HOSPITALITY, LLC, C.A. No. 1:23−00867

Southern District of Ohio

T.P. v. WYNDHAM HOTELS & RESORTS, INC., ET AL., C.A. No. 2:21−04933
A.W. v. RED ROOF INNS, INC., ET AL., C.A. No. 2:21−04934
A.R. v. WYNDHAM HOTELS AND RESORTS, INC., ET AL., C.A. No. 2:21−04935
L.G. v. RED ROOF INNS, INC., ET AL., C.A. No. 2:22−01924
G.P. v. WYNDHAM HOTELS & RESORTS, INC., ET AL., C.A. No. 2:22−02682
T.E. v. WYNDHAM HOTELS & RESORTS, INC., ET AL., C.A. No. 2:22−03185
B.D.G. v. CHOICE HOTELS INTERNATIONAL, INC., C.A. No. 2:22−03202
A.K.W. v. RED ROOF INNS, INC., ET AL., C.A. No. 2:22−03256
M.H. v. RED ROOF INNS, INC., ET AL., C.A. No. 2:22−03258
H.C. v. RED ROOF INNS, INC., ET AL., C.A. No. 2:22−03416
G.G. v. RED ROOF INNS, INC., ET AL., C.A. No. 2:22−03766

-A2

A.Y.S. v. RED ROOF INNS, INC., ET AL., C.A. No. 2:22−03767
A.Y. v. RED ROOF INNS, INC., ET AL., C.A. No. 2:22−03768
K.L. v. RED ROOF INNS, INC., ET AL., C.A. No. 2:22−03769
R.C.C. v. RED ROOF INNS, INC., ET AL., C.A. No. 2:22−03770
N.B. v. RED ROOF INNS, INC., ET AL., C.A. No. 2:22−03771
C.B. v. RED ROOF INNS, INC., ET AL., C.A. No. 2:22−03772
K.R.L. v. RED ROOF INNS, INC., ET AL., C.A. No. 2:22−03773
R.H. v. RED ROOF INNS, INC., ET AL., C.A. No. 2:22−03774
J. B. v. RED ROOF INNS, INC., ET AL., C.A. No. 2:22−03776
H.S. v. RED ROOF INNS, INC., ET AL., C.A. No. 2:22−03778
R.K. v. RED ROOF INNS, INC., ET AL., C.A. No. 2:22−03782
R.Z. v. RED ROOF INNS, INC., ET AL., C.A. No. 2:22−03784
D.K. v. RED ROOF INNS, INC., ET AL., C.A. No. 2:22−03786
K.D. v. RED ROOF INNS, INC., ET AL., C.A. No. 2:22−03787
G.M. v. CHOICE HOTELS INTERNATIONAL, INC., ET AL., C.A. No. 2:22−03788
A.M. v. WYNDHAM HOTELS AND RESORTS, INC., ET AL., C.A. No. 2:22−03797
C.C. v. WYNDHAM HOTELS & RESORTS, INC., ET AL., C.A. No. 2:22−03799
T.D.P. v. CHOICE HOTELS INTERNATIONAL, INC., C.A. No. 2:22−03837
K.F. v. CHOICE HOTELS INTERNATIONAL, INC., ET AL., C.A. No. 2:22−03839
D.T. v. RED ROOF INNS, INC., ET AL., C.A. No. 2:22−03844
K.W. v. RED ROOF INNS, INC., ET AL., C.A. No. 2:22−03845
A.S. v. RED ROOF INNS, INC., ET AL., C.A. No. 2:22−03846
S.R. v. WYNDHAM HOTELS & RESORTS, INC., ET AL., C.A. No. 2:23−01731
DOE v. BEST WESTERN INTERNATIONAL, INC., ET AL., C.A. No. 2:23−03459
DOE (A.M.G.) v. RED ROOF INNS, INC., ET AL., C.A. No. 2:23−04195
DOE (D.E.G.) v. RED ROOF INNS, INC., ET AL., C.A. No. 2:23−04256
DOE (C.M.G.) v. RED ROOF INNS, INC., ET AL., C.A. No. 2:23−04258

     Eastern District of Pennsylvania

A.B. v. WYNDHAM HOTEL & RESORTS, INC., ET AL., C.A. No. 2:23−03902

     District of South Carolina

N.J. v. G6 HOSPITALITY PROPERTY, LLC, ET AL., C.A. No. 2:22−03180

     Eastern District of Texas

(IES) v. G6 HOSPITALITY, LLC, ET AL., C.A. No. 1:23−00464

     Southern District of Texas

DOE (A.S.) v. WYNDHAM HOTEL & RESORTS, INC., C.A. No. 4:23−01969

-A3

Western District of Washington

DOE v. ESA P PORTFOLIO, LLC, C.A. No. 3:23−06038